## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVENT INTERNATIONAL CORPORATION, | Misc. Case No.: |
| *Petitioner*, | Underlying Action: |
| v. | *Servicios Funerarios GG, S.A. de C.V. v. Advent International Corporation*, Case No. 23-CV-10684-IT (D. Mass.) |
| ANDRE EL-MANN ARAZI, GONZALO PEDRO ROBINA IBARRA, FIBRA UNO ADMINISTRACION S.A. DE C.V. | |
| *Respondents*. | |

**PETITIONER'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ANDRE EL-MANN ARAZI, GONZALO PEDRO ROBINA IBARRA, AND FIBRA UNO ADMINISTRACION S.A. DE C.V. TO COMPLY WITH PETITIONER'S SUBPOENAS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND .................................................................................................................3

    A.    The Fibra Uno Parties ....................................................................................3

    B.    The Lawsuit Underlying the Subpoenas .......................................................5

        1.    The Fibra Uno Parties' Role In The Gayosso Transaction .........................6

        2.    The Mexican and U.S. Proceedings...........................................................9

        3.    AIC's Prior Efforts To Obtain Discovery From Fibra Uno And The El-Manns In The Massachusetts Action ..................................................12

    C.    Serving and Negotiating the Subpoenas .....................................................13

LEGAL STANDARD.......................................................................................................14

ARGUMENT ....................................................................................................................15

I.     THE FIBRA UNO PARTIES POSSESS RELEVANT INFORMATION......................15

II.    THE SUBPOENAS WERE PROPERLY SERVED .......................................16

III.   THE COURT HAS PERSONAL JURISDICTION OVER THE SERVED PARTIES ...................................................................................................18

    A.    This Court Has Tag Jurisdiction Over Mr. El-Mann ...........................18

    B.    This Court Has Personal Jurisdiction Over the Fibra Uno Parties Because Of Their Fundraising Activities .................................................................19

IV.   THE SUBPOENAS COMPLY WITH RULE 45 OR, IN THE ALTERATIVE, SHOULD BE MODIFIED TO COMPLY..........................................................22

    A.    The Subpoenas Comply with the Geographical Limitations of Rule 45 ..............22

    B.    The Subpoenas Present No Undue Burden on The Fibra Uno Parties .................23

CONCLUSION.................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*In re Abraaj Inv. Mgmt. Ltd.*,
   2023 WL 2674752 (S.D.N.Y. Mar. 29, 2023) .........................................................................21

*AP Links, LLC v. Russ*,
   299 F.R.D. 7 (E.D.N.Y. 2014) ................................................................................................15

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
   262 F.R.D. 293 (S.D.N.Y. 2009) .....................................................................................16, 17

*Avila v. Target Corp.*,
   2022 WL 17540322 (E.D.N.Y. Nov. 18, 2022)......................................................................14

*Burnham v. Sup. Ct. of Cal.*,
   495 U.S. 604 (1990)................................................................................................................18

*Cartier v. Geneve Collections, Inc.*,
   2008 WL 552855 (E.D.N.Y. Feb. 27, 2008)...........................................................................16

*Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*,
   269 F. Supp. 3d 124 (S.D.N.Y. 2017).....................................................................................14

*Comm-Tract Corp. v. N. Telecom, Inc.*,
   168 F.R.D. 4 (D. Mass. 1996).................................................................................................22

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y. 1996) ..............................................................................................21

*In re County of Orange*,
   208 B.R. 117 (Bankr. S.D.N.Y. 1997).....................................................................................24

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019)....................................................................................................20

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002)....................................................................................................18

*Estate of Ungar v. Palestinian Auth.*,
   400 F. Supp. 2d 541 (S.D.N.Y. 2005).....................................................................................18

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*,
   284 F.R.D. 132 (S.D.N.Y. 2012) ............................................................................................14

*In re Flag Telecom Hldgs., Ltd. Sec. Litig.*,
    236 F.R.D. 177 (S.D.N.Y. 2006) ........................................12

*Kirschner v. Klemons*,
    2005 WL 1214330 (S.D.N.Y. May 19, 2005) ........................................23

*Matter of Le*,
    637 N.Y.S.2d 614 (Sup. Ct. 1995)........................................18

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012)........................................17

*Licci v. Lebanese Canadian Bank*,
    20 N.Y.3d 327 (N.Y. 2012) ........................................20

*Lobatto v. Berney*,
    1999 WL 672994 (S.D.N.Y. Aug. 26, 1999) ........................................19

*Martin v. Valley Nat'l Bank of Arizona*,
    140 F.R.D. 291 (S.D.N.Y. 1991) ........................................22

*Mohamad v. Rajoub*,
    2018 WL 1737219 (S.D.N.Y. Mar. 12, 2018) ........................................18

*Motorola Credit Corp. v. Uzan*,
    132 F. Supp. 3d 518 (S.D.N.Y. 2015)........................................13

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)........................................15

*Pfaff v. Deutsche Bank AG*,
    2020 WL 3994824 (S.D.N.Y. July 15, 2020) ........................................20

*Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transp.*,
    180 F. Supp. 3d 290 (S.D.N.Y. 2016)........................................22

*Rippey v. Smith*,
    16 F. App'x 596 (9th Cir. 2001) ........................................20

*Sae Han Sheet Co. v. Eastman Chem. Corp.*,
    2017 WL 4769394 (S.D.N.Y. Oct. 19, 2017) ........................................18

*Sec. & Exch. Comm'n v. Pence*,
    322 F.R.D. 450 (S.D.N.Y. 2017) ........................................16, 17

*SEC v. Terraform Labs Pte. Ltd.*,
    2023 WL 4858299 (S.D.N.Y. July 31, 2023) ........................................20

*Servicios Funerarios GG, S.A. de C.V. v. Advent International Corporation*,
    Case No. 23-CV-10684-IT (D. Mass.) ..................................................................1

*Simonson v. Int'l Bank*,
    14 N.Y.2d 281 (1964) ..............................................................................................19

*Sprint Nextel Corp. v. Ace Wholesale, Inc.*,
    2014 WL 4308355 (S.D.N.Y. Aug. 26, 2014) ......................................................24

*State v. Vayu, Inc.*,
    39 N.Y.3d 330 (2023) ..............................................................................................19

*In re Steinmetz*,
    2022 WL 170851 (S.D.N.Y. Jan. 19, 2022) ........................................................21

*Suber v. VVP Servs., LLC*,
    2021 WL 4429237 (S.D.N.Y. Sept. 27, 2021), *aff'd in part, rev'd on other*
    *grounds, remanded,* 2023 WL 115631 (2d Cir. Jan. 10, 2023) .............................19

*In re Three Arrows Cap., Ltd.*,
    649 B.R. 143 (Bankr. S.D.N.Y. 2023) ..................................................................16

*Warnke v. CVS Corp.*,
    265 F.R.D. 64 (E.D.N.Y. 2010) ............................................................................15

*Wertheim Schroder & Co. v. Avon Prods., Inc.*,
    1995 WL 6259 (S.D.N.Y. Jan. 9, 1995) ..............................................................24

*Yukos Cap. S.A.R.L. v. Feldman*,
    2016 WL 3181151 (S.D.N.Y. June 3, 2016) ..................................................22, 23

## **Statutes and Rules**

CPLR § 301 ............................................................................................................18

CPLR § 302 ............................................................................................................19

CPLR § 302(a)(1) ..................................................................................................19

CPLR § 308(2) ......................................................................................................17

Fed. R. Civ. P. 26 ............................................................................................12, 16

Fed. R. Civ. P. 26(b)(1) ..................................................................................14, 15

Fed. R. Civ. P. 4 ..............................................................................................16, 17

Fed. R. Civ. P. 4(e)(2) ..........................................................................................18

Fed. R. Civ. P. 4(h)(1)(B) ...................................................................................17

Fed. R. Civ. P. 4(k)(1)(a) ...................................................................................18

Fed. R. Civ. P. 45 .....................................................................................15, 17, 21, 23

Fed. R. Civ. P. 45(b) ...........................................................................................16

Fed. R. Civ. P. 45(b)(1) .......................................................................................16

Fed. R. Civ. P. 45(c) .......................................................................................21, 22

Fed. R. Civ. P. 45(g) ...........................................................................................24

Fed. R. Civ. P. Rule 144A ....................................................................................4

Petitioner Advent International Corporation, n/k/a Advent International, L.P. ("AIC"), moves to compel compliance with six subpoenas *duces tecum* and *ad testificandum* served November 14 and 15, 2023 (together, "the Subpoenas") on each of the following parties: (1) Andre El-Mann Arazi, (2) Gonzalo Pedro Robina Ibarra, and (3) Fibra Uno Administracion S.A. de C.V. ("Fibra Uno").  Messrs. El-Mann and Robina and Fibra Uno (together, the "Fibra Uno Parties"), responded to the Subpoenas on November 28, 2023 with general, blanket objections and have refused to provide any discovery.  Because the Fibra Uno Parties are in possession, custody, or control of information relevant to *Servicios Funerarios GG, S.A. de C.V. v. Advent International Corporation*, Case No. 23-CV-10684-IT (D. Mass.) (the "Massachusetts Action"), AIC respectfully requests an order (i) compelling the Fibra Uno Parties to comply with the Subpoenas *deus tecum* by no later than February 29, 2024, and (ii) compelling the Fibra Uno Parties to comply with the Subpoenas *ad testificandum* by no later than April 19, 2024.

## INTRODUCTION

This is a straightforward motion to enforce discovery subpoenas against persons whose possession of critically relevant information is undisputed.

The underlying Massachusetts Action concerns the flagrant abuse of the Mexican criminal justice system to target the reputations, liberty, and livelihoods of a leading Massachusetts-based private investment firm and its senior professionals and affiliates.  In January 2021, affiliates of AIC sold Grupo Gayosso S.A. de C.V. ("Gayosso"), a private Mexican funeral services company.  The putative buyer of Gayosso's stock was Servicios Funerarios GG, S.A. de C.V. ("SF"), a recently-formed investment vehicle.  But behind SF was one of Mexico's wealthiest and most influential families, headed by Andre El-Mann, and the real estate business he and his family control, Fibra Uno.  SF's principal, Pablo Peña Vazquez, is the El-Manns' longtime financial advisor, and pursued the transaction as the El-Manns' representative, just as he has in other

1

transactions over a decade, including the El-Manns' recent attempt to take public a Fibra Uno subsidiary.  Fibra Uno was *itself* a party to the Stock Purchase and Sale Agreement ("SPA") through which Gayosso was acquired, and financed over half the deal by acquiring Gayosso's valuable real estate assets in a contemporaneously executed sale-and-leaseback transaction. Gonzalo Robina, Deputy CEO of Fibra Uno, signed the SPA on behalf of Fibra Uno.

The Gayosso transaction was highly negotiated, and there was no suggestion of impropriety during the lengthy and intensive due diligence period.  Soon after the transaction closed, however, SF concocted allegations of fraud, and has pursued an escalating scheme—using the Mexican criminal justice system as its instrumentality—designed to coerce AIC into re-trading on the deal. SF and its co-conspirators have gone so far as to obtain illegitimate Mexican arrest warrants and Interpol Red Notices against AIC's and its affiliates' executives with no meaningful role in the Gayosso transaction, as well as asset embargos targeting hundreds in millions of dollars of completely unrelated assets.  As AIC has come to learn, the criminal lawyers SF hired, and the prosecutors and judges who sought and issued the illegitimate criminal orders, are notorious repeat players in this scheme.  After AIC refused to submit to these obvious extortion attempts, SF sued AIC in Massachusetts, repeating the same baseless claims of fraud and seeking over $200 million in fictitious damages (more than the value of the entire transaction).   AIC immediately counterclaimed, seeking redress for the substantial harm caused by SF's abuse of process in Mexico.

Discovery is ongoing in the Massachusetts Action.  The parties have produced hundreds of thousands of documents.  But there is a key gap.  Only one of the two buyers, SF, has claimed fraud and is a party to the Massachusetts Action.  But there is no debate that the Fibra Uno Parties, as real parties in interest behind SF, possess information relevant to SF's claims.  Fibra Uno was

a *party* to the SPA that is the basis for SF's made-up fraud claims.  The Fibra Uno Parties are also likely to possess relevant information concerning the weaponization of the Mexican criminal justice system, which is relevant to AIC's abuse of process counterclaims.  The Fibra Uno Parties are intimately familiar with the coercive tactics being used against AIC, and the Mexican criminal counsel deploying them.  In fact, the Fibra Uno Parties reportedly have previously engaged that same Mexican criminal counsel.

But despite the deep connections between them, SF has professed to lack control over information in the possession of Fibra Uno and refused to include Messrs. El-Mann or Mr. Robina as custodians.  As a result, AIC served the Subpoenas on the Fibra Uno Parties in New York, where they regularly conduct business and, at the time of service, were present to solicit investors for a Fibra Uno affiliate.  In response, the Fibra Uno Parties issued blanket objections and, despite conceding the relevance of the information sought, have categorically refused to sit for deposition or even to acknowledge service and this Court's jurisdiction.

AIC respectfully requests that the Court compel the Fibra Uno Parties to comply with the Subpoenas.

## BACKGROUND

### A.    The Fibra Uno Parties

**Fibra Uno.**  Fibra Uno is a real estate investment trust that acquires, owns, develops, constructs, leases, and operates a broad range of real estate properties in Mexico.  Ex. 1 at 1.[1]  The El-Mann family are the founders and controllers of Fibra Uno, both as controlling shareholders and through their positions on Fibra Uno's management team and technical committee.  Ex. 1 at 8, 14.  Much of Fibra Uno's financing and investment capital comes from the United States.  Since

---

[1] All "Exhibit" references are to Exhibits to the accompanying Declaration of Daniel V. Ward.

Fibra Uno's initial IPO in 2011, it has raised capital through several follow-on offerings, including multiple international offerings in the United States pursuant to 17 C.F.R. § 230.144A ("Rule 144A"), as well as bond issuances in the United States.  Ex. 1 at 1.  As a result of this solicitation, "[a] significant portion of Fibra Uno's shareholders are U.S. institutional investors," Ex. 2 at 2, with institutional investors based in or with a presence in New York, Ex. 3; Ex. 4.  In connection with its significant fundraising activities in the United States, Fibra Uno has retained New York-based counsel to advise it on New York law, Ex. 1 at 293, New York-based investment banks to underwrite its transactions, and New York-based broker-dealers as initial purchasers of share offerings.  Exs. 1 at 182, 5, 6, 7, 8, 9.

New York City, in particular, is essential to Fibra Uno's business.  Since 2014, and most recently less than a month ago, Fibra Uno has hosted an annual set of presentations to investors (called "FUNO Day") in Manhattan.  Exs. 10, 11, 12, 13, 14, 15, 16, 17, 18.  On FUNO Day, Fibra Uno's leadership—including Messrs. El-Mann and Robina—provides investors with updates on Fibra Uno's investments.  Ex. 17.  Moreover, from 2011 until 2020, Fibra Uno maintained an investor information office in New York and provided contact information for its New York-based investor relations team on the footer of every investor update, including quarterly distribution announcements, and investment offering materials.  Ex. 19; Ex. 20; Ex. 1 at 222, 223.

Fibra Uno continues to solicit investments from New York-based entities, including most recently in connection with the prospective share offering of a spin-off entity called Fibra Next. In November 2023, members of Fibra Uno's management team, including Messrs. El-Mann and Robina, pitched Fibra Next to banks, hedge funds, and other institutional investors in New York City during multi-day roadshow presentations.  Ex. 21 at 4-5 (Roadshow presentation).  During

that same trip to New York City, Mr. El-Mann presented at FUNO Day, also held in Manhattan. Ex. 18 at 3 (FUNO Day 2023)

**André El-Mann Arazi.**   Mr. El-Mann is the CEO of Fibra Uno and a member of Fibra Uno's Technical Committee, as well as one of the co-founders of the El-Mann family's private real estate development company Grupo-E.  Ex. 22; Ex. 23; Ex. 1 at 50.  Mr. El-Mann is the public face of Fibra Uno and an active participant in its investor relations.  *See, e.g.*, Ex. 24 at 4-5 (FUNO Info Supplement 3Q22); Ex. 25.  Mr. El-Mann is often one of the keynote speakers at FUNO Day, presenting on Fibra Uno's financial results to investors in New York City.  Ex. 18 at 3; Ex. 17  at 2; Ex. 15 at 2, 97; Ex. 14 at 2, 72.

Recently, Mr. El-Mann has been soliciting investments in Fibra Uno spinoff Fibra Next from institutional investors located in New York City.  Fibra Uno reported that it had secured significant demand for Fibra Next shares in the U.S. through their relationships with New York-based banks including Bank of America, Citigroup, Morgan Stanley, Goldman Sachs, and JP Morgan.  Ex. 26; Ex. 21 at 6.

**Gonzalo Robina.**   Gonzalo Robina is the Deputy CEO of Fibra Uno.  Ex. 22.  Like Mr. El-Mann, Mr. Robina is active in Fibra Uno's investor relations and often presents to investors during FUNO Day in New York City.  Ex. 17 at 38; Ex. 15 at 72;  Ex. 14 at 8.  Mr. Robina also recently met with potential investors in New York City to solicit investments in Fibra Next.  Ex. 21 at 4-5.

### B.     The Lawsuit Underlying the Subpoenas

The lawsuit for which the Subpoenas were issued (the "Massachusetts Action") arises out of the 2021 sale of Grupo Gayosso S.A. de C.V. ("Gayosso"), a Mexican funeral services company, by affiliates of AIC-managed funds, to Fibra Uno, which provided over half of the financing for the purchase, and SF.  As a special purpose vehicle with no assets, SF provided no

equity in the transaction, instead depending on a loan from HSBC to finance the remainder of the purchase price.  Ex. 27 at 5, 39.

SF (but not Fibra Uno) has filed civil and criminal proceedings in Mexico as well as the underlying lawsuit in Massachusetts, all of which claim that AIC fraudulently induced SF to enter into the Gayosso transaction.  Ex. 28.  AIC denies the allegations and has filed counterclaims against SF, alleging that SF abused the Mexican justice system by initiating criminal proceedings in Mexico and obtaining baseless, unlawful arrest warrants against AIC's and its affiliates' executives and asset embargoes on unrelated assets owned by AIC affiliates that had nothing to do with the Gayosso transaction.  Ex. 29

### 1.   *The Fibra Uno Parties' Role In The Gayosso Transaction*

While there were two parties on the buy-side of the Gayosso transaction, all roads lead back to Fibra Uno and the El-Mann family.  In March 2018, Mr. El-Mann—through his long-time banker and advisor, Pablo Peña Vazquez—approached AIC's Mexican affiliate, Advent International PE Advisors, S.C. ("Advent Mexico"), about a potential sale of Gayosso to the El-Mann Family's real estate development company, Grupo-E.  Ex. 30.  Within a few weeks, Mr. Peña followed up to express the El-Mann family's "great interest in acquiring Grupo Gayosso" and attached a non-binding offer to buy Gayosso for MXP 4 billion "[o]n behalf of a group of private investors led by the Elmann [sic] family."  Ex. 31; Ex. 32.[2]  At that time, Advent Mexico was pursuing a competing offer for Gayosso, but the El-Mann family remained interested and returned to Advent Mexico in March 2019 to continue discussions about a transaction.  These discussions were productive, and in early June, Mr. Peña sent Advent Mexico a signed term sheet

---

[2]   Note the year in the heading of exhibit 32 should be 2018, as evidenced by the adjoining cover letter, Exhibit 31.

memorializing a new non-binding offer from Grupo-E, Ex. 33, which he represented was "approved by Andre" El-Mann.  Ex. 34.

Around the same time, Mr. Peña's advisory firm laid out a proposed acquisition structure consistent with the involvement of "a group of private investors led by the [El-Mann] family" as described above.[3]

Shortly thereafter, SF and Trust 682 were formed to facilitate the acquisition, with Mr. Peña as SF's putative principal.  Ex. 35, at 7.  But everyone, including Advent, understood that the proposed transaction was "with [the] El-Mann [family]," and that Mr. Peña was the El-Mann's representative.  Ex. 36; *see also* Ex. 37 ("[W]e started DD to sell Gayosso to another interested party, the Andre El-Mann family office."); *id.* ("El-Mann family is well recognized in Mexico. . . . I will put you in contact with Pablo [Peña], who leads the deal from their side."); *id.* ("Can we put you in contact with Pablo Peña (from Execution Finance, El-Mann advisors)?").

Documents produced by SF in the underlying litigation confirm that the El-Mann family was behind these newly formed entities.  A pre-transaction presentation given to one of Gayosso's creditors by Mr. Peña's advisory firm ExeFin detailed the prominent role of the El-Mann family and the companies they controlled in the transaction and post-acquisition strategy.[4]  The El-Mann Family wanted to preserve Gayosso's business operation and continuity while using Grupo-E to

---

[3]  Documents designated confidential (and filed under seal) in the underlying action support these facts and expand on them with additional detail. Because the documents were not sent or received by the Fibra Uno Parties, the protective order in that case prevents their use here.  At the Court's request, AIC will seek an agreement with SF permitting it to submit complete or partially redacted versions to the Court.

[4] The presentation itself is designated confidential and, pursuant to the protective order in the underlying case, AIC does not attach it here. As with the other such documents referenced herein, should the Court request it, AIC will seek an agreement with SF permitting it to submit the document in this action.

replace Advent's board members with some of its own.  And a key goal of the transaction was to increase value by using FUNO and Grupo E properties to sell Gayosso's goods and services.

The El-Mann family continued to play a central role throughout the sale process.  In mid-August 2019, Gayosso's then-CEO sent Mr. Peña an email stating he had "met with Andre" and making clear that the El-Mann family would have the final say in Gayosso's operations.  Ex. 38 (referencing a proposal that "had already been discussed with the El-mann [sic]" family and was rejected because "it is not [their] philosophy").  By early December 2019, Fibra Uno—including through its Deputy CEO Mr. Robina—had become directly involved in due diligence, ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ Fibra Uno and by extension the El-Manns gained access to the virtual data room containing thousands of documents Gayosso provided in response to SF's due diligence requests.  *See*, *e.g.*, Ex. 41.

The transaction closed in January 2021.  The parties to the final SPA were Gayosso, certain AIC affiliates (as the "Sellers"), SF (as the "Purchaser"), and Fibra Uno (as the "Acquirer of the Real Estate Assets").  Ex. 27 at 15.  SF did not put up any of its own money to purchase Gayosso; instead, the transaction was financed through Fibra Uno's purchase of Gayosso's real estate assets, as well as a loan from HSBC to refinance Gayosso's existing debt.  Ex. 27 at 8.  Pursuant to the terms of the SPA, after acquiring Gayosso's real estate, Fibra Uno leased it back to Gayosso, now owned by SF.  Ex. 27 at 3.

2.    ***The Mexican and U.S. Proceedings***

Soon after it acquired Gayosso, SF set out to coerce AIC into an extortionate settlement. Initially, it sued AIC and its affiliates in Mexican civil court and sought a preliminary order freezing hundreds of millions of dollars in assets owned by AIC-managed funds with no connection to the Gayosso transaction.  Ex. 29 ¶ 152; Ex. 42 ¶ 152.  In April 2022, the Mexican civil court denied this relief, with this denial upheld by a second court.

Rejected by Mexican civil courts, SF turned to Mexican criminal courts for leverage.  It hired criminal lawyers well known for their close connections to compromised prosecutors and judges, as well as their use of criminal process to gain an advantage in civil disputes.  With the guidance of its criminal counsel, SF named employees of AIC and its affiliates as perpetrators of the purported fraud in the criminal proceedings.  A Mexico City judge then issued arrest warrants for these individuals based on glaringly inadequate evidence, including against one employee who signed only a related agreement *not* alleged to be fraudulent).  Despite the baseless nature of SF's allegations, the judge then issued the same asset embargo the Mexican civil courts had denied, locking up hundreds of millions of dollars of assets owned by AIC-managed funds unrelated to the Gayosso transaction.  Ex. 29 ¶¶ 180, 182, 185, 187, 196, 208 (AIC Counterclaims); Ex. 42 ¶¶ 180, 182, 185, 187, 196, 208 (SF Answer).  Based on the discovery that AIC has obtained to date, it is apparent that Fibra Uno provided support to SF in the criminal action, including by sharing financial information that SF's experts relied upon in their reports submitted to the criminal court.[5]

---

[5] As with the documents referenced *supra* at 7 n.3, materials designated confidential in the underlying action also support these facts, but the protective order in that case prevents their use here.  At the Court's request, AIC will seek an agreement with SF permitting it to submit complete or partially redacted versions to the Court.

After Advent refused to be coerced by SF's abuse of the Mexican criminal justice system, SF turned to the United States federal courts for additional leverage. On March 29, 2023, Servicios Funerarios filed a complaint against AIC in the Massachusetts Action, making the same unfounded allegations as its meritless civil and criminal claims in Mexico.

In response to SF's complaint, AIC filed Counterclaims in the Massachusetts Action addressing SF's abuse of the Mexican criminal justice system in order to gain leverage over AIC.[6] As alleged in detail in AIC's Counterclaims, the Mexican arrest warrants and embargoes are wholly illegitimate, and SF was only able to obtain them by retaining the services of Garcia Gonzalez y Barradas Abogados ("GGB"), a criminal law firm notorious for its corrupt abuse of the Mexican criminal justice system. Ex. 29 ¶¶ 54–57. Those abuses have been widely documented in the Mexican press, *id.*, and since AIC's Counterclaims were filed, feature in a new book published by a respected Mexican journalist, Hernán Gómez Bruera. Ex. 44 (HERNÁN GÓMEZ BRUERA, TRAICIÓN EN PALACIO: EL NEGOCIO DE LA JUSTICIA EN LA 4T (Grijalbo 2023)).[7] The book, titled *Treason in the Palace*, explains how SF's criminal counsel employs a consistent playbook through which it obtains favorable monetary settlements in civil matters for its clients by exerting illegitimate influence with a network of prosecutors and judges who issue baseless arrest warrants, embargoes, and freezing orders. Ex. 44 at 8, 11, 14—16, 23—26, 30—33.

---

[6] In addition, in June 2023, AIC filed litigation in Delaware's Court of Chancery seeking to terminate a financial guarantee and other remedies in light of SF's pursuit of claims in Massachusetts and Mexico against parties it unambiguously covenanted not to sue (including AIC). *Advent International Corporation vs. Servicios Funerarios GG S.A. de C.V.*, No. 2023-0647-LWW. AIC recently moved for summary judgment in the Delaware action.

[7] AIC has excerpted chapters 8 and 13 from a translation of this book for the Court's convenience. AIC would happily provide a certified translation of the book in its entirety and/or send to Chambers a hard copy of the book in its original language (Spanish) should the Court so request.

*Treason in the Palace* explains that SF's Mexican criminal counsel often collaborated with a prosecutor named Andrés Maximino Pérez Hicks,[8] who expedites SF's Mexican criminal counsel's cases and gives them "privileged treatment." *Id.* at 22.  Notably, Pérez Hicks is the same prosecutor who requested and obtained the unsupported arrest warrants against AIC's and its affiliates' executives and embargoes against unrelated assets of AIC-managed funds.  Ex. 45 at 11.  The book also implicates various Mexican judges in GGB's corrupt network, including Judge Júpiter López Ruíz, who issued the arrest warrants and asset embargoes in this matter, and Judge Héctor Fernando Rojas Pacheco, who extended the embargoes beyond the maximum allowable 60 days.  Ex. 44 at 25, 26; Ex. 45 at 11.  Neither AIC nor any affiliate received notice of the initial embargo hearing or an opportunity to be heard, and AIC has since learned that the hearing—which resulted in the freezing of hundreds of millions of dollars in assets—lasted only nine minutes.

Notably, *Treason in the Palace* also details the relationship between Mr. El-Mann and SF's Mexican criminal counsel, describing how GGB negotiated a settlement with the Mexican authorities on Mr. El-Mann's behalf in connection with claims that Mr. El-Mann, through Fibra Uno and others, had defrauded a Mexican housing agency of almost MXN 6 billion.  Ex. 44 at 15; Ex. 46.  The Mexican authorities agreed not to prosecute Mr. El-Mann and his brother, Max El-Mann, in exchange for a restitution payment of MXN 2 billion.  Ex. 44 at 15.  The other individuals accused of participating in this fraudulent scheme—who did not retain SF's Mexican criminal counsel—were unable to obtain a similar sweetheart deal and were subject to prosecution.  Ex. 44 at 11, 16, 17, 25, 26.[9]

---

[8]   Mr. Hicks is no longer in office, though the reason is unclear.

[9]   Mexican legal commentators have observed the suspect nature of Mr. El-Mann's  reparation agreement.  Ex. 46, and a Mexican court recently ordered prosecutors to reopen the investigation into Mr. El-Mann and his brother, Ex. 47.  In addition, the Mexican National Banking and Securities Commission (*Comision Nacional Bancaria y de Valores*), the Mexican independent

**3.**     ***AIC's Prior Efforts To Obtain Discovery From Fibra Uno And The El-Manns In The Massachusetts Action***

In light of the Fibra Uno Parties' central relevance to the Massachusetts Action, AIC has diligently pursued discovery from them since the inception of the case. In response to AIC's discovery requests, SF freely admitted that the Fibra Uno Parties have relevant information. When asked to identify all "person[s] with knowledge of the Gayosso transaction," SF named "Andre Elmann[sic] Arazi" and "Gonzalo Robina" as individuals from "Fibra Uno" who "analyzed and advised Fibra Uno for Gayosso's sale and leaseback transaction." Ex. 35 at 25. However, SF refused to include the Fibra Uno Parties as custodians on the basis that they do not have possession, custody, or control over their documents. After AIC moved to compel, the Massachusetts court held that while AIC may have "show[n] that Fibra Uno is likely to possess relevant information," that "is insufficient to establish [SF's] control." Ex. 49 at 7.

AIC is also seeking discovery from Messrs. El-Mann and Robina and Fibra Uno through the Hague Evidence Convention. AIC and SF submitted a joint motion requesting the issuance of certain letters rogatory, including letters rogatory to the Fibra Uno Parties seeking the same documents and testimony sought in the Subpoenas. In their motion, SF and AIC jointly represented that the discovery sought was relevant and "within the scope of discovery as set forth in Rule 26 of the Federal Rules of Civil Procedure." Ex. 50 at 9. The parties jointly described Messrs. El-Mann and Robina as having "analyzed and directed the buyer-side of the acquisition of Gayosso[.]" *Id*. at 10. Additionally, the parties jointly represented that Fibra Uno "is a party to the SPA, has specialized knowledge of the negotiations of the Gayosso transaction, the due

---

agency that oversees the Mexican financial system, ruled that Mr. El-Mann violated Mexico's securities laws by failing to disclose to the stock market that he was under investigation for financial crimes and had negotiated the reparation agreement. Decl. Ex. 48.

diligence provided to Servicios Funerarios, the value of the transaction, and the alleged damage Servicios Funerarios." *Id.* at 11.  Recognizing that SF's and AIC's request complied with Rule 26, the Massachusetts district court issued the letters rogatory to Messrs. El-Mann and Robina and Fibra Uno.  Ex. 51.[10]

### C.     Serving and Negotiating the Subpoenas

During the week of November 14, 2023, Messrs. El-Mann and Robina were in New York City to meet with potential investors in connection with the planned IPO of Fibra Next, as well as to present at FUNO Day 2023.  On November 14 and 15, 2023, Vincent Manetta and Baldeo Drepaul, licensed process servers employed by Court Support, Inc. ("Court Support"), served the Fibra Uno Parties in midtown Manhattan.  Ex. 52; Ex. 53.  Subpoenas were also sent by mail.  Ex. 54.

On November 28, 2023, counsel for the Fibra Uno Parties provided AIC with objections and responses to the Subpoenas.  Exs 55-66.  Because the objections were boilerplate and did not expressly state whether the Fibra Uno Parties would comply with any part of the subpoena, counsel for AIC requested to meet and confer.

---

[10]   While AIC will continue to pursue the requested information via the Hague Convention, letters rogatory are not a substitute for obtaining this information through the Federal Rules of Civil Procedure. *See, e.g.*, *In re Flag Telecom Hldgs., Ltd. Sec. Litig.*, 236 F.R.D. 177, 182 (S.D.N.Y. 2006) ("The discovery procedures provided by the Hague Convention . . . are neither the exclusive nor even, necessarily, the first means for obtaining discovery from a foreign entity, as compared with the Federal Rules of Civil Procedure.") (quotation omitted); *Motorola Credit Corp. v. Uzan*, 132 F. Supp. 3d 518 (S.D.N.Y. 2015) (Hague Convention "did not provide the exclusive or mandatory procedure for obtaining documents located abroad, did not require first resort to the Hague Convention, and did not deprive a district court of its power to order those subject to its jurisdiction to produce documents located abroad"). Indeed, for reasons outside of the Massachusetts' court's control, AIC is concerned that the letters rogatory may never be issued by Mexican authorities or responded to by the recipients—at least in a timely manner.

On December 4, 2023, counsel for AIC met and conferred with counsel for the Fibra Uno Parties. At that meet and confer, counsel for AIC explained the relevance of the information sought by the subpoenas and expressed that the objections to them were insufficient. In response, counsel for the Fibra Uno Parties represented that it would be willing to consider producing a narrowed set of documents, but only if AIC agreed to take depositions off the table entirely. Counsel for AIC offered to conduct the depositions in Mexico City to alleviate any burden associated with complying with the Subpoenas *ad testificandum*, but counsel for the Fibra Uno Parties refused. Because the requested discovery is critical to AIC's claims and defenses, AIC now moves to compel the Fibra Uno Parties' compliance with the Subpoenas.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The "discovery parameters set forth in Rule 26," including its relevance standard, "also apply to subpoenas served upon non-parties." *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017). "The burden of demonstrating relevance is on the party seeking discovery," but "[o]nce relevance has been shown, it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) (citation omitted).

"Motions seeking to enforce or quash subpoenas are properly made in the court within the district that compliance is sought, and not the issuing court." *Avila v. Target Corp.*, 2022 WL 17540322, *2 (E.D.N.Y. Nov. 18, 2022).

## ARGUMENT

The Court should compel the Fibra Uno Parties to comply with the Subpoenas. Relevance is not in dispute, and the Fibra Uno Parties' boilerplate jurisdictional and service objections are meritless.

## I.   THE FIBRA UNO PARTIES POSSESS RELEVANT INFORMATION

There is no dispute that the Fibra Uno Parties possess information relevant to the case through their central involvement in the Gayosso transaction, nor have the Fibra Uno Parties tried to suggest otherwise. "A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (internal quotation marks omitted). Pursuant to Rule 26(b)(1), parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). Relevance in this context "'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" *AP Links, LLC v. Russ*, 299 F.R.D. 7, 11 (E.D.N.Y. 2014) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Fibra Uno and Messrs. El-Mann and Robina all possess relevant information due to their significant involvement in the Gayosso transaction. Fibra Uno was a party to the SPA and financed the transaction through its acquisition of Gayosso's real estate assets. Ex. 27. Fibra Uno also provided information to SF's expert in connection with its criminal allegations in Mexico against Advent. *See supra* at 9 n.5. Messrs. El-Mann and Robina are Fibra Uno executives who drove the decision to purchase Gayosso and were active in the due diligence process and deal

negotiations.  Mr. El-Mann, in his capacity as the CEO of Fibra Uno and as a controller of Grupo-E, was heavily involved in the decisions to purchase Gayosso and ultimately approved the terms of the offers.  Ex. 34.  ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████  Ex. 40.    Both have unique information concerning the mechanics of the negotiations and the due diligence process, and thus possess unique information relevant to the parties' claims and defenses.  The Fibra Uno Parties will thus, at the very least, have information relevant to whether any alleged misrepresentations were made by AIC, whether those alleged misrepresentations were material, and whether SF relied upon those alleged misrepresentations.

Indeed, SF—Fibra Uno's partner in the Gayosso transaction—acknowledged in the Massachusetts Action that the Fibra Uno Parties have relevant information per Rule 26 and requested (jointly with AIC) that the Massachusetts court issue letters rogatory to the Fibra Uno Parties via the Hague Convention.  Ex. 50.  The Massachusetts court granted that request, issued the letter rogatory, and confirmed that they conformed with Rule 26.  The requests in the letters rogatory are the same as those in the Subpoenas, and counsel for the Fibra Uno Parties have conceded the relevance of the information sought.

## II.    THE SUBPOENAS WERE PROPERLY SERVED

The Fibra Uno Parties have objected to service under Rule 45(b), which provides that "[s]erving a subpoena requires delivering a copy to the named person[.]"  Fed. R. Civ. P. 45(b)(1).  "Delivery" under Rule 45 means "a manner of service reasonably designed to ensure actual receipt of a subpoena by a witness."  *Cartier v. Geneve Collections, Inc.,* 2008 WL 552855, at *1 (E.D.N.Y. Feb. 27, 2008).  Methods alternative to personal service "under Rule 45 must be accomplished in accordance with Rule 4, which in turn . . . permits service on an individual to be made in accordance with the state law where the district court sits or where service is made."  *Sec.*

*& Exch. Comm'n v. Pence*, 322 F.R.D. 450, 455 (S.D.N.Y. 2017) (citation omitted); *see also In re Three Arrows Cap., Ltd.*, 649 B.R. 143, 147 n.1 (Bankr. S.D.N.Y. 2023) ("Rule 4 precedent regarding adequacy of service is instructive, if not controlling" for service of subpoenas on persons.); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Am.*, 262 F.R.D. 293, 305–06 (S.D.N.Y. 2009) (Where Rule 45 "does not specify what constitutes personal service," courts "rely on the service of process requirements on corporations set out in Federal Rule of Civil Procedure 4.").

While the Fibra Uno Parties have not provided the basis for their objection, service on Messrs. El-Mann and Robina and Fibra Uno was proper under both the Federal Rules of Civil Procedure and the New York Civil Practice Law and Rules.  On November 14, 2023, licensed process server Mr. Drepaul personally served Mr. El Mann in front of Citadel's New York headquarters providing him copies of the El-Mann, Robina, and Fibra Uno subpoenas.  Ex. 52; Ex. 53.  Personal service constitutes "delivery" under Rule 45.  *Sec. & Exch. Comm'n v. Pence*, 322 F.R.D. 450, 453 (S.D.N.Y. 2017).  Service on Mr. Robina was also proper. The subpoenas were delivered to the hotel where Mr. Robina was residing and then mailed to Fibra Uno's address in compliance with CPLR § 308(2).  Ex. 52; Ex. 54.  This "alternative" method of service, consistent with New York law, was effective.  *Sec. & Exch. Comm'n v. Pence*, 322 F.R.D. 450, 454 (S.D.N.Y. 2017).

Rule 45 does not specify how to personally serve a corporation, so "courts in this Circuit rely on the service of process requirements on corporations set out in Federal Rule of Civil Procedure 4."  *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 305 (S.D.N.Y. 2009).  Rule 4 provides that a foreign corporation can be served "by delivering a copy of the [papers] to an officer."  Fed. R. Civ. P. 4(h)(1)(B).  Because Mr. Drepaul properly served

Mr. El-Mann—the CEO of Fibra Uno—with the El-Mann and the Fibra Uno subpoenas, Fibra Uno was properly served.

## III.  THE COURT HAS PERSONAL JURISDICTION OVER THE SERVED PARTIES

There is no basis for the Fibra Uno Parties' objections "to the subpoena[s] in [their] entirety for lack of personal jurisdiction."  Exs. 61-66.  A court may exercise personal jurisdiction over a third party under Rule 45 if (1) service was proper, (2) there is a statutory basis for personal jurisdiction, and (3) exercising jurisdiction is consistent with constitutional due process.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59—60 (2d Cir. 2012).  Service on each of the Fibra Uno Parties was proper, as explained above.  For the foregoing reasons, the statutory and constitutional requirements are also satisfied for each of the Fibra Uno Parties.

### A.    This Court Has Tag Jurisdiction Over Mr. El-Mann

This Court can exercise personal jurisdiction over Mr. El-Mann because he was personally served while physically present in New York.  Under Rule of Civil Procedure 4(e)(2), "'tag' jurisdiction—personal service on an individual within the state—remains a valid method of acquiring personal jurisdiction over an individual."  *Mohamad v. Rajoub*, 2018 WL 1737219, at *5 (S.D.N.Y. Mar. 12, 2018) (quoting *Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 553 (S.D.N.Y. 2005) *aff'd*, 332 P. App'x 643 (2d Cir. 2009)); *see id.* (holding the same, under Rule 4(k)(1)(a) and CPLR § 301).  "The notion of transient jurisdiction has been codified in CPLR Sec. 301, which provides that '[a] court may exercise jurisdiction over persons, property, or status as might have been exercised heretofore.'"  *Matter of Le*, 637 N.Y.S.2d 614, 616 (Sup. Ct. 1995) (citation omitted).  Indeed, the commentary to CPLR § 301 explains that "[s]ervice of process on the defendant while she is present in New York is a time-honored basis for the exercise of in personam jurisdiction. . . . The purpose and duration of a defendant's presence in New York

18

generally are irrelevant to the inquiry. . . . 'Transient' presence, in other words, will suffice."  N.Y. C.P.L.R. § 301 (McKinney).

Tag jurisdiction is also "consistent with due process."  *In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002); *see Burnham v. Sup. Ct. of Cal.*, 495 U.S. 604, 610 (1990) ("Among the most firmly established principles of personal jurisdiction in American tradition is that the courts of a State have jurisdiction over nonresidents who are physically present in the State . . . and that once having acquired jurisdiction over such a person by properly serving him with process, the State could retain jurisdiction to enter judgment against him, no matter how fleeting his visit."); *Sae Han Sheet Co. v. Eastman Chem. Corp.*, 2017 WL 4769394, at *7 (S.D.N.Y. Oct. 19, 2017) ("[A] court has personal jurisdiction over an individual who was physically served process in the forum, even though the person's presence was fleeting.").

### B.     This Court Has Personal Jurisdiction Over the Fibra Uno Parties Because Of Their Fundraising Activities

This Court also has personal jurisdiction over each of the Fibra Uno Parties under New York's long-arm statute and the due process clause because the discovery sought in this case relates to the Fibra Uno Parties' solicitation of Fibra Uno investments in New York.

New York's long-arm statute grants courts jurisdiction over "any non-domiciliary [] who in person or through an agent [] transacts any business within the state."  CPLR § 302(a)(1); *see, e.g.*, *Simonson v. Int'l Bank*, 14 N.Y.2d 281, 288 (1964) (CPLR 302 "clear[ly]" applies "to foreign corporations.").  The long-arm statute is a "single-act statute requiring but one transaction . . . to confer jurisdiction in New York.  *State v. Vayu, Inc.*, 39 N.Y.3d 330, 335 (2023).   The Fibra Uno Parties readily satisfy this standard because they regularly solicit New York investments.  In Fibra Uno's own words: "A significant portion of Fibra Uno's shareholders are U.S. institutional investors," many of whom are based in New York.  Ex. 2 at 2; *see also* Ex. 3; Ex. 4 at 1.  Fibra

Uno even hosts a "FUNO Day" every year in New York City at which Messrs. El-Mann and Robina solicit investments from New York companies and individuals. Exs. 10-18. Such "frequent and sustained communications with individuals or entities in New York for the purposes of soliciting investments from them in New York is sufficiently purposeful to constitute a New York business transaction." *Suber v. VVP Servs., LLC*, 2021 WL 4429237, at *5 (S.D.N.Y. Sept. 27, 2021), *aff'd in part, rev'd on other grounds, remanded,* 2023 WL 115631 (2d Cir. Jan. 10, 2023).

Soliciting investors in New York is also sufficient to establish minimum contacts and purposeful availment for purposes of the Due Process Clause. *See, e.g.*, *Lobatto v. Berney*, 1999 WL 672994, at *8 n.10 (S.D.N.Y. Aug. 26, 1999) ("Plaintiffs' allegation that jurisdiction over Berney is appropriate because his agents . . . solicited investors . . . in the United States would, if proven, support jurisdiction."); *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 4858299, at *5—6 (S.D.N.Y. July 31, 2023) (finding the promotion of digital assets at issue sufficient to establish personal jurisdiction); *see also, e.g.*, *Rippey v. Smith*, 16 F. App'x 596, 598 (9th Cir. 2001) (soliciting investments in California constitutes purposeful availment); *cf. Pfaff v. Deutsche Bank AG*, 2020 WL 3994824, at *10 (S.D.N.Y. July 15, 2020) (collecting cases holding trading securities via a New York exchange constitutes purposeful availment). Indeed, the Fibra Uno Parties hired New York-based counsel and financial advisors to advise them in connection with Fibra Uno's private placements, evidencing an intent to benefit from the forum's laws. Ex. 1 at 293.

Finally, exercising specific jurisdiction over the Fibra Uno Parties is proper because there is a sufficient "affiliation between the forum," "the underlying controversy," and the Fibra Uno Parties' solicitation of investments in New York. *In re del Valle Ruiz*, 939 F.3d 520, 529 (2d Cir.

2019) (internal citations omitted).  New York does not require a causal relationship between the business transaction and the claim asserted; it is enough that "the latter is not completely unmoored from the former."  *Id*.; *see also Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (N.Y. 2012) ("[I]n light of all the circumstances, there must be an articulable nexus or substantial relationship between the business transaction and the claim asserted.") (cleaned up).

Here, the Fibra Uno Parties financed the Gayosso transaction through the sale and leaseback of Gayosso's real estate assets.  Ex. 27.  The Fibra Uno Parties purchased these properties on behalf of and for the benefit of their shareholders, including their institutional investors based in New York City.  As further evidence of the importance of these New York investors, Fibra Uno maintained an investor information office in New York for a significant period of time, including the period before the Gayosso transaction.  Ex. 19; Ex. 20.  There is a clear nexus between the Fibra Uno Parties' investment in Gayosso's real estate and their New York contacts—*i.e.*, soliciting investments from institutional investors in New York; traveling to New York to update its New York shareholders about Fibra Uno's ongoing investment strategy and the status and health of their investment; and their use of New York-originated capital to acquire assets.  Because the Fibra Uno Parties' New York contacts relate to raising capital, investor relations, acquisition strategy, and use of investor capital to acquire real estate, the relatedness requirement is satisfied, even if these meetings were about a different transaction.  *See, e.g.*, *In re Steinmetz*, 2022 WL 170851, at *4–5 (S.D.N.Y. Jan. 19, 2022) (finding relatedness requirement satisfied where New York "meetings related to the Simandou mining rights . . . at the core of the UK Litigation . . . even if the meetings themselves were about a different transaction that never came to fruition"); *In re Abraaj Inv. Mgmt. Ltd.*, 2023 WL 2674752, at *5 (S.D.N.Y. Mar. 29, 2023) (banks required to comply with discovery relating to New York-based transactions).

## IV.   THE SUBPOENAS COMPLY WITH RULE 45 OR, IN THE ALTERATIVE, SHOULD BE MODIFIED TO COMPLY

### A.   The Subpoenas Comply with the Geographical Limitations of Rule 45

The Fibra Uno Parties object to the Subpoenas on the ground that they do not comply with the geographic limitations of Federal Rule of Civil Procedure 45(c).  It is the burden of the party challenging a subpoena to prove they fall under the protections of Rule 45.  *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996).  Here, the Fibra Uno Parties cannot do so.

Federal Rule of Civil Procedure 45(c) requires that the place of compliance for a deposition or document production subpoena be "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A).  As discussed above, the Fibra Uno Parties regularly transact business in New York, including meeting in person with investors to solicit funds and hosting annual events in New York City geared at providing investment updates to their New York investors on their current investments and future investment strategies.  Further, during the time period of the Gayosso transaction (2019 and 2020), Fibra Uno maintained an investor relations office managed by their PR firm Grayling in New York City at 300 Vesey Street.  Ex. 20.

Regardless, the purpose of the 100-mile requirement "is to avoid imposing excessive travel burdens on persons subpoenaed[,]" *Yukos Cap. S.A.R.L. v. Feldman*, 2016 WL 3181151, at *1 (S.D.N.Y. June 3, 2016), and in that spirit, AIC has offered (and is still willing) to require compliance with the Subpoenas in Mexico City—where each Served Party resides—or any other place the Fibra Uno Parties would consent.  Courts routinely modify third-party subpoenas to order compliance at locations outside of the United States.  *See id*, at *3 (modifying place of compliance for deposition from New York to London where third-party residing and working in London "was

22

duly served" in New York and court had "jurisdiction over his person"); *Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transp.*, 180 F. Supp. 3d 290, 294 (S.D.N.Y. 2016) (modifying place of compliance for deposition and document production from New York to Turkey); *see also Comm-Tract Corp. v. N. Telecom, Inc.*, 168 F.R.D. 4, 7 (D. Mass. 1996) (modifying a subpoena to require the witness to submit to a videotape deposition in Hong Kong).

Despite this, the Fibra Uno Parties maintain that they will not agree to anything involving a deposition.  But "[a]n order precluding the deposition of a witness is of course the exception rather than the rule in federal court, and in order to obtain such relief, the party resisting discovery must show 'good cause.'" *Martin v. Valley Nat'l Bank of Arizona*, 140 F.R.D. 291, 314 (S.D.N.Y. 1991) (citations omitted).  Permitting the Fibra Uno Parties to seek refuge in Rule 45 under these circumstances would be plainly inconsistent with "the point of that provision." *Yukos*, 2016 WL 3181151, at *1.

### B.    The Subpoenas Present No Undue Burden on The Fibra Uno Parties

The Fibra Uno Parties made blanket objections to the Subpoenas as "unnecessarily complex, onerous, and unduly burdensome" but do not provide any explanation of the burden posed by the production or deposition subpoenas.  This is insufficient.  "Because the burden is on the party seeking to quash a subpoena, that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Kirschner v. Klemons*, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005).

Although these blanket objections were insufficient, to try to avoid a dispute, AIC inquired as to the nature of the alleged burden.  The Fibra Uno Parties suggested that because they believe the requested information is available from the parties to the Massachusetts Action, any production of documents or deposition would be unduly burdensome.  Not so.  SF is merely a special purpose

vehicle set up to facilitate the transaction for the Fibra Uno Parties and their agent, Mr. Peña.  It has no employees and no email server, and SF has refused to include Messrs. El-Mann or Robina as custodians or search the Fibra Uno email server.  The Fibra Uno Parties possess unique information concerning their decision to acquire Gayosso's real estate assets, the due diligence of the Gayosso transaction, as well as their valuation of the Gayosso transaction.  All of this information is directly relevant to the Massachusetts Action where SF has alleged that Advent fraudulently concealed relevant information as to the value of the Gayosso transaction.  The Fibra Uno Parties also have unique information concerning their involvement in the illegitimate Mexican criminal proceedings, including their provision of information to SF's expert who prepared a report justifying SF's criminal complaint.

Measured against the central relevance of the Fibra Uno Parties' documents, any burden of producing documents would be minimal.  *See supra* Section I.  The requests in the Subpoenas were targeted and specific, and AIC remains willing to negotiate how collection and searches are done to minimize any burden.  But the Fibra Uno Parties' "mere assertion that a subpoena is burdensome, without evidence to prove the claim, cannot form the basis for an 'undue burden' finding."  *In re Cty. of Orange*, 208 B.R. 117, 121 (Bankr. S.D.N.Y. 1997).  The Fibra Uno Parties cannot be shielded from discovery solely "on the ground" they are "not a party to the action"— much less when they *are* the entities behind the party in the action—and, having specified no other reason for their claim of undue burden, should be compelled to produce the requested documents. *Wertheim Schroder & Co.  v. Avon Prods., Inc.,* 1995 WL 6259, at *6 (S.D.N.Y. Jan. 9, 1995).

## **<u>CONCLUSION</u>**

For the reasons set forth above, AIC respectfully requests that the Court (i) compel the Fibra Uno Parties to comply with the Subpoenas as served, or (ii) modify the Subpoenas to allow for compliance in another jurisdiction.[11]

---

[11]  AIC reserves the right to seek an award of fees and costs associated with the Fibra Uno Parties' failure to comply with the Subpoenas.  *See* Fed. R. Civ. P. 45(g); *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, 2014 WL 4308355, at *1–2 (S.D.N.Y. Aug. 26, 2014) (holding party in contempt and awarding attorney's fees for failing to comply with subpoena).

Dated: January 10, 2024

Respectfully submitted,

*/s/ Peter L. Welsh*
Peter L. Welsh
Daniel V. Ward*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7050
Peter.Welsh@ropesgray.com
Daniel.Ward@ropesgray.com

Andrew J. Rossman
Nicholas A. S. Hoy
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
andrewrossman@quinnemanuel.com
nicholashoy@quinnemanuel.com

Gabriel F. Soledad
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com

Joseph H. Margolies
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
josephmargolies@quinnemanuel.com

*Counsel for Petitioner AIC*

*\*Pro Hac Vice forthcoming*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

ADVENT INTERNATIONAL
CORPORATION,

               *Petitioner*,

v.

ANDRE EL-MANN ARAZI, GONZALO
PEDRO ROBINA IBARRA, FIBRA UNO
ADMINISTRACION S.A. DE C.V.

               *Respondents*.

Misc. Case No.:

Underlying Action:

*Servicios Funerarios GG, S.A. de C.V. v.
Advent International Corporation*, Case No.
23-CV-10684-IT (D. Mass.)

## **PROPOSED ORDER**

Upon consideration of Petitioner Advent International Corporation's ("AIC") motion to compel Respondents Andre El-Mann Arazi, Gonzalo Pedro Robina Ibarra, and Fibra Uno Administracion S.A. de C.V. (together, the "Fibra Uno Parties") to produce documents requested by the subpoenas *duces tecum* and *ad testificandum* issued to the Fibra Uno Parties on November 14 and 15, 2023, pursuant to Federal Rule of Civil Produce 45, and any opposition thereto,

IT IS HEREBY ORDERED that AIC's motion to compel is GRANTED.

IT IS FURTHER ORDERED that the Fibra Uno Parties immediately take all necessary steps to produce to AIC all documents responsive to AIC's subpoena *duces tecum*, with production to be completed within two weeks of entry of this Order.

IT IS FURTHER ORDERED that the Fibra Uno Parties must appear for depositions on the date provided in the subpoenas *ad testificandum*.

Dated:                           _____
                                       UNITED STATES DISTRICT COURT JUDGE