# EXHIBIT 42

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

SERVICIOS FUNERARIOS GG, S.A. DE C.V.,                    No. 23-cv-10684-IT

      Plaintiff / Counterclaim-Defendant,

      v.

ADVENT INTERNATIONAL CORPORATION,

      Defendant / Counterclaim-Plaintiff.

_____/

## PLAINTIFF'S ANSWER TO DEFENDANT'S COUNTERCLAIM

      Plaintiff Servicios Funerarios GG, S.A. DE C.V. ("Servicios Funerarios") answers, pursuant to Fed. R. Civ. P. 12, the Counterclaim (the "Counterclaim") filed by defendant Advent International Corporation ("Advent"), as follows:

Overall Response

      1.     Advent's Counterclaim rests on the baseless and scurrilous assertion that the arrest warrants and criminal embargoes issued in Mexico as a result of Advent's fraud were issued because "Servicios Funerarios and its counsel influenced the prosecutor's and criminal court's actions by use of illegitimate means." (Counterclaim at ¶ 181; *see also id*. at ¶¶ 193, 206, 214.)  That reckless attack on the integrity of Plaintiff's counsel and of the Mexican prosecutors and courts, purportedly based upon "information and belief," is totally without support.  Indeed, in its Initial Disclosures, in which a party is required to disclose documents and electronic information it "may use to support its claims," Fed. R. Civ. P. 26(a)(1)(A)(ii), Advent fails to identify even a single piece of evidence that supports its defamatory allegations.

1

2.       In addition to making up conclusory allegations, Advent omits from its fairytale facts that disprove its claims. For example, among other things, Advent neglects to mention that the judge who issued the arrest warrants and the initial criminal embargo was different than the judge who extended the criminal embargoes.  Or that the criminal embargoes have been extended by another judge and have been reviewed at three levels by seven federal judges.  Nor does Advent mention that neither Servicios Funerarios nor its Mexican criminal counsel had any say at all in the selection of the prosecutor and judges who have engaged in what Advent refers to as "illegitimate means."  In all, Advent advances, without a single supporting fact, a narrative that Servicios Funerarios and its Mexican criminal counsel conspired with 10 different judges to have "illegitimate" arrest warrants and embargoes issued against it and its representatives.  There is simply no support – none – for Advent's attempt to end-run the Mexican judicial system under which it has chosen to operate.

3       Conspicuously missing from the Counterclaim is any actual discussion of the fraudulent actions described in detail in Servicios Funerarios' Complaint.  Nothing about Gayosso's practice of double-invoicing, removing of invoices from the financial accounting system, misstating of the cost of graves and caskets, or omission of liabilities, including a contract that significantly impairs the value of Gayosso.  Not a word.  Instead, the best Advent can muster is to argue in broad and unspecific terms that "Servicios Funerarios and its advisors were provided access to a virtual data room" and "had unfettered access to Gayosso's management," (Counterclaim at ¶¶ 102, 103), as if any of the fraudulent acts were disclosed in the data room or by management.  They were not, as Servicios Funerarios will prove in this case.  The Counterclaim should be seen for what it is: a transparent attempt by Advent to obscure its own fraud by blaming the victim.

Responses to Specific Paragraphs

1.      Denied.  In paragraphs 14 through 33 of its Complaint, Servicios Funerarios
details the fraudulent acts that it alleges were part of Advent's scheme to unlawfully inflate
the value of Grupo Gayosso S.A. de C.V. ("Gayosso"), which had the effect of inducing
Servicios Funerarios to pay far more to acquire the stock of Gayosso than the company was
worth.  Servicios Funerarios denies Advent's unsupported allegation that it engaged in a
"flagrant abuse of the Mexican criminal justice system."  To the extent Servicios Funerarios
has sought recourse in the Mexican criminal justice system, it was for the purpose of
seeking justice and recovering damages for the fraud that Advent perpetrated upon it.

2.      Denied.  What Advent calls "calculated extortion arising out of a plain-
vanilla private equity transaction" is, in fact, an attempt by Servicios Funerarios to redress
through proper legal channels and using legitimate means the extensive damage it has
suffered as a result of the fraudulent sale of Gayosso.  And far from the sale being "plain
vanilla," it was a transaction riddled with fraudulent misrepresentations – notably, none of
which is specifically addressed by Advent in either its answer or Counterclaim.
Misrepresentations that grossly inflated the value of Gayosso.  As alleged in paragraph 11
of the Complaint, the Stock Sale and Purchase Agreement ("SPA") represented that: "Each
of the statements that Sellers make and give in this Agreement and the documentation
submitted to the other Parties to this Agreement, which is attached hereto, is true and
complete and does not contain false or incorrect data,"  (SPA at § 5.1(h)); "Neither the
Company nor any Subsidiary has liabilities (whether direct or contingent, due or not) that
should be reflected in the Financial Statements in accordance with Applicable Law and
IFRS, but that are not adequately reflected or set forth in the Financial Statements, except
for liabilities resulting from this Agreement," (*id*. at § 5.2(k)(iii)); and "Each of the

statements that [Gayosso] makes and grants in this Agreement and the documentation presented to the other Parties of this Agreement that is attached to it, is true and complete and [does] not [contain data that is false] or incorrect," (*id*. at § 5.3)). Each of these representations, among others, was plainly false.

3.     Admitted that Advent is a "global private investment firm based in Boston" and that it has considerable assets under its management, but Servicios Funerarios is unaware of the specific value of those assets.

4.     Admitted that in January 2021 Servicios Funerarios purchased from private equity investment vehicles controlled and managed (and later dissolved) by Advent 99.9% of the stock of Gayosso for the purchase price of approximately US$224 million. The remainder of the allegations are denied.

5.     Admitted in part and denied in part. Admitted that Mr. Peña was at the time of the transaction employed by Advent on a part-time basis and was an experienced and trusted member of Advent's team, and that he had worked for Advent in Mexico for more than a decade and had received millions of dollars in salary and incentive compensation during his full-time employment by Advent until December 2018. Denied that the fraudulent acts alleged in the Complaint were disclosed to Mr. Peña or that he was otherwise aware of the fraudulent acts. Starting in January 2019, as a part-time employee, Carlos Peña didn't have access to, and did not participate in, the Investment Committees where the principal terms and conditions of the Sale were discussed and agreed upon. Carlos Peña participated in part of the negotiations, at all times under the direction of Enrique Pani Bano and Carlos Alfredo Paz Perez, but without authority or autonomy to agree or to offer terms or conditions other than as directed by Mr. Pani and Mr. Paz and without any disclosure of the fraudulent acts. The remainder of the allegations are denied.

6.     Denied that during the entirety of that time the parties were involved in "back and forth" or that due diligence lasted for seventeen months.  Denied that the fraudulent practices described in the Complaint were disclosed to Servicios Funerarios or its advisors.  Further denied that Servicios Funerarios and its advisors had "unfettered access to Gayosso's financial, operations and accounting information, as well as its management team."  On the contrary, Gayosso's true financial condition and the fraudulent acts described in the Complaint were concealed from, and not disclosed to, Servicios Funerarios or its advisors. The remainder of the allegations are denied.

7.     Denied that "Gayosso executives gave Servicios Funerarios everything it needed to diligence the deal – and then some."  Servicios Funerarios was not "given" the true information concerning Gayosso's financial condition, nor told of the fraudulent practices detailed in the Complaint.  Admitted that prior to the transaction Servicios Funerarios did not claim that "Gayosso's accounting practices ran afoul of applicable standards," for the simple reason that the actual practices were concealed from, and not disclosed to, Servicios Funerarios.  The remainder of the allegations are denied.

8.     Denied that Servicios Funerarios engaged in an extortion scheme and, thus, denied that "troubling signs" of such a scheme "began to emerge" after the transaction.  On the contrary, what emerged after the transaction was that Advent had engaged in the fraudulent scheme to inflate the value of Gayosso.

9.     Admitted that, following the transaction, Carlos Peña became the CEO of Gayosso and so informed Advent.  Denied that he "abruptly" gave notice of his departure. The remainder of the allegations are denied. In fact, Carlos Alfredo Paz Perez recommended to Pablo Peña that Carlos Peña become CEO at the closing of the transaction.

5

10.     Admitted that in November 2021 Servicios Funerarios sent a letter to the
"Sellers" under the SPA, copying Advent's Managing Partners, CFO and Head of
Compliance, which set out the fraudulent acts Servicios Funerarios uncovered had been
committed by Advent and seeking rescission of the transaction.  To this date, a year-and-a-
half after the letter was sent, Advent (or the funds that were the "Sellers") have failed to
provide any factual refutation of the assertions made in the letter or in the Complaint.

11.     Admitted and further note that the letter speaks for itself.

12.     Denied that the allegations in the letter were "manufactured" or false in any
way.  Admitted that Carlos Peña became CEO of Gayosso after the transaction, but denied
that he was Advent's "negotiator" in the transaction or that he had any knowledge of the
fraudulent scheme.  Admitted that Gayosso retained its CFO after the transaction before
eventually terminating him.  During his continued employment by Gayosso, the CFO
confirmed the facts alleged in the Complaint concerning Advent's fraudulent scheme.  The
remainder of the allegations are denied.

13.     Admitted that "Sellers" and Advent rejected the demand made in Servicios
Funerarios' November 2021 letter or, as colloquially put by Advent, refused to "pay up" for
their fraud.  The remainder of the allegations are denied.

14.     Admitted that Servicios Funerarios filed a civil lawsuit in Mexico against,
among others, Advent.  Denied that the lawsuit was a "sham" or that Servicios Funerarios'
damages were "fictitious." The remainder of the allegations are denied.

15.     Admitted that Servicios Funerarios' counsel sought a civil embargo of assets
related to Advent.  Denied that, in doing so, either Servicios Funerarios or its counsel
engaged in any improper conduct or took any improper actions.  Servicios Funerarios
further states that, after the sale of Gayosso, Advent liquidated and dissolved the Special

Purpose Vehicles that were the "Sellers" under the SPA companies that controlled Gayosso. Denied that the embargoes were sought for any improper purpose. They were sought, consistent with the law of Mexico, to ensure that funds would be available to make Servicios Funerarios whole if it prevailed in its action against Advent. Servicios Funerarios' counsel sought the embargo in a manner that was consistent with the applicable procedure in Mexico. The remainder of the allegations are denied.

16.     Admitted that the Mexican civil complaint asserts claims based upon the same fraudulent scheme that was detailed in the November 2021 letter. Denied that any of the allegations in the Mexican civil complaint or in the letter are false but, rather, assert that they are all true and supported by proofs. The remainder of the allegations are denied.

17.     Denied that "the Mexican civil complaint's allegations are false and its claims legally frivolous." Denied that any of the fraudulent actions taken by Advent were ever disclosed to Servicios Funerarios prior to the transaction, including as part of the due diligence conducted by Servicios Funerarios and its advisors. The remainder of the allegations are denied.

18.     Denied.

19.     Denied that it "was plain to AIC that Servicios Funerarios intended the Mexican civil lawsuit as a vehicle for extortion rather than an effort to advance legitimate legal claims." The assertion that Advent "refused to submit" is unclear and, thus, denied. Admitted that the requested civil embargo was denied, and the denial was affirmed by another Mexican court, although the ultimate decision is on appeal.

20.     Denied. Servicios Funerarios sought redress by taking appropriate steps under Mexican law to redress the damage caused to it by Advent.

21.     Denied.  Servicios Funerarios retained a respected Mexican criminal law firm to seek appropriate redress under Mexican law for the damage caused by Advent.

22.     Denied that Servicios Funerarios' criminal counsel committed an "abuse of the Mexican justice system for purposes of extortion on behalf of its clients."  Without knowledge or information sufficient to form a belief about the truth of the allegation that criminal counsel was "the subject of an investigation by Mexico's Attorney General."  Despite its attempt at character assassination, it is noted that none of the attacks against Mexican criminal counsel have been made by Advent before Mexico's courts.  The remaining allegations are denied.

23.     Admitted that Servicios Funerarios availed itself of procedures under Mexican law to report criminal conduct – which is what Advent's fraud constitutes – to prosecutors in Mexico.  Servicios Funerarios (nor its criminal counsel) had no say in which prosecutor was assigned the case.  That prosecutor had complete power and authority with respect to whether to raise the fraudulent conduct before a judge.  The prosecutor had no say in which judge was selected to preside over the matter.  The remaining allegations are denied.

24.     Admitted that Servicios Funerarios availed itself of procedures under Mexican law to report criminal conduct – which is what Advent's fraud constitutes – to prosecutors in Mexico.  Note that neither Servicios Funerarios nor its criminal counsel had a say in which prosecutor was assigned the case.  That prosecutor had complete power and authority with respect to whether to raise the fraudulent conduct before a judge.  The prosecutor had no say in which judge was selected to preside over the matter.  The embargoes issued by the criminal court were extended by another judge and have been reviewed by seven federal Mexican judges (none subject to selection by Servicios

Funerarios, its Mexican criminal counsel, or the prosecutor) sitting on three other courts. The remaining allegations are denied.

     25.    Admitted that one of the assets related to Advent that was the subject of the criminal embargo was Grupo Farmacéutico Somar, S.A.P.I de C.V. ("Somar").  The remaining allegations are denied.

     26.    Admitted that the criminal embargoes were entered and extended after two hearings before a Mexican judge, all in accordance with Mexican law and procedure. Neither Servicios Funerarios nor its counsel participated in those hearings.  The remaining allegations are denied.

     27.    Denied.

     28.    These allegations consist of Advent's opinions and interpretations about Mexican law and, thus, do not require a response.  In any event, the allegations are denied to the extent a response is required.  In particular, the insinuation that Mexican law prohibits an arrest warrant from being issued in circumstances such as those that were before the Mexican criminal judge under the facts here is wrong and, thus, denied.

     29.    These allegations consist of Advent's opinions and interpretations about Mexican law and, thus, do not require a response.  In any event, the allegations are denied to the extent a response is required.

     30.    These allegations consist of Advent's opinions and interpretations about Mexican law and, thus, do not require a response.  In any event, the allegations are denied to the extent a response is required and further note that the criminal asset embargoes were properly issued according to Mexican law, which is why they have been sustained by three different courts.

31.     Without knowledge or information sufficient to form a belief about the truth of the allegation.  Noted that the criminal embargo has been sustained by two different courts.

32.     These allegations consist of Advent's opinions and interpretations about Mexican law and, thus, do not require a response.  In any event, the allegations are denied to the extent a response is required and further note that the criminal asset embargoes were properly issued according to Mexican law, which is why they have been sustained by two different courts.  Further note that Advent has not made before a Mexican court the baseless attacks on the Mexican prosecutor and Mexican courts that it makes here.

33.     Denied.  There was no "abuse of the Mexican criminal justice system," no matter how many times Advent makes the unfounded allegation.

34.     Denied.

35.     Denied.  Not only were there no such "abuses," but noted that Advent has not made in a Mexican court the attack it makes here.

36.     Denied that the embargo was "illegitimately obtained."  Without knowledge or information sufficient to form a belief about the truth of the remaining allegations.

37.      Denied that the embargo was "illegitimately obtained."  Without sufficient knowledge to admit or deny its effects and, thus, deny the remaining allegations.

38.     Without knowledge or information sufficient to form a belief about the truth of the allegations as to the effect of the arrest warrants on the Targeted Employees, but note that the arrest warrants were lawfully issued and any effects flowing from their issuance are not the fault or responsibility of Servicios Funerarios.

39.     Denied.

10

40.     Denied, and note that Servicios Funerarios did not engage in any wrongful or tortious conduct.

41.     These are legal conclusions that do not require a response.

42.     These are legal conclusions that do not require a response.

43.     Admitted.

44.     Without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, but they are consistent with Servicios Funerarios' understanding of Advent's business model.

45.     Without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

46.     Admitted and note that through this ownership structure Advent controlled and managed the "Sellers" under the SPA.

47.     Admitted that Advent purported to have direct or indirect ownership or control of the funds.  Without knowledge or information sufficient to form a belief as to the truth of the allegations regarding the percentage of Somar owned by Advent-managed funds. Specifically denied that Servicios Funerarios engaged in any "abuses of the Mexican justice system."

48.     Without knowledge or information sufficient to form a belief as to the truth of the allegations.

49.     Denied.

50.     Admitted.

51.     Admitted that in January 2021 Servicios Funerarios purchased the shares of stock in Gayosso.  The remaining allegations are denied.

52.     Admitted that Servicios Funerarios is the plaintiff in a pending civil action in Mexico that relates to the transaction and the complaint filed in that action speaks for itself. The remaining allegations are denied, including that the Mexican civil action is "meritless," "pretextual," or in any way improper.

53.     Denied.

54.     Denied, including that Servicios Funerarios or its Mexican counsel has engaged in "illegitimate conduct."

55.     Denied, including that Servicios Funerarios' counsel has engaged in "abuses of the Mexican criminal justice system."

56.     Denied and note that Advent does not have support for this "upon information and belief" allegation.

57.     Denied.

58.     Denied, including that Servicios Funerarios' Mexican counsel has used any improper "influence" in connection with the issuance of the arrest warrants or the criminal embargoes.

59.     Admitted.

60.     Admitted.

61.     Admitted.

62.     Admitted (and note that Advent makes this allegation although it denied essentially the same allegation set out in paragraph 22 of Servicios Funerarios' Complaint).

63.     Denied.

64.     Admitted that after terminating his part-time employment with Advent Mr. Peña became CEO of Gayosso.

65.     Admitted, but note that Carlos Peña's full-time employment with Advent was terminated by Advent in December 2018. Starting in January 2019, Mr. Peña was employed by Advent on a part-time basis with reduced responsibilities and compensation.

66.     Admitted that at the time of the transaction, Mr. Peña was a member of Gayosso's board of directors and attended two meetings of the Finance Committees.  The remaining allegations are denied.

67.     Admitted that after terminating his employment with Advent Mr. Peña became CEO of Gayosso.  The remaining allegations are denied, specifically that Mr. Peña "sold" the shares of Gayosso and that there was any impropriety with his decision to leave Advent and join Gayosso, something that was well-known to Advent and to which Advent did not object.

68.     Denied.

69.     Denied.

70.     Admitted.

71.     Admitted that in 2019 Pablo Peña had some familiarity with Gayosso by virtue of his interactions with the company in 2016 but denied that Mr. Peña at any time prior to the transaction had any knowledge of the Advent's fraudulent actions.

72.     Admitted.

73.     Admitted that throughout the negotiation and sale process, Pablo Peña served as Servicios Funerarios' principal and chief negotiator, but denied as to the remaining allegations.

74.     Denied.

75.     Denied that Servicios Funerarios' Mexican criminal complaint was meritless or that the arrest warrants, which Servicios Funerarios admits were issued, were baseless.

76.     Admitted that the Red Notices were issued but denied that they were "baseless," and without knowledge or information sufficient to form a belief as to the truth of the allegation as to "likely imprisonment."

77.     Denied.

78.     Admitted that Mr. Westra was a managing partner and the general counsel of Advent and resided, and worked out of Advent's headquarters, in Boston, but without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

79.     Denied that the arrest warrant for Mr. Westra was unlawfully obtained and that the request for Red Notice as to Mr. Westra has been withdrawn.

80.     Admitted that Mr. Pani was a Managing Director at Advent who was also the chairman of the board of directors of Gayosso at the time of the transaction and that he led the negotiations on behalf of the "Sellers" and Advent. Mr. Pani was part of Advent's Latin American Investment Advisory Committee that approved the sale of Gayosso. Without knowledge or information sufficient to form a belief as to the truth of the allegations regarding Mr. Pani's current residence or why he lives there.

81.     Admitted that Mr. Paz was at the time of the transaction a senior Advent employee who, along with Mr. Pani, led the negotiations on behalf of the "Sellers" and Advent.  Mr. Paz participated in Advent's Latin American Investment Advisory Committee that approved the sale of Gayosso. Without knowledge or information sufficient to form a belief as to the truth of the allegation as to where Mr. Paz is currently based.

82.     Admitted that Mr. Lukac was at the time of the transaction the CEO of Gayosso.  Without knowledge or information sufficient to form a belief as to the truth of the allegations as to Mr. Lukac's nationality or current residency.

83.     Admitted that Mr. Sosa was the COO of Gayosso and remained in that position until June 15, 2021.  Without knowledge or information sufficient to form a belief as to the truth of the allegations as to Mr. Sosa's nationality or current residency.

84.     Admitted that Mr. Arregoytia was a partner at Ernst & Young and, in that capacity, led the audits of Gayosso prior to the transaction and that he is the subject of a lawfully issued arrest warrant.  Without knowledge or information sufficient to form a belief as to the truth of the allegations as to Mr. Arregoytia's nationality or current residency.

85.     Admitted.

86.     Admitted that Advent embedded its employees in Gayosso so that it could control and manage the company.  Admitted that, Mr. Peña sat on Gayosso's board of directors and provided some assistance to Gayosso's management team. The remaining allegations are denied.

87.     Denied.

88.     Without knowledge or information sufficient to form a belief as to the truth of the allegations.

89.     Without knowledge or information sufficient to form a belief as to the truth of the allegations.

90.     Admitted.

91.     Admitted that in 2019 Mr. Peña had some familiarity with Gayosso by virtue of his interactions with the company in 2016, but denied that Mr. Peña at any time prior to the transaction had any knowledge of the Advent's fraudulent actions which were never disclosed to him during his interactions with Gayosso.

92.     Admitted that in 2019 Mr. Peña on behalf of a potential buyer approached Advent about acquiring the shares of Gayosso.

93.     Admitted that, in connection with his involvement in negotiations with respect to the sale of Gayosso's share, Mr. Peña reviewed Gayosso's business and operations, but denied that during that involvement (or at any other time prior to the transaction) Advent's fraudulent actions were disclosed to Mr. Peña or that he otherwise learned of them.

94.     Admitted.

95.     Admitted.

96.     Admitted that Advent, as the entity controlling and managing the "Sellers," decided to engage in negotiations with the party represented by Mr. Peña.

97.     Admitted that on June 3, 2019, Mr. Peña, as representative of Grupo E S.A. de C.V. ("Grupo E"), an entity founded and operated by members of the El-Mann family, and Advent executed a non-binding term sheet to "further explore and analyze the potential acquisition of" Gayosso's shares.

98.     Admitted.

99.     Admitted.

100.     Admitted that Servicios Funerarios, assisted by legal, accounting, and financial advisors, engaged in due diligence of Gayosso during several months preceding the transaction and that Advent signed a waiver of conflict of interest with respect to Ernst & Young because that accounting firm also did work for Gayosso.  The waiver was predicated on the separation of the groups at Ernst & Young doing work for Gayosso and for Servicios Funerarios.  At no time during the due diligence were Advent's fraudulent acts

disclosed to Servicios Funerarios or any of its advisors.  On the contrary, Advent concealed those acts from Servicios Funerarios and its advisors.

101.    Admitted that through the due diligence process Servicios Funerarios developed knowledge about Gayosso's accounting practices but denied that Servicios Funerarios ever gained knowledge of Advent's fraudulent acts which were not only not disclosed to Servicios Funerarios but affirmatively concealed from it.

102.    Admitted that Servicios Funerarios and its advisors were provided access to a virtual data room but denied that the information contained in that virtual data room served to disclose Advent's fraudulent practices.  In fact, the virtual data room was utilized by Advent to assist it in the fraudulent sale of Gayosso's shares. The remaining allegations are denied.

103.    Denied that Servicios Funerarios had "unfettered access to Gayosso's management."  While Servicios Funerarios communicated with Gayosso's management and with Advent during the sale process, the facts concerning Advent's fraudulent conduct were never disclosed to Servicios Funerarios and, in fact, were concealed from Servicios Funerarios.  The remaining allegations are denied.

104.    Admitted that "Servicios Funerarios' advisors at Ernst & Young, along with Pablo Peña's staff at ExeFin, engaged in numerous meetings with Gayosso's CFO and financial staff to understand [Gayosso's] accounting practices," but denied that in any of those meetings did Gayosso or Advent disclose the fraudulent practices.  The remaining allegations are denied.

105.    Admitted, except denied that the total enterprise value was MXP 4.7 billion.

106.    The SPA speaks for itself and thus no further response is required.  In any event, the SPA states that: "Each of the statements that Sellers make and give in this

17

Agreement and the documentation submitted to the other Parties to this Agreement, which is attached hereto, is true and complete and does not contain false or incorrect data," (SPA at § 5.1(h)); "Neither the Company nor any Subsidiary has liabilities (whether direct or contingent, due or not) that should be reflected in the Financial Statements in accordance with Applicable Law and IFRS, but that are not adequately reflected or set forth in the Financial Statements, except for liabilities resulting from this Agreement," (*id*. at § 5.2(k)(iii)); and "Each of the statements that [Gayosso] makes and grants in this Agreement and the documentation presented to the other Parties of this Agreement that is attached to it, is true and complete and [does] not [contain data that is false] or incorrect," (*id*. at § 5.3)). Each of these representations, among others, was plainly false.

107.    Admitted that Servicios Funerarios conducted due diligence after the SPA was signed and prior to closing of the transaction, but denied that Servicios Funerarios had "virtually unfettered access to Gayosso's management and the material records of Gayosso's business" and, in particular, that Advent's fraudulent acts were disclosed to Servicios Funerarios during the due diligence (or at any other time).

108.    Denied.  On the contrary, Advent concealed from Servicios Funerarios its fraudulent conduct.

109.    Admitted for the simple reason that the fraudulent conduct was concealed from, and not disclosed to, Servicios Funerarios prior to the closing of the transaction.

110.    Denied that Mr. Peña was "one of Sellers' principal negotiators in the Gayosso transaction" and that he had "deep knowledge of Gayosso's business operations." Admitted that Mr. Peña attended certain meetings but denied that Mr. Peña had knowledge of Advent's fraudulent actions.

111.    Admitted that in those roles Mr. Peña attended some "committee meetings with Gayosso's executive staff" and at times met with Mr. Trejo.  The remaining allegations are denied.

112.    Admitted that Mr. Peña had some familiarity with certain of Gayosso's financial reporting policies, but denied that he had any knowledge of Advent's fraudulent acts, none of which was disclosed to him and all of which were concealed from him.

113.    Admitted that Mr. Peña was involved in some discussions concerning the SPA, but the remaining allegations are denied.

114.    Admitted.

115.    Admitted that Carlos Peña and Pablo Peña met in connection with the transaction and discussed information concerning Gayosso, but denied that these discussions provided access to information concerning Advent's fraudulent actions, all of which were concealed from Carlos Peña and Pablo Peña.  The remaining allegations are denied.

116.    Admitted that Carlos Peña provided the KPMG analysis to Pablo Peña, but denied that he acted improperly in doing so.  All other allegations are denied.

117.    Admitted that Carlos Peña interacted with Advent's Mexican outside counsel and internal legal counsel based in Boston.  Without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.  Note that Carlos Peña at no point knowingly conveyed any inaccurate information to anyone about Gayosso and, to the extent any information he provided was inaccurate, it was because Advent did not disclose to him and concealed from him its fraudulent actions.

118.    Denied.

119.    Without knowledge or information sufficient to form a belief as to the truth of the allegations.

120.    Denied.  Note that, to the extent Mr. Carlos Peña provided information, it was information that was provided to him and, obviously, he could not provide information that was not known or disclosed to him.

121.    Denied.  Advent specifically directed Carlos Peña to become involved in the Gayosso transaction.  It did so knowing that he was Pablo Peña's brother and hoping that, given his familial relationship with Pablo Peña, his involvement would provide comfort to Pablo Peña and unknowingly assist Advent in pulling off the fraudulent sale.  Carlos Peña, of course, did not have knowledge of Advent's fraudulent actions.

122.    Without knowledge or information sufficient to form a belief as to the truth of the allegations.  Note that Carlos Peña at all times while employed part-time by Advent abided by his fiduciary duties.

123.    Admitted that Mr. Peña worked with Messrs. Pani and Paz, both of whom, as Advent's most senior executives in Mexico, were senior to Mr. Peña and were the lead negotiators for Advent in the transaction.  The remaining allegations are denied.

124.    Admitted that Messrs. Pani and Paz executed the SPA and that Mr. Peña did not.  The remaining allegations are denied.

125.    Admitted that there is no criminal complaint against Carlos Peña, since he did not participate in fraudulent or criminal conduct.  Without knowledge or information sufficient to form a belief as to the truth of the allegations.

126.    The SPA speaks for itself and no further response is required.

127.    The SPA speaks for itself and no further response is required.

128.    The SPA speaks for itself and no further response is required.

129.    The SPA speaks for itself and no further response is required.

130.    The SPA speaks for itself and no further response is required.

131.    The SPA speaks for itself and no further response is required.

132.    The SPA speaks for itself and no further response is required.

133.    Admitted that certain investment funds managed and controlled by Advent executed a Guarantee in favor of Servicios Funerarios.  The Guarantee speaks for itself and no further response is required.

134.    The Guarantee speaks for itself and no further response is required.

135.    The Guarantee speaks for itself and no further response is required.

136.    The Guarantee speaks for itself and no further response is required.

137.    Admitted that Advent is not identified as a Guarantor in the Guarantee.

138.    The Guarantee speaks for itself and no further response is required.

139.    The Guarantee speaks for itself and no further response is required.

140.    Admitted.

141.    Admitted that the fourth and final amendment to the SPA was executed.  The document speaks for itself and no further response is required.

142.    Admitted.  And all the permit, concessions and property titles were fixed and put in place.

143.    Admitted.

144.    Admitted.

145.    The document speaks for itself and no further response is required.

146.    Admitted that Mr. Peña terminated his part-time employment with Advent and that at closing he became the CEO of Gayosso. The remaining allegations are denied.

147.     Admitted that the Demand Letter was sent.  The Letter speaks for itself and no further response is required.

148.     The Letter speaks for itself and no further response is required.

149.     The Letter speaks for itself and no further response is required.

150.     The Letter speaks for itself and no further response is required.  Denied as to the remaining allegations.

151.     Denied that the Demand Letter was an extortion attempt.  Rather, it was a lawful attempt to redress the fraud perpetrated by Advent.  Admitted that the "Sellers" did not comply with the demand.

152.      Admitted that Servicios Funerarios filed civil action in Mexico.  The documents filed in the civil proceedings speak for themselves.

153.     The claim speaks for itself and no further response is required, but note that the allegations in the claim are true and not false.

154.     Denied that Servicios Funerarios was aware of the fraudulent actions of Advent at the time it negotiated and executed the SPA.  The claim speaks for itself and no further response is required.

155.     Denied that Servicios Funerarios attempted to "evade the SPA's indemnity cap" by making a false allegation.  The claim speaks for itself and no further response is required.

156.     Denied.

157.     Denied.

158.     Without knowledge or information sufficient to form a belief as to the truth of the allegations.

159.    The audit opinions speak for themselves and no further response is required. To the extent a response is required, the allegations are denied.

160.    Denied and note that the fraudulent actions were not disclosed to, and were concealed from, Servicios Funerarios.

161.    Denied.

162.    Admitted that Mr. Peña served as Gayosso's CEO after the transaction closed.  The remaining allegations are denied.

163.    Admitted that Mr. Trejo interacted with Servicios Funerarios prior to the transaction and remained employed by Gayosso for a period after the transaction.  The remaining allegations are denied.

164.    Denied as to Mr. Trejo.

165.    The complaint in the Mexican litigation speaks for itself and no further response is required.  Deny that any of Servicios Funerarios' allegations are "frivolous." On the contrary, they are true.

166.    The complaint in the Mexican litigation speaks for itself and no further response is required.

167.    The complaint in the Mexican litigation speaks for itself and no further response is required.

168.    The complaint in the Mexican litigation speaks for itself and no further response is required.

169.    Denied.

170.    Denied.

171.    The complaint and other court submissions in the Mexican litigation speak for themselves and no further response is required.  The remaining allegations are mere legal conclusions that do not require a response.

172.    The complaint and other court submissions in the Mexican litigation speak for themselves and no further response is required.  The remaining allegations are mere legal conclusions that do not require a response.

173.    Denied.

174.    Admitted, although the decision is on appeal.

175.    Without knowledge or information sufficient to form a belief as to the truth of the allegations.

176.    Admitted that, in June 2022, Servicios Funerarios, through Mexican counsel, filed a criminal complaint with a prosecutor's office in Mexico City responsible for investigating alleged financial crimes, but denied as to the remaining allegations.

177.    Admitted that the criminal complaint involved the same facts underlying the Mexican civil proceeding, but denied that the allegations lacked merit.

178.    The criminal complaint speaks for itself and no further response is required. The remaining allegations are denied, particularly the allegations that Servicios Funerarios' Mexican civil proceeding is meritless and that Servicios Funerarios (or Carlos Peña) had "complete access" to Gayosso's financial records and information.

179.    Admitted.

180.    Admitted that the Mexico City prosecutor, after making an independent investigation and determination, successfully sought and obtained the arrest warrants and the embargo.  The remaining allegations are denied.

181.    Denied.  Note that this scurrilous allegation is false and thus made "upon information and belief."

182.    Admitted and note that the order was issued in accordance with Mexican law and that it has been affirmed by seven federal judges sitting on three different courts.

183.    Admitted and note that the order was issued in accordance with Mexican law and that it has been affirmed by seven federal judges sitting on three different courts.  The remaining allegation is a conclusion of law that does not require a response.

184.    Without knowledge or information sufficient to form a belief as to the truth of the allegations.

185.    The criminal embargo order issued by the Mexican court speaks for itself and no further response is required.

186.    The submissions made by Servicios Funerarios speak for themselves and no further response is required.  Admitted that the Mexican civil court denied the request for a civil embargo.  Without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

187.    Without knowledge or information sufficient to form a belief as to the truth of the allegations except that deny that the assets were "wholly unrelated" to the Mexican civil litigation as they were assets that are owned and/or controlled by the Advent, the entity that committed the fraud against Servicios Funerarios.

188.    The allegations are conclusions of law that do not require a response, but specifically deny that the criminal embargo is not warranted under the circumstances here, as evidenced by the fact it has been sustained by seven Mexican federal judges sitting on three different courts.

189.    Denied.

190.   Without knowledge or information sufficient to form a belief as to the truth of the allegations.

191.   The embargo order speaks for itself and no further response is required.

192.   Admitted that on December 6, 2022 the embargo was extended by a different judge.  The embargo order speaks for itself and no further response is required. Without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

193.   Denied.  Note that this scurrilous allegation is false and thus made "upon information and belief."

194.   The order issued by the Mexican court speaks for itself and no further response is required.  Admitted that Servicios Funerarios sought to secure a lien and did so through lawful and legitimate means.  The remaining allegations are denied.

195.   Without knowledge or information sufficient to form a belief as to the truth of the allegation as to notification of Advent.  Otherwise denied and note that the scurrilous allegation of "improper influence and abuse of the Mexican criminal justice system" is false and thus made "upon information and belief."

196.   Admitted, except that without knowledge or information sufficient to form a belief as to the truth of the allegations relating to the alleged request by the prosecutor or the amount of time between that request and a hearing and when the judge issued the arrest warrants.

197.   Admitted that the prosecutor did not request, and the judge did not issue, an arrest warrant for Mr. Peña.  That was due to the fact that Mr. Peña did not commit fraud or any other criminal act.  The remaining allegations are denied.

198.    Admitted that no arrest warrant was requested for Mr. Trejo.  The remaining allegations are denied.

199.    The allegations are legal conclusions that require no response.  In any event, they are denied.

200.    Denied.

201.    Denied.

202.    Admitted that the arrest warrants were issued, in accordance with Mexican law, without a hearing at which the Targeted Employees were present.  To the extent the allegations are conclusions of law, no response is required.  Otherwise, without knowledge or information sufficient to form a belief as to the truth of the allegations.

203.    Without knowledge or information sufficient to form a belief as to the truth of the allegations.

204.    Admitted.  Note that none of the Targeted Employees has sought to withdraw the arrest warrant against them despite having the opportunity to do so.

205.    Denied.  Noted that Advent'allegation accusing Servicios Funerarios with presenting "false and misleading information" to the prosecutor is itself false and thus made "upon information and belief."

206.    Denied.  Note that this scurrilous allegation is false and thus made "upon information and belief."

207.    Admitted that there have been media reports of the arrest warrants. The remaining allegations are denied.

208.    Denied.

209.    The allegation purports to quote an unspecified statement by Interpol.  The statement, in full, speaks for itself and the allegation requires no further response.

210.   The allegation purports to quote an unspecified statement by the U.S. Department of Justice.  The statement, in full, speaks for itself and the allegation requires no further response.

211.   The allegation purports to quote unspecified documentation by Interpol.  The documentation, in full, speaks for itself and the allegation requires no further response.  The remainder of the allegations is a legal conclusion that requires no response.

212.   Admitted.

213.   Denied.

214.   Denied.  Note that this scurrilous allegation is false and thus made "upon information and belief."

215.   Denied.

216.   Admitted that Servicios Funerarios has filed this action to seek redress for the fraud committed by Advent.  The remaining allegations are denied.

217.   Admitted that Servicios Funerarios filed its Complaint on March 29, 2023.  The remaining allegations are denied.

218.   Denied.  In this action, Servicios Funerarios seeks redress for the fraud committed by Advent.

219.   Denied, in particular the allegation that the complaint in this action is "riddled with inaccuracies material omissions, and outright lies."  To the extent the allegations purport to quote or characterize documents, in which case the documents speak for themselves and no further response is required.  All other allegations are denied.

220.   Denied.

221.   Without knowledge or information sufficient to form a belief as to the truth of the allegation.

222.   Without knowledge or information sufficient to form a belief as to the truth of the allegation.

223.   Admitted that a prosecutor sought and obtained an embargo.  Without knowledge sufficient to admit or deny the remaining allegations.

224.   Denied that Advent has not had the opportunity to object to the embargo.  It has in fact appealed from the embargo.  Seven federal judges on three different courts have rejected the challenges.  Without knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

225.   Without knowledge or information sufficient to form a belief as to the truth of the allegations.

226.   Admitted that the embargo was set with an expiration date of December 6, 2022.  The remaining allegations are conclusions of law and require no response.

227.   Without knowledge or information sufficient to form a belief as to the truth of the allegations.  In any event, the agreement speaks for itself.

228.   Without knowledge or information sufficient to form a belief as to the truth of the allegations.

229.   This paragraph states a legal conclusion and therefore does not require a response.

230.   Without knowledge or information sufficient to form a belief as to the truth of the allegations.

231.   Without knowledge or information sufficient to form a belief as to the truth of the allegations.  In any event, the press release speaks for itself.

232.   Without knowledge or information sufficient to form a belief as to the truth of the allegations.

233.    Without knowledge or information sufficient to form a belief as to the truth of the allegations.  In any event, the press release speaks for itself.

234.    Without knowledge or information sufficient to form a belief as to the truth of the allegations, but note that, if true, any referenced effect is the cause of Advent having committed fraud upon Servicios Funerarios.

235.    Without knowledge or information sufficient to form a belief as to the truth of the allegations, but note that, if true, any referenced effect is the cause of Advent having committed fraud upon Servicios Funerarios.

236.    Denied.

237.    Denied.

238.    Without knowledge or information sufficient to form a belief as to the truth of the allegations, but note that, if true, any referenced effect is the cause of Advent having committed fraud upon Servicios Funerarios.

239.    Without knowledge or information sufficient to form a belief as to the truth of the allegations, but note that, if true, any referenced effect is the cause of Advent having committed fraud upon Servicios Funerarios.

240.    Denied.

241.    Admitted that the complaint is in English and is the first filing in this matter. The remaining allegations are denied.

242.    Admitted that articles have appeared in the press, but denied that Servicios Funerarios' claims are baseless.

243.    Denied.

244.    Servicios Funerarios incorporates by reference and re-alleges its responses to paragraphs 1 through 243 as though fully set forth herein.

245.    Denied.

246.    Denied.

247.    Denied.

248.    Denied.

249.    Denied.

250.    Denied.

251.    Servicios Funerarios incorporates by reference and re-alleges its responses to paragraphs 1 through 243 as though fully set forth herein.

252.    Denied.

253.    Denied.

254.    Denied.

255.    Denied.

256.    Denied.

257.    Denied.

258.    Denied.

259.    Servicios Funerarios incorporates by reference and re-alleges its responses to paragraphs 1 through 243 as though fully set forth herein.

260.    Denied.

261.    Denied.

262.    Denied.

263.    Denied.

264.    Denied.

265.    Servicios Funerarios incorporates by reference and re-alleges its responses to paragraphs 1 through 243 as though fully set forth herein.

266.    Admitted that Servicios Funerarios engages in trade or commerce.  The referenced documents speak for themselves and no response is required.  The remaining allegations are denied.

267.    These allegations are conclusions of law that require no response.  To the extent that a response is required, the allegations are denied.

268.    Admit that Advent engages in trade or commerce.  The remaining allegations are denied.

269.    Servicios Funerarios incorporates by reference and re-alleges its responses to paragraphs 1 through 243 as though fully set forth herein.

270.    Denied.

271.    This allegation is a legal conclusion that requires no response.

272.    Denied.

273.    Denied.

274.    Servicios Funerarios incorporates by reference and re-alleges its responses to paragraphs 1 through 243 as though fully set forth herein.

275.    This allegation is a legal conclusion that requires no response.

276.    This allegation is a legal conclusion that requires no response.

277.    Denied.

278.    Denied.

279.    Denied.

280.    Denied.

281.    Denied.

282.    Denied.

283.    Servicios Funerarios incorporates by reference and re-alleges its responses to paragraphs 1 through 243 as though fully set forth herein.

284.    This allegation is a legal conclusion that requires no response.

285.    Denied.

286.    Denied.

287.    Denied.

288.    Denied.

289.    Denied.

290.    Denied.

291.    Denied.

<u>Affirmative Defenses</u>

<u>First Affirmative Defense</u>

The Counterclaim fails to state any claim upon which relief can be granted.

<u>Second Affirmative Defense</u>

Advent's claims are barred by the applicable statutes of limitations.

<u>Third Affirmative Defense</u>

Advent's claims are barred by the doctrine of laches.

<u>Fourth Affirmative Defense</u>

Advent's claims are barred by the doctrine of unclean hands.

<u>Fifth Affirmative Defense</u>

Any recovery by Advent would constitute unjust enrichment by reason of its commission of fraud upon Servicios Funerarios.

### Sixth Affirmative Defense

Advent's claims are barred by its failure to take all reasonable steps to prevent, mitigate, minimize, or avoid any damage or losses alleged.

### Seventh Affirmative Defense

Advent's claims are barred by considerations of comity.

### Eighth Affirmative Defense

Advent's claims are an impermissible attack on a foreign court's orders.

### Ninth Affirmative Defense

Advent's claims are barred because the damages and losses alleged are the consequence of its own conduct.

### Tenth Affirmative Defense

Advent has failed to state its claims with the requisite particularity.

### Eleventh Affirmative Defense

Advent's claims are barred because the challenged conduct was protected or privileged by virtue of occurring in the course of, and as part of, Servicios Funerarios' exercise of its rights to seek redress from the Mexican justice system.

### Twelfth Affirmative Defense

Advent's claims are barred because they are mere retaliation for Servicios Funerarios' right to avail itself of redress through the Mexican justice system.

### Thirteenth Affirmative Defense

Advent's claims are barred by the doctrine of waiver.

Dated:  May 15, 2023                              Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**          **LESSER, NEWMAN, ALEO & NASSER LLP**

_/s/ David Boies_                                  _/s/ Michael Aleo_
David Boies                                        Michael Aleo
333 Main Street8765438uiyj                         Thomas Lesser
Armonk, NY 10504                                   39 Main Street, Suite 1
Telephone: (914) 749-8200                          Northampton, MA  01060
Facsimile:  (914) 749-8300                         Telephone:  (413) 584-7331
dboies@bsfllp.com                                  Facsimile:   (413) 586-7076
                                                   aleo@LNN-law.com
Carlos M. Sires                                    lesser@LNN-law.com
Jason Hilborn
401 East Las Olas Blvd., Suite 1200                _Attorneys for Plaintiff Servicios_
Fort Lauderdale, Florida  33301                    _Funerarios GG, S.A. de C.V._
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022
csires@bsfllp.com
jhilborn@bsfllp.com

_Attorneys for Plaintiff Servicios Funerarios_
_GG, S.A. de C.V._

## CERTIFICATE OF SERVICE

I, Michael Aleo, hereby certify that this document was on May 15, 2023 sent by electronic mail to counsel for Defendant Advent International Corporation.

Date: May 15, 2023                              _/s/ Michael Aleo_
                                                Michael Aleo