# EXHIBIT 45

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | |
| Plaintiff, | |
| v. | |
| ADVENT INTERNATIONAL CORPORATION, | |
| Defendant, | |
| and | Civil Action No. 23-cv-10684-IT |
| ADVENT INTERNATIONAL CORPORATION, | Referral: Hon. Jennifer C. Boal |
| Counterclaim-Plaintiff, | |
| v. | |
| SERVICIOS FUNERARIOS GG, S.A. DE C.V., | |
| Counterclaim-Defendant. | |

## DEFENDANT AND COUNTERCLAIM-PLAINTIFF AIC'S
## OPPOSITION TO SERVICIOS FUNERARIOS' MOTION FOR RECONSIDERATION

Defendant and Counterclaim-Plaintiff Advent International Corporation n/k/a Advent International, L.P. ("AIC") submits this brief in opposition to Plaintiff Servicios Funerarios GG, S.A. de C.V.'s ("SF") Motion for Reconsideration (Dkt. No. 104 ("SF Br.")) of the Court's entry of a protective order (Dkt. No. 101).

## INTRODUCTION

In seeking reconsideration of the Court's entry of a standard protective order, SF asks for truly extraordinary relief: to allow SF to share confidential discovery produced in this action with

the same Mexican counsel who have abused the Mexican justice system *for use in Mexican proceedings.* SF pursues this relief despite the presumption in federal courts (including in this Court) that a party may not use discovery produced in one action in aid of another, let alone one *outside the United States*, absent mutual agreement. Their motion is particularly troubling because the pending Mexican criminal proceedings involve SF's ongoing efforts to threaten the liberty of AIC employees with illegitimate arrest warrants and Interpol Red Notices and to freeze AIC affiliates' assets with equally improper asset embargos. As for the (equally groundless) pending Mexican civil proceedings, SF simply ignores that under Mexican law parties are not entitled to discovery *at all*. Allowing SF to funnel AIC's confidential and highly confidential discovery material from this action to its Mexican counsel would thus further harm AIC and endanger its personnel for no legitimate reason.

Recognizing the absurdity of its request to share confidential information with the very counsel whose weaponization of the Mexican justice system caused AIC to bring its counterclaims in the first place, SF falls back on an equally preposterous proposition: that "AIC has no support" for its abuse-of-process and official-malfeasance allegations. As an initial matter, SF's suggestion that AIC should have smoking-gun evidence of SF's misconduct in hand *before SF has even produced any of its own documents* is wrong. Certainly, such evidence is not necessary for the Court to enter a standard protective order with a "use" restriction. But to be clear, AIC has already laid out compelling evidence of SF's misconduct: SF's criminal counsel is well known in Mexico (and is under investigation by the Mexican Attorney General) for exploiting its connections with prosecutors and judges to extort its clients' adversaries in civil litigation, following the exact same playbook SF followed here. Its use of those underhanded tactics is precisely why clients like SF hire that firm. Indeed, a recent book on abusive tactics in the Mexican legal system, based on

interviews with 80 knowledgeable sources and authored by a renowned Mexican journalist, identifies **by name** as participants in these extortion schemes: (i) SF's criminal counsel, (ii) members of the family who financed the majority of the transaction at issue, (iii) the prosecutor who sought the asset embargos and arrest warrants against AIC and its personnel, and (iv) the two judges who granted or extended that extreme relief. The book describes in detail the exact methods SF's counsel used to extort AIC as SF's counsel's established "*modus operandi*."

SF has given no reason for the Court to depart from the standard terms in its so-ordered protective order that will—AIC hopes—appropriately deter SF from further abuses of the Mexican criminal justice system. The Court should deny SF's motion for reconsideration.

## BACKGROUND

This lawsuit relates to SF's coordinated extortionate scheme following its 2021 purchase of Grupo Gayosso, S.A. de C.V. ("Gayosso"), a Mexican funeral services company, from affiliates of AIC. Soon after it acquired Gayosso, SF asserted meritless civil claims in Mexico and sought, among other relief, an embargo to freeze hundreds of millions of dollars in assets owned by AIC-managed funds in Mexico. When multiple civil courts denied that extreme relief, SF turned to the Mexican criminal justice system for leverage, ultimately causing the issuance of (i) baseless arrest warrants against employees of AIC and its affiliates; (ii) Interpol Red Notices based on those warrants; and (iii) the same asset embargoes the civil court had rejected, which froze assets owned by AIC-managed funds with no connection to the Gayosso transaction. SF sought and obtained this relief for one simple reason: to coerce a large settlement from AIC.

As AIC's counterclaims allege, SF was able to obtain this extraordinary relief through the improper influence of its Mexican criminal attorneys, who are well known in Mexico for extorting their clients' adversaries by transforming civil disputes into criminal investigations overseen by

cooperative prosecutors and judges. Dkt. No. 14 (AIC's Answer and Counterclaims ("Counterclaims")) ¶¶ 1–40, 176–214. Extensive journalistic reporting describes SF's counsel's "modus operandi," including its history of exerting improper influence over criminal prosecutors and judges to issue interim orders—like arrest warrants and asset embargos—to threaten their victims' business and coercing a quick settlement. *See* Hernán Gómez Bruera, *Traición En Palacio: El Negocio De La Justicia En La 4T* (Grijalbo 2023) (hereinafter, "*Treason in the Palace*") (excerpted in relevant part at Dkt. No. 76-10). This "modus operandi" is exactly the pattern of conduct that Servicios Funerarios' criminal counsel pursued in this case on SF's behalf.

As this case progressed into discovery, AIC proposed to SF a standard protective order containing provisions (i) limiting the use of confidential and highly confidential information to litigating the claims and defenses at issue in this action, and (ii) limiting access to confidential and highly confidential information to the parties' U.S.-based outside counsel of record in this action. Dkt. No. 88-1 ¶¶ 4(i), 5(i), 6(i). SF objected to these standard provisions, insisting instead that the protective order contain highly unusual provisions permitting (i) the use of confidential and highly confidential information produced in this action ***in any other action*** between the parties or their affiliates, and (ii) ***any*** outside counsel, including SF's Mexico-based counsel, to access confidential and highly confidential information produced in this action.

Having reached an impasse with SF on these issues, AIC moved for entry of a standard protective order on September 7, 2023. *See* Dkt. No. 88 ("AIC's Motion"). On September 14, 2023, the Court granted AIC's Motion and entered its proposed protective order "without prejudice

to reconsideration." *See* Dkt. No. 101. On September 20, 2023, SF moved the Court to reconsider its entry of AIC's proposed protective order. *See* Dkt. No. 104.[1]

## ARGUMENT

SF's intent is plain: to use this lawsuit to (i) obtain confidential and highly confidential information that it cannot lawfully obtain in Mexico (where discovery is unavailable to litigants), and (ii) funnel that information to its Mexican criminal counsel, who will then use it to further exert illegitimate influence over the Mexican criminal justice system to procure more improper leverage against AIC (potentially including additional arrest warrants, Red Notices, and asset embargoes). SF's contrived arguments in support of that aim are unavailing. They can neither provide any compelling reason that AIC's proposed use restrictions would prejudice them in this case or any other, nor credibly downplay the risk to AIC if those restrictions were not applied. The Court should deny SF's motion for reconsideration.

---

[1] AIC's grave concerns that SF intends to use confidential discovery from this action to target additional AIC personnel in Mexican criminal proceedings have only intensified in light of the two pretextual motions to compel that SF filed earlier this week. While AIC will address those motions fully in its forthcoming oppositions, it is compelled to note here the troubling interaction between the relief sought by SF in those motions and this one. In particular, SF's motion to compel production from additional custodians (Dkt. No. 111) targets senior AIC executives, including AIC's Chairman, who had little or no involvement in the underlying transaction. AIC's well-founded concern is that SF intends to use this discovery as a basis to obtain unlawful arrest warrants against AIC's most senior personnel, just as it has already done against AIC's former Managing Partner and General Counsel based only on a single contract bearing his signature. SF's second motion asserts that AIC's detailed and thoroughly substantiated allegations of abuse in an interrogatory response—which has never been published—are "defamatory *per se*" and have already caused it injury. Dkt. No. 118 at 8. This legally charged language can only be understood as a threat of further criminal process in Mexico, a conclusion further supported by SF's insistence that (i) AIC supplement its interrogatory responses substantiating its misconduct allegations on a needlessly expedited basis and (ii) designate those responses such that they could be shared with Mexican counsel—all before SF produced any documents concerning its counsel's actions. SF's continued intimidation attempts underscore the importance of maintaining the use restrictions in the protective order.

I.      **SF Offers No Reason To Deny The Reasonable Use Restrictions AIC Has Requested**

SF does not (and cannot) dispute that use restrictions are standard features of protective orders, and that there is no presumption that parties are entitled to use discovery produced in one proceeding in another absent some agreement to that effect.  Indeed, *this Court*'s model protective order imposes use restrictions by default.  *See* Hon. Jennifer C. Boal, Model Protective Order ¶ 8 ("Confidential Information exchanged in the course of the Litigation [defined exclusively as "this action"] . . . shall be used by the party or parties to whom the information is produced solely for the pursuit or defense of the Litigation."); *see also In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (noting that protective orders "specifying that designated confidential information may be used only for purposes of the current litigation . . . are generally accepted as an effective way of protecting sensitive information while granting trial counsel limited access to it for purposes of the litigation."); *Smith v. Legacy Partners Inc*., 2022 WL 1136787, at *3 (W.D. Wash. Apr. 18, 2022) (same); *In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1805398, *2 (S.D.N.Y. June 2, 2022) (explaining that use restrictions are "a basic component of most protective orders").  SF has provided no basis to depart from this norm—particularly where, as here, doing so would be prejudicial and even dangerous to AIC and its affiliates.

A.    Use of AIC's Confidential Discovery Outside This Action Is Neither Necessary Nor Efficient

SF admits that it is "typical" to have a provision like the one in the so-ordered protective "prevent[ing] a party from using confidential information produced [in] the underlying proceeding in a separate action."  See SF Br. 9.  Even setting aside the real and substantial threat that striking such a provision would cause to the liberty and livelihood of AIC employees, SF's arguments for departing from standard practice are pretextual and meritless.

As SF concedes, it would not be entitled to discovery of any of AIC's confidential materials in the Mexican civil proceedings, which do not permit document discovery of any kind. SF's argument is thus nothing more than an attempted end-run around Mexican procedural rules—a use that even *the cases it cites* make clear is improper. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (courts should avoid permitting parallel use that "subvert[s] limitations on discovery in another proceeding"); *Oracle USA, Inc. v. Rimini St., Inc.*, 2012 WL 6100306, at *11 (D. Nev. Dec. 7, 2012) (party must demonstrate "discoverability" of documents in parallel proceeding); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 324 (D. Conn. 2009) (courts should inquire "[w]hether the collateral litigant could retrieve the same materials in question through its own discovery requests or whether it is attempting to subvert a limitation on discovery"). In none of SF's putative authority did the court permit the use of discovery materials in parallel proceedings where such discovery would not otherwise be allowed.[2]

Nor is discovery from this action necessary in Delaware. The Delaware action concerns a narrow contractual issue: whether SF violated a financial guarantee agreement with certain AIC-managed funds when it filed litigation against AIC and its affiliates (all a matter of public record subject to judicial notice). Very little of the discovery produced in this action could conceivably be necessary to litigate that case—assuming it even proceeds into discovery. As with most parallel multi-jurisdictional proceedings, any coordination of discovery across the two actions can be

---

[2] *See, e.g., Baker v. Liggett Grp., Inc.*, 132 F.R.D. 123, 126 (D. Mass. 1990) (allowing parallel use to avoid "repetition of another's discovery" (quoting *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980))); *Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012) (allowing parallel use to "avoid[] duplicative and costly discovery"); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (allowing parallel use to "avoid[] the wasteful duplication of discovery").

addressed by separate stipulation (and any discovery necessary in that action can proceed under a separate protective order entered by the Delaware court). And in any event, the existence of parallel litigation in *Delaware* is certainly no cause to strike AIC's common-sense request to keep its confidential and highly confidential information out of the hands of Mexican criminal counsel who have repeatedly weaponized the Mexican justice system against AIC.

### B. SF Does Not Need To Funnel AIC's Confidential Information to Mexican Counsel To Defend Itself Against AIC's Claims

SF also provides *no support* for its conclusory argument that limiting confidential discovery to its (U.S.-based) counsel in this action would somehow "impair [its] ability to defend itself against AIC's claims." SF Br. 7. As SF concedes, the only reason it might need to show Mexican counsel *any* documents from this action is to "refute the allegations" that the same Mexican counsel engaged in illicit conduct. *Id.* But that is no basis to argue that its Mexican counsel needs access to "*all documents produced [by AIC] in this action*." SF Br. 2 (emphasis added). Due to SF's separate claims against AIC, discovery in this matter includes not only documents pertaining to SF's abuses of the Mexican legal system, but also those concerning the marketing, negotiation, diligence, and closing of the transaction at issue. The bulk of AIC's production consists of this latter category. (Naturally, the vast majority of documents concerning conduct by SF and its counsel should be in *SF's own possession*.) None of that confidential and highly confidential material plausibly bears on whether SF's subsequent misconduct constituted an abuse of process.

Indeed, SF's concern that *any* AIC documents subject to the use restriction are necessary to its defenses is purely hypothetical. The only materials limited to U.S.-based counsel are those designated "Confidential" or "Highly Confidential." But these designations are narrowly defined to exclude information that "was known to the Recipient without an obligation of confidentiality

before the Producer disclosed it," and thus are unlikely to include information relating to SF's criminal counsel's conduct in the Mexican Criminal Proceedings.  *See* Dkt. No. 101 § 2(v).  SF offers no concrete example of information it would need to share with its criminal counsel that would be covered by the protective order.  And under the terms of the protective order, SF has the right to dispute AIC's designation of any discovery material as "Confidential" or "Highly Confidential" on a case-by-case basis, *id.* § 3(vii), or to seek the Court's authorization to disclose such information to other persons, *id.* § 6(iii).  If any circumstance truly warranted sharing AIC's discovery material with Mexican counsel, SF already has the opportunity to seek that relief.

Moreover, SF is incorrect that AIC's request to limit confidential and highly confidential information to U.S.-based counsel is "highly unusual."  SF. Br. 1.  Protective orders regularly limit disclosure of such information to only certain outside counsel in the action.  *See, e.g.*, *WNAC, LLC v. Verizon Corp. Srvs. Grp., Inc.*, Case No. 1:21-10750-ADB (D. Mass. 2023), ECF No. 112 at 7(a) (recent protective order limiting access to Highly Confidential information to a subset of outside counsel).  In any event, "[w]hether or not 'good cause' exists for the entry of such an order must depend on the facts and circumstances of the particular case."  *See Mompoint v. Lotus Dev. Corp.*, 110 F.R.D. 414, 418 (D. Mass. 1986).  And, as explained in AIC's Motion and further supported herein, the facts and circumstances of this case require the reasonable limitation AIC requests here.

## II.    AIC Has Provided More Than Sufficient Evidence of SF's Abuses To Establish Good Cause

With no argument that it actually needs to share AIC's confidential and highly confidential information with its Mexican counsel, SF is left with the unsupportable claim that AIC has not shown "good cause" for its proposed order because it has no "actual evidence" of misconduct by SF and its Mexican counsel.  SF Br. 5.  That is plainly false.  As an initial matter, SF implicitly

elevates the "good cause" standard—which merely requires "a particular factual demonstration of potential harm" as opposed to "conclusory statements"—into a far higher evidentiary burden. *Baker v. Liggett Grp., Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990) (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986)). SF identifies no authority requiring definitive proof of its impropriety before entering a basic protective order. Nor would such a standard be just, since much of the information supporting AIC's claims is necessarily in SF's exclusive possession, and SF has yet to produce any documents related to the Mexican criminal proceedings.

In any event, even without discovery, AIC has pointed to overwhelming circumstantial evidence that the arrest warrants and asset embargos were the result of improper influence. *See, e.g.*, Dkt. No. 75 (Mot. to Compel) at 5–6.[3] It is hornbook law that "direct evidence of a fact is not necessary. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960). Such "certain, satisfying, and persuasive" evidence is all the more crucial in a case like this, because SF's criminal counsel intentionally operates such that its actions "are not always easy to track." *Treason in the Palace* at 8. Courts have long recognized that such schemes are unlikely to be shown by direct evidence. *See, e.g.*, *Thompson v. Bowie*, 71 U.S. 463, 472–73 (1866) (Grier, J., dissenting) ("It is seldom that a fraud or conspiracy to cheat can be proved in any other way than by circumstantial evidence, as knaves have usually sufficient cunning to have no witnesses present who can testify directly to their fraudulent contrivances."); *United States v.*

---

[3] SF weakly argues that AIC's accusations of impropriety lack basis because AIC (properly) objected to SF's interrogatories seeking "the complete factual and legal basis . . . for the allegations in the Counterclaim[.]" SF Br. 4. Not only does SF ignore the several instances in which AIC laid out compelling circumstantial evidence to support its claims—including in the Counterclaims themselves, *see, e.g.*, Dkt. No. 14 at 43–49—but AIC has since provided an additional **twenty-page** substantive response to SF's interrogatories, articulating its basis in even greater detail. Certain evidence discussed in that interrogatory is also summarized in this response.

*Weiner*, 3 F.3d 17, 21 (1st Cir. 1993) (proof of extortionate scheme "may rely entirely on circumstantial evidence").

Among the voluminous evidence AIC has adduced—in its Counterclaims, in connection with its pending motion to compel discovery (Dkt. No. 74), and/or in interrogatory responses served on SF—is the following:

- SF has retained Mexican counsel well known for its widely documented abuses of the Mexican justice system. Those abuses are described both in the Mexican press and in *Treason in the Palace*, a recent book by a respected journalist based on 80 interviews with litigants and government officials. *See, e.g.*, Dkt. No. 76-10, *Treason in the Palace* at 8–26; Alejandro Saucedo, "¿Abogado de la corrupción?" (Dec. 29, 2021), *available at* https://tinyurl.com/abogado-de-la-corrupcion.

- SF's counsel's established "*modus operandi*" is to take a standard commercial dispute and initiate criminal proceedings to obtain asset embargoes and arrest warrants as leverage against its clients civil adversaries, often relying on a consistent network of prosecutors and judges known to be a part of its illicit scheme. *See* Dkt. 76-10, *Treason in the Palace* at 17, 28–33.

- *Treason in the Palace* identifies *by name* the specific prosecutor who (based on submissions SF's counsel filed with his office) sought the orders at issue in this case. *See id.* at 22–23 (naming prosecutor Andrés Maximino Pérez Hicks as part of SF's counsel's corrupt network); *id.* at 31–33 (identifying previous instances in which Mr. Pérez also sought arrest warrants and asset embargoes based on false information).

- *Treason in the Palace* also names the judges who issued and extended the extreme relief SF requested as part of the same network. *See id.* at 23, 25 (identifying Judge Júpiter López Ruíz, the judge who froze AIC-managed assets and issued arrest warrants against its affiliates as among the most "conspicuous" judges willing to do SF's counsel's bidding); *id.* at 23, 26 (identifying Judge Héctor Fernando Rojas Pacheco, who extended the asset embargo, as another participant in the same illicit scheme).

- The asset embargos and arrest warrants that SF obtained via this prosecutor and these judges were plainly issued in violation of Mexican law, which requires detailed evidence established orally at a hearing. *See* Mex. Code of Crim. Proc. Art. 44. Mr. Pérez did not present sufficient evidence to support these measures before Judge López, who granted the relief anyway. Among other things, the hearing that resulted in the freezing of over $300 million of assets, all unrelated to the purported crimes, lasted less than ten minutes.

- *Treason in the Palace* provides examples of other cases in which SF's counsel followed the exact same playbook it followed here—again relying on the same prosecutor and judges. *See Treason in the Palace* at 28–33 (detailing a materially identical scheme against Mexican oil company Oro Negro involving SF's counsel and the same prosecutor involved here). Other portions of the book recount SF's counsel's use of arrest warrants issued by the same judge who issued the warrants in this case to force corporate directors to resign.

- The Mexican Attorney General is reportedly investigating SF's criminal counsel for extortion. *See* Maribel Velazquez and Mariana Salinas, "Por Extorsión Indaga FGR a Bufete Vinculado a Toma de UDLAP" (Feb. 8, 2022), *available at* https://www.e-consulta.com/nota/2022-02-08/politica/por-extorsion-indaga-fgr-bufete-vinculado-toma-de-udlap.

Given the confluence of all of these repeat players and the operation of SF's counsel's precise *modus operandi* in this case, there is no basis to conclude that SF's baseless and abusive arrest warrants, Interpol Red Notices, and embargoes were somehow obtained through **legitimate** means. SF's attempt to dismiss AIC's evidence because *Treason in the Palace* "does not even mention Servicios Funerarios or this case" is a complete non sequitur. *See* SF Br. 5. SF is a *holding company* created solely to acquire Gayosso. And while SF is not mentioned by name, its partners in the transaction are. Dkt. No. 76-10, *Treason in the Palace* at 15, 26. So too are its counsel, the prosecutor, and the judges who assisted SF in obtaining the unlawful arrests warrants and embargos. Id. at 22–26, 31–33.

But even if these key players all refrained from any improper conduct in *this* case (contrary to the overwhelming weight of the evidence), the fact remains that they commit such abuses with regularity and have every incentive to do so again here. The more of AIC's confidential information they obtain—including the names, roles, and contact information of individuals affiliated with AIC—the more damage they can inflict on AIC to further SF's extortionate campaign.

AIC is more than willing to engage in fulsome discovery in this litigation, as it has already demonstrated by agreeing to provide voluminous documentation to SF. But since SF has already

caused meritless arrest warrants to be issued against AIC's senior executives—based on no more than their signatures on commercial contracts—AIC is gravely concerned that SF will use discovery from this case not only to litigate their claims pending in this Court, but also to wrongfully prosecute additional individuals in Mexico. That risk alone is more than a sufficient basis to justify withholding AIC's confidential and highly confidential information from SF's Mexican counsel.

## **CONCLUSION**

For the reasons stated in AIC's Motion and herein, AIC respectfully requests that the Court deny SF's Motion for Reconsideration.

Dated: October 4, 2023

Respectfully submitted,

/s/ Andrew J. Rossman

Andrew J. Rossman*
Nicholas A. S. Hoy*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
andrewrossman@quinnemanuel.com
nicholashoy@quinnemanuel.com

Gabriel F. Soledad*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com

Joseph H. Margolies*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
josephmargolies@quinnemanuel.com

Peter L. Welsh (No. 643261)
Daniel V. Ward (No. 667158)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7050
Peter.Welsh@ropesgray.com
Daniel.Ward@ropesgray.com

*Admitted Pro Hac Vice

Counsel for Defendant and Counterclaim-
Plaintiff

14

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October, 2023, I caused to be served a copy of the foregoing document via the CM/ECF system on all counsel of record.

*/s/ Andrew J. Rossman*
Andrew J. Rossman