# EXHIBIT 48

CNBV

Official Note No. 211-1/110-40973-JFSG/2021

**Office of the Vice-Presidency of the Judiciary**
**Directorate General on Crimes and Punishments**
Sub-Directorate General on Crimes
Mexico City, January 25, 2021

Official Note No. 211-1/110-40973-JFSG/2021
File No. CNBV 2C121. OD/080A/2020

**SUBJECT**: An opinion is issues on terms and for purposes

**OFFICE OF THE ATTORNEY GENERAL OF THE FEDERATION**
OFFICE OF THE FEDERAL ATTORNEY GENERAL ON INVESTIGATIONS
DIRECTORATE GENERAL ON FINANCIAL AND MISCELLANEOUS CRIMES
Av. Insurgentes Sur No. 795, Piso B
Col. Nápoles, Alcaldía Benito Juárez
C.P. 03810, Ciudad de México.

On twenty-four useful pages, there is issued an opinion derived from the request contained in Official Note UEIDFF/3446/2020 dated November 26, 2020, whereby the Office of the Attorney General of the Republic remitted to this Decentralized Body a certified copy of investigation folder number **FED/SEIDF/UEIDFF-CDMX/0000879/2020** consisting of a Volume with 384 useful pages, initiated as a result of the complaint submitted by **RAFAEL ZAGA TAWIL** against **BANCO ACTINVER, S.A. INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO ACTINVER** and **F1 MANAGEMENT, S.C.,** and whomever else may be liable for events that appear to be criminal, as provided for in the Securities Market Law, requesting the issuance of an Opinion in terms of the provisions of Article 37, Sections VII, VIII and XV of the Internal Regulation of this Commission.

In that regard, from the content of the complaint submitted by the complainant before the Office of the Attorney General of the Republic, there may be found, among other records indicated therein, the following

BACKGROUND

*I. On the tenth of January, two thousand eleven, Trusteeship Contract F/1401 (Trusteeship 1 or FUNO) was signed, which was entered into by one party FIBRA UNO ADMINISTRACIÓN, S.A. DE C.V., legally represented by ANDRÉ ELMANN ARAZI, in his capacity as trustor, DEUTCHE [sic] BANK MÉXICO, S.A., Institución de Banca Múltiple División Fiduciaria, legally represented by ANDRÉS SAINZ GONZÁLEZ, and THE BANK OF NEW YORK MÉXICO, S.A., Institución de Banca Múltiple (now CI BANCO, S.A., Institución de Banca Múltiple), in its capacity as common representative of the holders of Real Estate Investment Trust Certificates (CBFI, for its initials in Spanish), represented by MÓNICA JIMÉNEZ LABORA SARABIA.*

*II. It is important to make it known to that Ministerial Authority of the Federation that within the FIRST CLAUSE of the aforementioned trusteeship contract, the Relevant Family is indicated to be the*

[Initials]
[Illegible stamp]

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV   MEXICAN NATIONAL BANKING AND SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

*EL-MANN ARAZI family, this family being understood as any and/or all of MOUSSA (who also answers to the name MOISES), MAX AND ANDRÉ, each with the last name ELMANN ARAZI, as well as ELÍAS SACAL MICHA.*

*Furthermore, in terms of the provisions of that clause, the term Relevant Families is understood as and/or all of the persons who make up the EL-MANN Family and other families, insofar that each of those persons, whether individually or as a family, holds at least 3% of the CBFIs in circulation through the trusteeship of control.*

*III. In terms of the FIFTH CLAUSE of that memorandum of understanding, the principal purpose of the trusteeship "consists of the acquisition and/or construction of Real Estate to be geared toward leasing, the acquisition of the right to receive income resulting from the leasing of said real estate, as well as receiving financing for those purposes with a mortgage on the real estate."*

*Likewise, it was established within said clause that the trustor would have the power to fulfill the purposes of the trusteeship of <u>collecting, receiving and administering income and any other amount in relation to the Permitted Investments and any other good that may be part of the Trusteeship's Equity, as well as preparing and providing all information related to the trusteeship that must be delivered in compliance with the aforementioned memorandum of understanding, the Securities Market Law, the Sole Circular on Issuers, the Internal Regulation of the Mexican Stock Exchange and other applicable legislation</u> as well as all information that may be required in accordance with other provisions of the trusteeship and other contracts to which the trusteeship is party.*

*IV. In terms of the NINTH CLAUSE of the aforementioned memorandum of understanding, the Technical Committee of the Trusteeship was made up in the following manner:*

| Owner Member | Substitute Member | Independent Member |
|---|---|---|
| *Moisés El-Mann Arazi.* | *Charles El-Mann Fasia.* | *No* ------------------- |
| *André El-Mann Arazi.* | *Charles El-Mann Jafif* | *No* ------------------- |
| *Isidoro Attié Laniado.* | *Eduardo Cherem Harari.* | *No* ------------------- |
| *Elias Sacal Micha.* | *Alberto Sacal El-Mann.* | *No* ------------------- |
| *Max El-Mann Arazi.* | *Charles El-Mann Metta.* | *No* ------------------- |
| *Abude Attié Dayán.* | *Isaac Attié Laniado.* | *No* ------------------- |
| *Amin Guindi Hemsani.* | *Alberto Guindi Hemsani.* | *No* ------------------- |
| *Jaime Kababie Sacal* | *Rafael Kababie Sacal.* | *No* ------------------- |
| *Ignacio Trigueros Legarreta.* | *To be designated-----* | *Yes* ------------------- |
| *Henry Davis.* | *To be designated-----* | *Yes* ------------------- |
| *Rubén Goldberg Javkin.* | *To be designated-----* | *Yes* ------------------- |
| *Herminio Blanco Mendoza.* | *To be designated-----* | *Yes* ------------------- |

*One should not lose sight of the fact that, in terms of the provisions of the aforementioned NINTH CLAUSE, the technical committee of the trusteeship will be made up by twenty-one owner members and their respective substitutes, who will be appointed or ratified in the Holders Assembly in the following manner:*

*Any holders who, whether individually or jointly, have 10% of the CBFIs in circulation will have the right to appoint in the Holders Assembly an owner member and their respective substitute in the Technical Committee (as long as those Holders have not waived their right to designate members of the Technical Committee)*

[Initials]

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV   MEXICAN NATIONAL BANKING AND
SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

*While supporting trustors maintain ownership of at least 15% of the CBFIs in circulation through the Control Trusteeship,* said trustors will hold the right, through said Control Trusteeship, to appoint the rest of the owner members of the technical committee and their respective substitutes, such that they will have the right to appoint at least one-half plus one of the total number of members of the Technical Committee in the same Holders Assembly. At their discretion, Supporting Trustors may appoint exclusively members of the Technical Committee who are not considered Independent.

*The above is done in the understanding that in no case may Independent Members represent less than 25% of the owner members of the Technical Committee and their respective substitutes.*

*Furthermore, it is important to make it known to that Ministerial Authority of the Federation that one of the undeniable powers of the Technical Committee of the Trusteeship consists of "Instructing the trustee about the revelation of Relevant Events of it which it may become aware, including all agreements made by the same whose meaning is contrary to the opinion issued by the Practices Committee or the Audit Committee or any other committee that may exercise such functions. Furthermore, the Trustee must request that the Administrator reveal Relevant Events of which the latter may become aware.*

*V. In compliance with the provisions of the TENTH CLAUSE of the trusteeship contract, dated the twentieth of January, two thousand eleven, then-trustee DEUTCHE [sic] BANK MÉXICO, S.A., Institución de Banca Múltiple, División Fiduciaria, legally represented by its delegate trustee ALONSO ROJAS DINGLER, entered into a services and operational provisioning contract with F1 MANAGEMENT, S.C., legally represented by ANDRÉ EL-MANN ARAZI.*

*In terms of the provisions of the TENTH and THIRD clauses of the trusteeship contract and the aforementioned services provisioning contract, respectively, the services that the Administrator would have had to provide would consist in carrying out all of the acts necessary and suitable for realizing the most efficient administration, operation and maintenance of the trusteeship's equity, doing so in accordance with the duties established in the services contract and the trusteeship, among which one finds the duty to supervise the timely fulfillment* of all obligations for which the trusteeship is in charge, particularly all those related to the CBFIs and those derived from the Securities Market Law and related provisions.

*VI. On the eighteenth of March, two thousand eleven, Trusteeship F/1401 began to carry out a public offering of CBFIs using the stock trading system at the Mexican Stock Exchange.*

*VII. Via the corresponding trustor substitution agreement, effective as of the first of July, two thousand eight, BANCO ACTINVER, S.A. Institución de Banca Múltiple, Grupo Financiero Actinver, was appointed as the new trustor for Trusteeship F/1407, in substitution for DEUTCHE [sic] BANK MÉXICO, S.A. Institución de Banca Múltiple, División Fiduciaria.*

*As a result of the aforementioned agreement, BANCO ACTINVER, S.A., Institución de Banca Múltiple, Grupo Financiero Actinver, acquired each and every one of the obligations of the issuer of the Real Estate Investment Certificates that represent the right of an aliquot of the fruits of the yields of goods or rights or of the sale of the goods or rights that form part of the equity entrusted to Trusteeship F/1401,* among which may be found the report of relevant events in terms of the provisions of Articles 2, Section VII; 104, Section V; 105 and 106 of the Securities Market Law.

*VIII. Furthermore, for the purpose of this writ of complain of facts, it is important to mention that the current members of the Technical Committee for the trusteeship are* MOISÉS, ANDRE and MAX, each with the last name EL-MANN ARAZI, *ABUDE ATTIÉ DAYAN, ISIDORO ATTIÉ LANIADO,* ELIAS SACAL MICHA *JAIME*

[Initials]

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV

MEXICAN NATIONAL BANKING AND
SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

*KABABIE SACAL, RUBÉN GOLBERG [sic] JAVKIN, HERMINIO BLANCO MENDOZA, IGNACIO TRIGUEROS
LEGARRETA, ANTONIO FRANCK CABRERA and ALBERTO MULÁS ALONSO.*

<u>*One should not lose sight of the background that this chapter contains was prepared based on public information from
the Mexican Stock Exchange and on Trusteeship F/1401, known as Fideicomiso Fibra Uno.*</u>

Furthermore, the complainant RAFAEL ZAGA TAWIL indicates, among other things, the following:

**FACTS:**

1. That on February 13, 2020, he appeared as a defendant within investigation folder FED/SEIDF/UNAI-
CDMX/0001015/2019, filed before the Agent of the Office of the Public Ministry of the Federation in Criminal
Matters by the Head of Investigation and Litigation Unit "D" in Mexico City, of the Specialized Criminal Investigation
Unit for Investigating Crimes Committed by Public Servants Against the Administration of Justice of the Office of the
Attorney General of the Republic, which basically entailed the investigation of OCTAVIO TINAJERO ZENIL, LUÍS
RODOLFO ARGÜELLES RABELL and JUAN CRISTOBAL GIL RAMÍREZ, then Deputy Legal Director, Deputy
Director General of Service Channels and Deputy Director of Portfolio Administration for INFONAVIT [Mexican
Institute for the National Housing Fund of Workers], respectively, unduly entering into the following contracts with
TELRA REALTY, S.A.P.I. de C.V.:

❖ *Collaboration Agreement entered into by one party the Mexican Institute for the National Housing Fund for
Workers, hereinafter INFONAVIT, represented by JOSÉ ANTONIO TINAJERO ZENIL, and for the other
party TELRA REALTY, S.A.P.I., de C.V., hereinafter the PROMOTER, represented in this act by RAFAEL
ZAGA TAWIL, dated the ninth of June, two thousand fourteen.*

❖ *Service Provisioning Agreement entered into by one party the Mexican Institute for the National Housing
Fund for Workers, represented by RODOLFO ARGÜELLES RABELL, and for the other party TELRA
REALTY, S.A.P.I., de C.V, hereinafter the PROMOTER, represented in this act by RAFAEL ZAGA TAWIL,
dated the twenty-ninth of June, two thousand fifteen.*

❖ *Service Provisioning Agreement entered into by one party the Mexican Institute for the National Housing
Fund for Workers, represented by RODOLFO ARGÜELLES RABELL, and for the other party TELRA
REALTY, S.A.P.I., de C.V, hereinafter the PROMOTER, represented in this act by RAFAEL ZAGA TAWIL,
dated the sixth of November, two thousand fifteen.*

❖ *Professional Services Provisioning Contract entered into by one party the Mexican Institute for the National
Housing Fund for Workers, represented in this act by its Deputy Director General for Portfolio Management,
JUAN CRISTOBAL GIL RAMIREZ, who throughout this instrument will be known as INFONAVIT, and for
the other party the legal entity known as TELRA REALTY, SOCIEDAD ANÓNIMA PROMOTORA DE
INVERSIÓN DE CAPITAL VARIABLE, which hereinafter will be known as THE PROMOTER, represented
in this act by RAFAEL ZAGA TAWIL, dated the twenty-fourth of February, two thousand sixteen.*

**2.** That as a result of his appearance before the Public Ministry of the Federation that heard these facts, he became
aware that:

**a)** On January 31, 2020, a person came there, purporting to be an attorney for MAX and ANDRÉ EL-MANN ARAZI,
being instructed by the same to present on their behalf and by their order a draft reparation agreement signed by
Messrs. EL-MANN ARAZI that they wished to sign with INFONAVIT, supposedly to give reparations to the same
for the damages that are being investigated in investigation folder FED/SEIDF/UNAI-CDMX/0001015/2019,
presenting to that end copies of the checks that were signed by Messrs. EL-MANN ARAZI from their respective bank
accounts opened at BBVA-Bancomer, S.A. on behalf of INFONAVIT, each for the amount of one billion pesos, an
agreement in which in Record

[Initials]

| [Seal] UNITED MEXICAN STATES **TREASURY** SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT | CNBV | MEXICAN NATIONAL BANKING AND SECURITIES COMMISSION |
|---|---|---|

Official Note No. 211-1/110 40973 JFSG/2021

4, Messrs. EL-MANN ARAZI stated that on January 28, 2020, they became aware that:"... *the Financial Intelligence Unit of the Secretariat of the Treasury and Public Credit froze accounts that are in the domestic financial system of which ANDRÉ and MAX EL-MANN ARAZI are holders, co-holders, signatories and/or authorized parties, trustors, legal representatives and/or proxies, as well as those for which they are identified as beneficiaries and/or trustees…,*" which include the bank accounts for Trusteeship F/1401 and F1 Management, S.C., also informing INFONAVIT so that the damage may be considered repaired and that the latter communicate the agreement to the Financial Intelligence Unit so that the frozen accounts could be released and the original checks could be delivered.

b) On February 6, 2020, another attorney for MAX and ANDRÉ EL-MANN ARAZI came before the Public Ministry of the Federation who was aware of investigation folder FED/SEIDF/UNAI-CDMX/0001015/2019, who on behalf and in representation of them delivered to OSCAR JAVIER PRIEGO BEREZALUCE, General Legal Coordinator for INFONAVIT, the original checks for which a copy was shown on January 31 of that year, who in turn told him that once they were collected, the reparation of the damage would be considered satisfied and they would proceed to sign the proposed reparations agreement, an event that the complainant states never occurred because the INFONAVIT officials would be liable due to not respecting the transaction contract and the settlement.

3. He mentions that on February 10, 2020, in the daily conference of the President of the Republic, in which the Attorney General of the Republic was present, he informed the citizenry that the Office of the Attorney General could say with satisfaction that it would delivering a check for two billion pesos to the Institute for Returning Stolen Goods to the People and that from that day forward the national press published a series of notes by journalists indicating that the resources delivered by the Office of the Attorney General of the Republic to the Institute for Returning Stolen Goods to the People had resulted from a reparations agreement entered into with TELRA REALTY, S.A.P.I. de C.V., for the benefit of INFONAVIT, an event that he reports is false; that starting with that situation, on February 11, 2020, FUNO issued a press release in which it separated itself from Trusteeship F/1401, as well as, per what was published by various media channels on subsequent days, the hidden fact that two members of its Technical Council [sic] signed the reparations agreement and wrote the aforementioned checks, as well as the reason why the accounts for said trusteeship were frozen, which is precisely the undeniable link that the EL-MANN family has and the positions that their members occupy on the Technical Committee, facts that, despite being relevant, were not nor have been revealed to the investment public, to the National Banking and Securities Commission or to the Mexican Stock Exchange, even mentioning that it was not informed of the freezing of the accounts, a relevant fact that would prevent FUNO from being able to collect income from the properties that are part of the trusteeship and would impact its solvency and liquidity indices.

4. That as a result of the fact that ANDRÉ and MAX EL-MANN ARAZI did not obtain consent from INFONAVIT to sign the reparations agreement, they appeared before the Office of the Attorney General of the Republic to request a plea bargain in their favor with regard to the crime of Operations with Resources from Illicit Origin provided for and punished by Article 400 Bis of the Federal Penal Code, transcribing part of the interviews that the Public Ministry of the Federation had with MAX, ANDRÉ and MOUSSA EL-MANN ARAZI in the following manner:

Interview dated February 20, 2020, performed by MAX EL-MANN ARAZI: "… *stating that as a result of the freezing of accounts performed by the Financial Intelligence Unit against me, being a party under investigation, and after having gotten the proof from me that makes up the investigation folder of merit, I categorically deny having committed any illicit act, since I have always conducted myself in accordance with the applicable legal statutes. Stating that the origin of the resources that I use for each and every one of my business negotiations has always been completely licit, in that regard, I deny having any liability regarding the facts that originated this investigation, but since an operation entered into between the legal entity TELRA REALTY, S.A.P.I. de C.V. and the Mexican Institute of the National Housing Fund*

[Initials]

| [Seal] UNITED MEXICAN STATES **TREASURY** | CNBV | MEXICAN NATIONAL BANKING AND SECURITIES COMMISSION |
| --- | --- | --- |
| <small>SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT</small> | | Official Note No. 211-1/110 40973 JFSG/2021 |

*for Workers has been called into question, as a result of which resources were transferred to Trusteeship 366/2017 from Banco Ve Por Más, S.A., Institución de Banca Múltiple, for the sole purpose of terminating any current or future controversy in which I could be unduly involved, since I have not participated in the events that are under investigation and since in recent days, I have voluntary delivered to the Office of the Attorney General of the Republic a cashier's check for the amount of $1,000,000,00.00 [sic] (ONE BILLION PESOS and 00/100 MXN), I request the application of a plea bargain for my benefit that puts an end to the criminal action against me."*

Interview dated February 20, 2020, performed by ANDRÉ EL-MANN ARAZI: "… He states that it is his desire to declare in relation to the facts that are being investigated against him in this investigation folder, which in their preliminary legal classification are followed by the crime provided for in Article 217, Section II, of the Federal Penal Code in force at the time of the events, the appearing party ANDRÉ EL-MANN ARAZI stating the following: That as a result of the freezing of accounts performed by the Financial Intelligence Unit against me, being a party under investigation, and after having gotten the proof from me that makes up this investigation folder, I categorically deny having committed any illicit act, since I have always conducted myself in accordance with the applicable legal statutes. Likewise, I declare that the origin of the resources that I use for each and every one of my business negotiations  has always been completely licit, and in that regard, I deny having any liability regarding the events that originated this investigation folder; however, since an operation entered into between the legal entity TELRA REALTY, S.A.P.I. de C.V. and the Mexican Institute of the National Housing Fund for Workers has been called into question, as a result of which resources were transferred to Trusteeship 366/2017 from Banco Ve Por Más, S.A., Institución de Banca Múltiple, clarifying that within the Technical Committee of that Trusteeship there was an independent member in addition to the undersigned, my brother MOISÉS EL-MANN ARAZI, for the sole purpose of terminating any current or future controversy in which I could be unduly involved, since I have not participated in the events that are under investigation and since in recent days, I have voluntary delivered to the Office of the Attorney General of the Republic a cashier's check for the amount of $1,000,000,000.00 (ONE BILLION PESOS and 00/100 MXN), I request the application of a plea bargain for my benefit that puts an end to the criminal action against me."

Interview dated March 11, 2020, performed by MOUSSA EL-MANN ARAZI, President of the Technical Committee of Trusteeship Fibra Uno, *"… stating … that as a result of the freezing of accounts performed by the Financial Intelligence Unit against my brothers ANDRÉ and MAX EL-MANN ARAZI, I am aware that members of my family and yours truly are considered as parties under investigation in this investigation folder and after having gotten the proof from me that makes up the investigation folder of merit, I categorically deny having committed any illicit act, since I have always conducted myself in accordance with the applicable legal statutes. In that regard, the origin of the resources that I use for each and every one of my business negotiations has always been completely licit, which is why I deny having any liability regarding the facts that originated this investigation. However, upon becoming aware that an operation entered into between the legal entity TELRA REALTY, S.A.P.I. de C.V. and the Mexican Institute of the National Housing Fund for Workers has been called into question, as a result of which resources were transferred to Trusteeship 366/2017 from Banco Ve Por Más, S.A., Institución de Banca Múltiple, for the sole purpose of maintaining my good reputation intact and preventing any controversy with respect to the events that are being investigated, I request the application of a plea bargain for my benefit that puts an end to the criminal action against me since in recent days, I have voluntary delivered to the Office of the Attorney General of the Republic a cashier's check for the amount of $1,000,000,000.00 (ONE BILLION PESOS and 00/100 MXN), whereby if any damage has been caused, it has been repaired or guarantee, and that the same be given to my family."*

Concerning what the complainant is saying, it should be pointed out that MOUSSA EL-MANN ARAZI was fully aware of the freezing of accounts; however, this fact was not revealed in terms of the Securities Market Law; and that the Office of the Attorney General of the Republic, by an agreement dated May 20, 2020, I consider it appropriate to grant the EL-MANN ARAZI brothers the plea bargains that were requested in terms of Article 256, Section II, of the National Criminal Procedural Code.

[Initials]

| [Seal] UNITED MEXICAN STATES **TREASURY** SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT | CNBV | MEXICAN NATIONAL BANKING AND SECURITIES COMMISSION Official Note No. 211-1/110 40973 JFSG/2021 |

5. The complainant continues by stating that: "… in terms of the General Provisions issued by the National Banking and Securities Commission, there should be considered as a relevant event, in terms of the provisions of Article 2, Section II, of the Securities Market Law, and therefore must be revealed in terms of the provisions of Articles 104, Section V; 105 and 106 of said legal statute, <u>all judicial, administrative or arbitral procedures of importance to the issuer or to the legal entities that the latter controls or in which it has material influence, as well as in the sense of the resolutions that fall on said procedures, or even issued against shareholders when they have even material influence, relevant council and directors, as well as any situation that may affect the financial structure, results or the liquidity, solvency, profitability and asset utilization indices, as well as any change in accounting, financial or economic policy in relation to the immediately prior fiscal year or the one in which said change is made.</u>

Notwithstanding the above, the complainant reports that the investment public, the National Banking and Securities Commission or the Mexican Stock Exchange were not made aware of the following relevant events.

❖ *The existence of freezing of bank accounts for Trusteeship F/1401.*

❖ *The existence of freezing of bank accounts for the legal entity F1 MANAGEMENT, S.C. or the private partnership that replaced it in accordance with the provisions of the trusteeship contract.*

❖ *That the origin of said freezing derives from the undeniable relationship that FUNO has with the EL-MANN ARAZI family and with the positions that they occupy within the Technical Committee of said trusteeship.*

❖ *The delivery of $2,000,000,000.00 (TWO BILLION PESOS and 00/100 MXN) by the EL-MANN ARAZI men.*

❖ *The existence of an investigation folder pursued against the EL-MANN ARAZI brothers for their supposed participation in the commission of the crime of Operations with Resources of Illicit Origin.*

❖ *The granting of the aforementioned plea bargains for the crime of Operations with Resources of Illicit Origin.*

Therefore, it is hereby considered that BANCO ACTINVER, S.A., Institución de Banca Múltiple, Grupo Financiero Actinver, as the trustee division of Trusteeship F/1401 (Fideicomiso Fibra Uno or FUNO), in its capacity as issuer, the members of the Technical Committee of said trusteeship and F1 Management, S.C., in its capacity as Administrator, hid and failed to reveal relevant events.

6. The complainant reports that on July 20, 2020, Goldman Sachs & Co., LLC and BANCO SANTANDER, S.A., Institución de Banca Múltiple, Grupo Financiero Santander, published a fold in the *Reforma* magazine in which they congratulate Fideicomiso Fibra Uno, *For the successful reopening of their bonds to the international market for the amount of: $650,000,000.00 USD (SIX HUNDRED FIFTY THOUSAND and 00/100 USD); a reopening that evidently was realized without having revealed the aforementioned information and relevant events; it being important to note that said reopening had a placement date of the fifteenth of July, two thousand twenty.*

Finally, the complainant indicates that in order to accredit the background and facts of his complaint, he requests that various pieces of evidence be considered released. (Pages 4 to 22)

7. In the documentary proof that makes up the investigation folder issued, there appear, among other things, the following pieces of evidence:

A) Public Writ number 115, 636, dated January 10, 2011, passed before the witness of Gerardo Correa Echegaray, holder of notary public office number 89 of the Federal District, today Mexico City, related to the creation of the irrevocable Trusteeship Contract identified with number F/1401 that was entered into between **FIBRA UNO ADMINISTRACIÓN, S.A. de C.V.,** in its capacity as **Trustor,** represented by its legal representative

[Initials]

| | | |
|---|---|---|
| [Seal] UNITED MEXICAN STATES<br>**TREASURY**<br>SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT | CNBV | MEXICAN NATIONAL BANKING AND SECURITIES COMMISSION<br><br>Official Note No. 211-1/110 40973 JFSG/2021 |

**André El-Mann Arazi, DEUTSHE** [sic] **BANK MÉXICO, S.A.** Institución de Banca Múltiple, División Fiduciaria, as **Trustee,** represented by its delegate trustor Andrés Sainz González and **THE BANK OF NEW YORK MELLON, S.A.,** Institución de Banca Múltiple, as **Common Representative** of the holders of the CBFIs, represented by its delegate trustee Mónica Jiménez Labora Sarabia, an instrument in which it is found that in the DECLARATIONS chapter, there is stated: (Pages 34 to 130)

I. Fibra Uno Administración S.A. de C.V., (a) is a limited-liability variable capital company (*sociedad anónima de capital variable*) created in accordance with public writ number 114, 506, dated July 15, 2010, granted before the witness of Gerardo Correa Echegaray, Notary Public 89 of the Federal District.

II. By conduct of its delegate trustor, the Trustor (a) Is a full-service banking institution (*institución de banca múltiple*) created via public writ number 57,861, dated February 25, 2000, (c) that its delegate trustor proves their personality with public writ number 30,884, dated March 12, 2010, granted before the witness of Notary Public 122 of the Federal District.

III. By conduct of its delegate trustor, the Common Representative (a) Is a limited-liability company created via public writ number 57.840, dated February 6, 2008, granted before the witness of Notary Public 1 of the Federal District, (d) appears to this trusteeship for the purpose of accepting the position of common representative of the Holders of CBFIs to be issued by the Trustor of the Trusteeship, consisting with the obligations imposed by the Securities Market Law and any other provisions issued by the National Banking and Securities Commission.

That in several CLAUSES, they established:

**FIRST. DEFINITIONS.**

*1.1. Defined Terms. Terms with initial capitalization used in this trusteeship and which are not defined otherwise therein will have the meaning attributed to those terms in this First Clause and will be used in the singular or plural as the case may be.*

*a. ADMINISTRATOR means F1 Management, S.C. or the civil partnership that may replace it from time to time in accordance with the provisions of this trusteeship, in the understanding that for the purposes of this Trusteeship, the Trustor will withhold as partner at least 99.995 [sic] of the social and corporate rights of the Administrator, include the power to appoint its administrative body, and whose corporate purpose will be the administration, operation and maintenance of this Trusteeship and of its properties, activities that it must carry out in strict accordance with the terms of the Administrative Contract that it enters into with the Trustor.*

*i. Real Estate: this means jointly Contributed Real Estate, Acquired Real Estate and any other real estate that may be intended for leasing and that the Trustor may acquire for the fulfillment of the goals of this trusteeship.*

*j. Acquired Real Estate: This means any real estate and Leasing Rights, if applicable, that will be acquired by the Trustor, solely and exclusively with that nature, with the Resources Derived from the first Placement, which are listed in Annex A of this Trusteeship.*

*k. Contributed Real Estate: this means any real estate that will be contributed as a result of the first Issuance by the Owners, in accordance with the provisions of the Second Clause of this Trusteeship, which are listed in Annex B of this Trusteeship.*

*l. BMV. Means Bolsa Mexicana de Valores, S.A.B. de C.V. [Mexican Stock Exchange]*

*m. Real Estate Investment Trust Certificates CBIs: this means the investment trust certificates to be issued by the Trustor in accordance with this Trusteeship, the L.M.V., the Sole Circular for Issuers and any other applicable legal provisions, to be registered in the RNV and listed in the MBV and, as the case may be, other international markets.*

[Initials]

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV   MEXICAN NATIONAL BANKING AND
SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

*o) Sole Circular for Issuers: this means the General Provisions Applicable to Issuers of Securities and to other participates in the Securities Market, published in the Official Federal Gazette on March 19, 2003, as they have been reformed from time to time.*

*p. Circular I 2005: means Circular I 2005 issued by Banco de México, which contains the Rules to which Credit Institutions, Brokerage Houses, Insurance Institutions, Bond Institutions, Limited-Purpose Financial Companies and Rural Financiers must be subject in trusteeship operations, as it has been reformed from time to time.*

*r. CNBV means the National Banking and Securities Commission.*

*g. Technical Committee: has the meaning that is attributed to said term in the Ninth Clause, Section 9.1 of this Trusteeship.*

*z. Administrative Contract: means the contract that will be entered into between the Trustor and the Administrator in accordance with the document that is added to this Trusteeship as Annex "C" and, as the case may be, in accordance with the changes authorized by the Technical Committee and agreed upon by the Administrator so that the Administrator may provide the Administrative Services. The above is done in the understanding that said contract must stipulate a deadline of at least 5 years and automatic annual renewals.*

*uu. Issuance: means each issuance of CBFIs that the Trustor realizes from time to time on each Issuance Date, in accordance with the provisions established in this Trusteeship and under what is provided for in Articles 223 and 224 of the LISR.*

*ww. Relevant Events: has the meaning attributed to relevant events in the LMV.*

*zz. **El-Mann Family:** means any and/or all of Moussa EL-Mann Arazi (who also often uses the name of Moisés El-Mann Arazi), Max El-Mann Arazi, André El-Mann Arazi and Elias Sacal Micha.*

*ccc. Relevant Families: means any and/or all of the persons who make up the Attié Family, the El-Mann Family, the Guindi Family and the Kababie Family, insofar that each of those persons, whether individually or as a family, holds control of at least 3% of the CBFIs in circulation through the Control Trusteeship.*

*fff. REITs: means the root real estate investment trusteeships in accordance with the provisions of Articles 223 and 224 of the LISR.*

*ggg. First-Place Trustees: means the holders of the CBFIs represented by the Common Representative.*

*hhh. Second-Place Trustees: means the Supporting Trustor whereby the goods contributed are done.*

*mmm. Relevant Supporting Trustor: means any and/or all of the persons who make up the Relevant Families, insofar that each of those persons, whether individually or as a family, holds control of at least 3% of the CBFIs in circulation at any time through the Control Trusteeship.*

*nnn. Issuing Trustee: means Deutshe [sic] Bank México, S A, Institución de Banca Múltiple, División Fiduciaria, or its successors, assignees or whomever may subsequently be appointed as trustee in accordance with this trusteeship.*

*tttt. LMV: means the Mexican Securities Market Law.*

*Common Representative: means The Bank of New York Mellon, SA., Institución de Banca Múltiple, which will be the common representative for the Holders of the CBFIs or whomever may subsequently be appointed as common representative of the Holders.*

## THIRD. PARTIES TO THE TRUSTEESHIP.

*a. TRUSTOR,*                    *Fibra Uno Administración SA. de C V*

*b. SUPPORTING TRUSTORS*         *Each of the supporting Trustors.*

*c. TRUSTEE*                      *Deutshe [sic] Bank México, S.A. Institución de Banca Múltiple, División Fiduciaria.*

[Initials]

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV   MEXICAN NATIONAL BANKING AND SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

| | |
|---|---|
| d. FIRST-PLACE TRUSTORS | *The Holders of the CBFIs represented by the Common Representative with respect to the rights that are attributed to them in accordance with the terms of this Trusteeship or the CBFIs.* |
| e. SECOND-PLACE TRUSTEES | *The Supporting Trustors with regard to the Reversion Rights.* |
| f. COMMON REPRESENTATIVE | *The Bank of New York Mellon, S.A., Institución de Banca Múltiple* |

**FIFTH. PURPOSES OF THE TRUSTEESHIP.**

*(5.1) Purposes of the Trusteeship. The principal goal of the Trusteeship consists of the acquisition and/or construction of Real Estate to be intended for leasing; the acquisition of the right to receive income from the leasing of said real estate …; For the purpose of fulfilling the principal goal of the Trusteeship, the Trustor will perform, among other things, the following activities: (i) acquiring, maintaining and disposing of real estate and rights that comprise the Trusteeship's Equity: (ii) distributing and administering in the Accounts those resources that may be obtained from the Issuance of the CBFIs …*

*(o) collecting, receiving and administering income and any other amount in relation to the Permitted Investments and any other good or right that may be part of the Trusteeship's Equity.*

*(x) prepare and provide all information related to the Trusteeship that must be delivered in accordance with this Trusteeship, the LMV, the Sole Circular on Issuers, as well as all information that may be required in accordance with other provisions of this Trusteeship and other contracts to which the Trusteeship may be party.*

**NINE. TECHNICAL COMMITTEE …**

*(9.1.1) In accordance with the provisions established in Article 80 of the LIC, a Technical Committee (the Technical Committee) is hereby established, which will remain in its positions for the entire validity of the Trusteeship.*

*(9.1.2) The Technical Committee will be made up of up to 21 owner members and their respective substitutes, who will be appointed or ratified in the Holders Assembly in the following manner:*

*Any Holders who, whether individually or jointly, have 70% of the CBFIs in circulation will have the right to appoint in the Holders Assembly an owner member and their respective substitute in the Technical Committee (as long as those holders have not waived their right to designate members of the Technical Committee)*

*Through the Control Trusteeship, the Supporting Trustors will hold the right to appoint the rest of the owner members of the Technical Committee and their respective substitutes, such that they will have the right to appoint at least one-half plus one of the total number of members of the Technical Committee in the same Holders Assembly. At their discretion Supporting Trustors may appoint exclusively members of the Technical Committee who are not considered to be Independent Members.*

*The above is done in the understanding that in no case may Independent Members represent less than 25% of the owner members of the Technical Committee and their respective substitutes.*

*POWERS OF THE TECHNICAL COMMITTEE.*

*(9.1.24) The Technical Committee will have the following inalienable powers.*

[Initials]
Av. [Illegible]
Tel: (55) 3454 6000 www.gob.mx/cnbv

[Seal] UNITED MEXICAN STATES **TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV   MEXICAN NATIONAL BANKING AND SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

*(i) Agreeing to the issuance of CBFIs on each Issuance and Placement Date in the Mexican and/or foreign securities market. Exclusively for the purposes of the first Issuance that is done and the acts prior thereto, the Trustor appoints in this act a technical committee made up exclusively of MOUSSA EL-MANN ARAZI (who also often uses the name of Moisés El-Mann Arazi) and ANDRÉ EL-MANN ARAZI, who must agree on the terms and conditions of the first Issuance of CBFIs and their Placement and instruct the Trustee regarding all acts that may be needed and/or are suitable in that regard, including entering into Adhesion Contracts.*

*(xvii) "Instructing the trustee about the revelation of Relevant Events of it which it may become aware, including all agreements made by the same whose meaning is contrary to the opinion issued by the Practices Committee or the Audit Committee or any other committee that may exercise such functions. Furthermore, the Trustee must request that the Administrator reveal Relevant Events of which the latter may become aware.*

*(9.26) Technical Committee starting at Issuance. Starting with the Issuance of CBFIs and until a new appointment is made in accordance with the provisions of this Trusteeship, the Technical Committee will be made up in the following manner:*

| OWNER MEMBER | SUBSTITUTE MEMBER | INDEPENDENT MEMBER |
|---|---|---|
| *1. Moisés El-Mann Arazi* | *Charles El-Mann Fasja* | *NO* |
| *2. André El-Mann Arazi* | *Charle El-Mann Jafif Arazi* | *NO* |
| *3. lsidoro Attié Laniado* | *Eduardo Cherem Harari* | *NO* |
| *4. Elias Sacal Micha* | *Alberto Sacal El-Mann* | *NO* |
| *5. Max El-Mann Arazi* | *Charles El-Mann Metta* | *NO* |
| *6. Abude Attié Dayán* | *Isaac Attié Laniado* | *NO* |
| *7. Amín Guindi Hemsani* | *Alberto Guindi Hemsani* | *NO* |
| *8. Jaime Kababie Sacal* | *Rafael Kababie Sacal* | *NO* |
| *9. Ignacio Trigueros* | *To be designated* | *YES* |
| *10. Henry Davis* | *To be designated* | *YES* |
| *11. Rubén Goldberg* | *To be designated* | *YES* |
| *12. Herminio Blanco* | *To be designated* | *YES* |

**TENTH. ADMINISTRATOR AND SERVICE COMPANIES.**

*APPOINTMENT OF THE ADMINISTRATOR*

*(10.1) By virtue of entering into this Trusteeship, F1 Management, S.C., is appointed as the Administrator, which must accept its position and agree to the Administrative Contract to comply with the obligations under its care, as established in this Trusteeship .... Later on, the appointment of the Administrator will be done by the Holders Assembly or, as the case may be, the Technical Committee, as provided for by the Ninth Clause, Section 9.1.24, Paragraph (vi).*

*(10.4) ... the trustor empowers and authorizes the Administrator to carry out any and all of the acts that may be necessary for the achievement of the goals of the Trusteeship.*

*OBLIGATIONS OF THE ADMINISTRATOR.*

*(10. 7) The Administrator will have the following obligations under their care.*

[Initials]
Av. Insurgentes Sur No. 1971, Col. Guadalupe, [Illegible]
Tel: (55) 3454 6000 www.gob.mx/cnbv

[Seal] UNITED MEXICAN STATES
**TREASURY**
<small>SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT</small>

CNBV   MEXICAN NATIONAL BANKING AND
SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

*(i) Must provide the Administrative Services in accordance with the terms and conditions provided for in this Trusteeship and in the Administrative Contract ....*

*(iv) Any others that may be established in the Administrative Contract, this Trusteeship (including those provided for in Section 9.1.24 of the Ninth Clause), the title and other agreements and contracts related to Obligations that state verbatim:*

*(i) Agreeing to the issuance of CBFIs on each Issuance and Placement Date in the Mexican and/or foreign securities market. Exclusively for the purposes of the first Issuance that is done and the acts prior thereto, the Trustor appoints in this act a technical committee made up exclusively of MOUSSA EL-MANN ARAZI (who also often uses the name of Moisés El-Mann Arazi) and ANDRÉ EL-MANN ARAZI, who must agree on the terms and conditions of the first Issuance of CBFIs and their Placement and instruct the Trustee regarding all acts that may be needed and/or are suitable in that regard, including entering into Adhesion Contracts.*

B) Copy of the Administrative and Operation Services Provisioning Contract entered into between F1 MANAGEMENT, S.C., represented by ANDRÉ EL-MANN ARAZI (THE ADMINISTRATOR) and DEUTSHE [sic] BANK MÉXICO, S.A., Institución de Banca Múltiple, División Fiduciaria (THE TRUSTEE) in its capacity as Trustee of Trusteeship number F/1401, represented by its Delegate Trustee Alfonso Rojas Dingler, in which it is found that they agreed, in its THIRD CLAUSE on Services: (Pages 131 to 145)

*The Administrator will provide to the Trustee those Services that may be necessary and suitable to carry out the most efficient administration, operation and maintenance of the equity of the Trusteeship, doing so in accordance with the provisions established in this Contract and the Trusteeship, the content and obligations of which it recognizes and accepts expressly, including, but not limited to, the following:*

*(c) Supervising the timely fulfillment of all of the obligations under the charge of the Trusteeship, particularly all those related to the CBFIs and derived from the Securities Market Law and related provisions.*

C) Uncertified copy of public writ 115,743, granted before the witness of Gerardo Correa Etchegaray [sic], holder of Notary Public Office 89 of Mexico City, which contains the Amending Agreement to Irrevocable Trusteeship Contract F/1401, dated January 28, 2011, whereby they agreed to modify (i) Declaration II of the Trustee in which a declaration is added under Paragraph (p); (ii) Paragraph f of the First Clause; (iii) Paragraph j of the First Clause; (iv) Paragraph e of the First Clause; (v) Ninth Clause, Section 9.1.2, Third Paragraph; (vi) Ninth Clause, Section 9.1.9, Paragraph; and (vii) Tenth Clause, Section 10.11; to be drafted in the following terms: (Pages 237 to 260)

*II. The Trustee declares ...*
<u>*That by means of Official Note number ASJ, dated December 8, 2018, issued by María de Lourdes Ochoa Neira, Director of Permits, Article 27 of the Constitution, Department of Trusteeship of the Secretariat of Foreign Affairs, said Secretariat confirmed that its authorization is not required to create the Trusteeship.*</u>

*FIRST. DEFINITIONS.*

*f. Means <u>Fibra uno Administración S.A. de C.V.</u> or the company that may replace it from time to time in accordance with the provisions of this Trusteeship and whose corporate purpose is the provisioning to this Trusteeship of Consultation Services in Planning.*
*j. <u>Acquired Real Estate:</u> means the real estate and Leasing Rights, if any, that will be acquired by the Trustee solely and exclusively with that nature, with the Resources Derived from the*

<table>
<tr><td>[Seal] UNITED MEXICAN STATES<br>**TREASURY**<br><sub>SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT</sub></td><td>CNBV</td><td>MEXICAN NATIONAL BANKING AND<br>SECURITIES COMMISSION<br><br>Official Note No. 211-1/110 40973 JFSG/2021</td></tr>
</table>

<u>*Issuance corresponding*</u> *to the first Placement, which are listed in* <u>*Annex "A"*</u> *of this Trusteeship.*

*NINTH. TECHNICAL COMMITTEE, AUDIT COMMITTEE and PRACTICE COMMITTEE.*

*9.1.2. ... The Adherent Trustors, through the Control Trust, while they maintain ownership of at least 15% of the CBFIs in circulation through said Control Trust, will have the right to appoint the rest of the members of the Technical Committee and their respective alternates, such that they will be entitled to appoint at least one-half plus one of the total members of the Technical Committee at the same Meeting of Holders. The Adherent Trustors may, at their discretion, appoint exclusively members of the Technical Committee that are not considered Independent Members.*

*9.1.9. The Chair of the Technical Committee will be the person appointed by the Adherent Trustors through the Control Trust, while they hold ownership of at least 15% of the CBFIs in circulation through said Control Trust will have the casting vote in the event of a tie. In the event that the Adherent Trustors through the Control Trust cease to maintain ownership of the aforementioned percentage of CBFIs, the Chair of the Technical Committee will be appointed by the Technical Committee itself, and the Secretary of the Technical Committee, who may not be a member of the Technical Committee, will be appointed by the Technical Committee itself.*

*TENTH. ADMINISTRATOR AND SERVICE COMPANIES.*

*10.11. No later than the Issue Date, the Trustee will enter into the Planning Advisory Agreement with* <u>*Fibra Uno Administración. S.A. de C.V.,*</u> *according to the document attached to this Trust as Annex D. Subsequently, the appointment of the Advisor will correspond to the Technical Committee.*

D) Simple copy of public deed 26,658, executed before the Notary Public Celso de Jesús Pala Castillo, Notary Public 244 of Mexico City, which contains the Second Amendment to Irrevocable Trust Agreement F/1401, dated March 17, 2015, which refers to the Second Amendment to Trust Agreement F/141, entered into by FIBRA UNO ADMINISTRACIÓN, S.A. de C.V. as Trustor, represented by its general attorney-in-fact Mr. André EI-Mann Arazi; DEUTSCHE BANK MÉXICO, S.A., Multi-banking Institution, Trust Division, as Trustee, represented by its Fiduciary Delegate Mr. Alonso Rojas Dingler; and, CIBANCO, S.A., as common representative of the CBFI holders, represented by its Fiduciary Delegates Ms. Mónica Jiménez Labora Sarabia and Mr. Luis Felipe Mendoza Cárdenas, which only contains the front of the pages that compose it. (Pages 276 to 315)

E) Notice dated July 2, 2018, whereby Fibra Uno (BMV, FUNO 11) (FUNO or Fibra Uno Trust) announces that it has entered into the fiduciary substitution agreement effective July 1, 2018, appointing Banco Actinver, S.A., Multi-banking Institution, Actinver Financial Group, as the new trustee of Irrevocable Trust F/1401, replacing Deutsche Bank México, Multi-banking Institution. (Pages 316 and 317)

F) Simple copy of FUNO's press release dated February 11, 2020, regarding information published in certain media outlets, clarifying that such situation has no relation with FUNO (Fibra Uno). (Page 318)

G) Interviews taken by the Federal Public Prosecutor's Office from Max, André and Moussa, surnamed EI-Mann Arazi. (Pages 319 to 330)

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV      MEXICAN NATIONAL BANKING AND
SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

H) Simple copy of the Determination by Expediency Measure issued within Investigation FED/SEIDF/UNAI-CDMX/0007075/2079. (Pages 331 to 375)

From the aforementioned facts and the documents on record in the respective file, as well as from the evidence examined and cross-checked, and:

<b>WHEREAS</b>

**ONE.** This National Banking and Securities Commission, in accordance with the provisions of articles 1, 37, section VII and antepenultimate paragraph of its Internal Regulations, in connection with article 388 of the Securities Market Act (LMV, in Spanish), is competent to issue its Opinion regarding the facts investigated in investigation **FED/SEIDF/UEIDFF-CDMX/0000879/2020**, against BANCO ACTINVER, S.A., Multi-banking Institution, Actinver Financial Group, in its capacity as Issuer and Trustee, and whomever may be responsible, for the *de jure* and *de facto* reasons stated in the body of this official letter.

**TWO.** Due to the nature of the facts denounced, it is appropriate to analyze the hypothetical case contained in article 383, section II of the LMV, such legal provision which reads as follows:

> **"Article 383.** *A punishment of imprisonment from five to ten years shall be applied to such person who:*
>
> *I. (...)*
>
> *II. Conceals or omits to disclose relevant information or events, which in terms of this law must be disclosed to the public or to the shareholders or security holders, unless such disclosure has been deferred under the terms of this Act".*

Based on an analysis of this statutory precept, the following elements can be appreciated:

a) Concealment or omission in the disclosure as conduct subject to statute.
b) That such concealment or omission is with respect to relevant information or events.
c) Which as under the law should have been disclosed.

From the foregoing, it is clear that for the analysis to determine whether these elements are met and whether therefore there has been conduct which comprises this statutory case subject to criminal penalty under the LMV, it is necessary to relate it to other regulatory provisions which define what is to be considered as a Relevant Event or Information and, if applicable, the obligation to disclose when in the presence thereof, and if applicable, the cases of exception or deferral for performance of such obligation. For such purposes, the content of Articles 2, 104 and 105 of the aforementioned LMV must be cited, as follows:

> **"Article 2.** *For the purposes of this Law, the following definitions shall apply:*
>
> *V. Relevant events shall be understood as the acts, facts or events of any nature that influence or may influence the prices of the securities registered in the Registry. <u>The National Banking and Securities Commission shall establish in General Provisions a non-exhaustive list of those acts, facts or events that shall be considered as relevant events, as well as the criteria to be followed by the issuers to determine when an event is considered relevant.</u>*

[Initials]

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV     MEXICAN NATIONAL BANKING AND
SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

*(...)*

*XII. Relevant information shall be understood as all information of an issuer necessary to know its real and current situation in financial, administrative, operational, economic and legal matters, and its risks, as well as, if applicable, the information of the corporate group to which it belongs, regardless of its position in the group, provided that it influences or affects such situation, and that is necessary for making reasoned investment decisions and estimating the price of the securities issued by the issuer itself, in accordance with the analytical customs and practices of the Mexican securities market.*

*"Article 104. Issuers with securities registered in the Registry shall be obliged to submit to the Commission and to the stock exchange on which their securities are listed, relevant information for immediate dissemination to the general public through the latter, by means of the reports indicated below:*

*(...)*

*III. Annual reports including:*

*a) The annual financial statements or their equivalents, depending on the nature of the issuer, accompanied by the external auditors' report, as well as a report that meets the requirements referred to in Article 86, sections II to IX, XI and XII of this Act.*

*V. Reports on relevant events, in accordance with the provisions of Article 105 of this Act.*
*...*
*In the case of trust securities, the information referred to in this article must be provided with respect to the trust assets. When compliance with the obligations relating to the securities issued under the trust depends totally or partially on the trustor, the administrator of the trust assets, guarantor, or any other third party, they must submit the information as determined by the Commission by means of general provisions, in relation to the aspects referred to in this article.*
*...*
*The Commission shall issue the general provisions establishing the requirements, terms and conditions with which the information referred to in this article must comply."*

*"Article 105. Issuers shall be obliged to disclose through the stock exchange on which their securities are listed, for immediate dissemination to the public and under the terms and conditions established by said exchange, the relevant events at the time they become aware of them and may only defer their disclosure when the following conditions are met:*

[Initials]

Av. Insurgentes

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV

MEXICAN NATIONAL BANKING AND SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

*I. They are not consummated acts, facts or events.*
*II. There is no information in mass media.*
*III. There are no unusual movements in the price or trading volume of the securities, such movements being considered as any change in the supply or demand of the securities or in their price, which is not consistent with their historical behavior and cannot be explained with the information available to the public.*

*When disclosing relevant events in terms of the provisions of the first paragraph of this article, issuers shall be obliged to disclose to the public all relevant information in connection with the aforementioned events."*

**THREE.** This General Directorate informed the General Directorate of Issuers that the federal Attorney General's Office requested that the National Banking and Securities Commission issue a criminality opinion in a matter of alleged concealment of relevant information on a securities issue by Banco Actinver in its capacity as trustee (by means of a fiduciary substitution agreement, effective as of July 1, two thousand eighteen, whereby BANCO ACTINVER, S.A., Multi-banking Institution, Actinver Financial Group was appointed as the new trustee of trust F/1401, replacing DEUTSCHE BANK MÉXICO, S.A., Multi-banking Institution, Trust Division, of the trust identified with the number F/1401 [Fideicomiso Fibra Uno or FUNO], in its capacity as Issuer in terms of the provisions of Article 2, section V of the Securities Market Act); and in order to comply with such request, we requested information as to whether or not relevant information of the F/1401 Trust was published or made known to the CNBV in the first half of 2020, such relevant information consisting of:

❖   The existence of blockages of the bank accounts of the F/1401 Trust.
❖   The existence of blockages of the bank accounts of the administrator F1 MANAGEMENT, S.C.
❖   The delivery of $2,000,000,000.00 (TWO BILLION AND 00/100 MEXICAN PESOS) by the brothers MAX, ANDRÉ and MOUSSA EL-MANN ARAZI (members of the Technical Committee) as an expediency measure to settle the criminal case.
❖   Of the existence of investigation FED/SEIDF/UNAI-CDMX/0001015/2019, brought against the EL-MANN ARAZI brothers for their alleged participation in the commission of the crime of Transacting with Illicit Gains.
❖   The granting of the aforementioned expediency measure for the crime of Transacting with Illicit Gains.

In response to the above, the General Directorate of Issuers of this Commission, through its Director, informed us:

I.      On January 31, 2020, the following was published in the mass media outlet called "El Financiero", among other information: "...The Financial Intelligence Unit requested Adalberto Palma's National Banking and Securities Commission to provide institutional depositaries, brokerage houses, exchange houses, development banking institutions, multi-banking institutions, savings and loan cooperatives, and investment companies with all the information they have on André and Max El Mann Arazi. The order of the agency headed by Santiago Nieto is numbered 110/F/B/646/2020. It concerns the real estate developers..." (hereinafter the "News Story of January 31"), which constitutes public information that can be consulted on the web page (global public network) of said media outlet: https://www.elfinanciero.corn.mx/opinion/dario-celis/tren-transistmico-en-ruta-de-colision.

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV   MEXICAN NATIONAL BANKING AND
SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

II.   On February 11, 2020, the mass media outlet "El Financiero" published, among other information, the following: "The government of the 4T [President López Obrador] dealt a first blow to the floating rate index in the real estate sector. The missile was aimed at businessmen André and Max EI-Mann Arazi and Rafael and Teófilo Zaga Tawil. They are the shareholders of TeIra Realty, a company that obtained in 2014 an exclusive contract from lnfonavit to develop a Mortgage Mobility program, better known as Cambiavit. [...] Weeks ago, and more recently yesterday, I informed [you/them] that the Financial Intelligence Unit (UIF), under Santiago Nieto, had requested information from the main shareholders of Fibra Uno. [...] The quickest to react were the EI-Manns, who offered the FGR and the UIF a reparation agreement in order to avoid further damage affecting the rest of their businesses. The main such business, namely Fibra Uno, is a trust that owns more than 560 properties representing 8.7 million square meters with a 94.3 percent occupancy rate. [...]" (hereinafter the "News Story of February 11" and together with the News Story of January 31, the "News Stories"), which constitutes public information that can be consulted on the aforementioned website of said media outlet: https://www.elfinanciero.com.mx/opinion/dario-celis/los-el-mann-reparan-2-mil-mdp-a-la-4t...

III.   Deriving from the information contained in the News Stories, through a **relevant event sent on February 11, 2020 at 12:41 p.m. by the Issuer** (hereinafter the "Relevant Event") through the Electronic System for Sending and Dissemination of Information of the Bolsa Mexicana de Valores, S.A.B. de C.V. (hereinafter the "Exchange") called Emisnet (hereinafter "Emisnet"), which constitutes public information that can be consulted on the Exchange's website at www.bmv.com.mx, the investing public was made aware of the following: "With respect to the information published in some media outlets today, it is important to clarify that the situation has no relation to FUNO ® (Fibra UNO) and its operations. FUNO ® states that it does not have, nor has it had, any connection with social housing projects or projects related to INFONAVIT. FUNO ® and its directors are committed to Mexico and work with the authorities at the three levels of government to promote the social and economic development of our country. FUNO ® conducts itself responsibly, ethically and with absolute respect for the law.

IV.   In addition, by means of the 2019 Annual Report sent on April 30, 2020 at 7:03 p.m. (hereinafter the "2019 Annual Report") through the Exchange's Emisnet, which constitutes public information that may be consulted on the Exchange's website at www.bmv.com.mx, the Issuer stated the following (emphasis added): "**To the reasonable knowledge of Administrator F1 Management and us, there are no relevant lawsuits or administrative or arbitration proceedings that may have a significant impact on our Administrator Fl Management, the Trustor or our CB Holders.** We are also not aware of the high probability that in the future there will be one or more such lawsuits or administrative proceedings. [...]"

You are also advised that FUNO, as an issuer of securities, is required to disclose all relevant information of which it becomes aware, pursuant to Article 2, sections VII and XII, and Articles 104 and 105 of the Securities Market Act, in connection with Title Five of the General Provisions applicable to issuers of securities and other participants in the securities market, particularly as provided in Article 50, section V, paragraph b).

As can be inferred from the transcribed report, no relevant event was published through Emisnet at the time of the facts denounced in relation to: i) The delivery of the $2,000,000,000.00 (TWO BILLION AND 00/100 MEXICAN PESOS) by the brothers MAX, ANDRÉ and MOUSSA EL-MANN ARAZI (members of the Technical Committee) as an expediency measure to settle the criminal case; ii) The existence of investigation FED/SEIDF/UNAI-CDMX/00001015/2019, brought against the EL-MANN ARAZI brothers for their alleged participation in the commission of the crime of Transacting with Illicit Gains; iii) The granting of the aforementioned expediency measure for the crime of Transacting with Illicit Gains.

[Initials]

Av. Insurgentes Sur No. 1971, Col. Guadalupe, [Illegible]
Tel: (55) 3454 6000 www.gob.mx/cnbv

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV    MEXICAN NATIONAL BANKING AND SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

**FOUR.** As regards the offense in question, it must first be pointed out that it does not require a specific capacity with respect to the offender, allowing that it may be committed by any person; however, due to the nature of the criminalized conduct, it is evident that it penalizes those who, having the obligation to carry out the dissemination of acts, facts or events of any nature that influence or may influence the prices of the securities registered in the Registry, **omit** to perform their duty of disclosure, by act or omission, examination of which with respect to appropriateness and liability will be carried out later on, once the rest of the descriptive and statutory elements establishes in the offense set out in **article 383, section II of the Securities Market Act** have been determined.

In this regard, it bears mention that the actions foreseen as conducts correspond to the concealment or omission of information or events that may influence, even relatively, the securities registered in the National Securities Registry, in this case, the Real Estate Trust Security Certificates (*Certificados Bursátiles Fursátiles Fiduciarios Inmobiliarios*, CBFls), issued as part of the so-called FIBRA UNO or FUNO.

Thus, prior to the study and determination of the possible commission of the respective acts or omissions, as a starting point, it must be determined whether the reported facts had the conceptual characteristics of a Relevant Event or Information, as well as whether, once gathered, they should be disclosed to the public, shareholders, or security holders, in terms of the LMV and the regulations emanating therefrom.

From this premise, the complainant indicated in its narration certain acts, facts or events that it considered to be Relevant Events that should have been disclosed but were not, namely:

❖   The delivery of the $2,000,000,000.00 (TWO BILLION AND 00/100 MEXICAN PESOS) by Mr. EL-MANN ARAZI.

❖   Of the existence of an investigation opened against the EL-MANN ARAZI brothers for their alleged participation in the commission of the crime of Transacting with Illicit Gains.

❖   The granting of the aforementioned expediency measure for the crime of Transacting with Illicit Gains.

In this regard, as established in the aforementioned article 2, section VII, this does contain the elements of what should be defined or considered as a <u>Relevant Event</u>, indicating additionally that the National Banking and Securities Commission shall establish in General Provisions a non-exhaustive list of the acts, facts or events that shall be considered as relevant events, as well as the criteria to be followed by the issuers to determine when an event is considered as such.

Accordingly, Article 50 of the *General Provisions applicable to issuers of securities and other participants in the securities market* (CUE), under Title Five "Disclosure of Relevant Events", sets forth a series of hypothetical cases that could constitute relevant events.

Taking into account the characteristics of the facts denounced, as well as the express statements made by the complainant, it is considered that such facts could fall under review of the following hypotheticals from Article 50 of the CUE:

[Initials]

Av. Insurgentes Sur No. 1971, Col. Guadalupe, [Illegible]
Tel: (55) 3454 6000 www.gob.mx/cnbv

[Seal] UNITED MEXICAN STATES **TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV    MEXICAN NATIONAL BANKING AND SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

*"**Article 50.-** Issuers of securities registered in the Registry shall transmit their relevant events to the stock exchange through the SEDI, in the manner and terms set forth in this Title, and subsequently on the same date to the Commission through the STIV-2.*

*By way of example, and provided that they influence or may influence the prices of the securities registered in the Registry, the following shall be considered relevant events:*

*I. ...*

*IV. Regarding the issuer's financial situation:*
*...*
*h) Any situation that has an impact on the financial structure or results or on the liquidity, solvency, profitability and asset utilization ratios, as well as any change in accounting, financial or economic policy with respect to the fiscal year immediately preceding that in which such change occurs.*
*...*
*V. In connection with litigation and regulatory changes:*
*...*
*b) **Judicial, administrative** or arbitration **proceedings of importance to the issuer or to the legal entities it controls or in which it has a significant influence**, as well as the rulings issued in such proceedings, or issued against shareholders who have at least a significant influence, directors and relevant executives.*

*X. Other acts, facts or events that have the capacity to influence the price of the issuers' securities.*

*In the case of trust securities or securities whose compliance depends totally or partially on the trustor, administrator of the trust patrimony, the guarantor, or any other third party, the information to which this article refers must be disclosed, as appropriate, with regard to said subjects. In addition, in the case of trust securities for real estate development, energy and infrastructure investment or investment projects, the information from this article must also be disclosed and sent with regard to the companies in which the trust invests or from whom it acquires securities representing their capital stock, considering each of the investments or divestments that are made, where applicable.*

*In order to determine whether an event is relevant, issuers must consider whether the act, fact or event in question represents, if applicable, at least 5% of the total consolidated assets, liabilities or capital, or 3% of the issuer's total consolidated sales for the previous year. When such transaction represents less than the percentages indicated or is not quantifiable in percentage terms, the issuer must evaluate whether the act, fact or event in question constitutes or may constitute relevant information in terms of the Securities Market Act."*

[Initials]
Av. Insurgentes Sur No. 1971, Col. Guadalupe, [Illegible]
Tel: (55) 3454 6000 www.gob.mx/cnbv

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV     MEXICAN NATIONAL BANKING AND
SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

In this case, being an issuance of Real Estate Trust Security Certificates (CBFIs), known as FIBRA, the legal structure established for such purposes was made through a Trust, whose trustee institution is a Credit Institution, in this case Banco Actinver, S.A., Multi-banking Institution, Actinver Financial Group, so initially it is said Institution who, through the use of a Vehicle (Trust), carries out issuance of the certificates in accordance with the characteristics governed by articles 63 and 63 Bis 1, section II, of the LMV, so in the first instance, in accordance with the aforementioned section VII of article 2 of the LMV, it is they who hold the capacity of Issuer.

The foregoing is without prejudice to the liability and obligations that the LMV, the general provisions arising therefrom, and the issue documents (Trust Agreement, Administration Agreement, sundry contracts, prospectus, brochures, reports, articles of incorporation, etc.) provide for the other parties or associated entities that participate in the structure of the issuing vehicle, as well as for the fulfillment of obligations, given that, among others, the Trustor, the Trustee, the Technical Committee of the trust, the Administrator, and certain other third parties are responsible for various obligations, burdens or responsibilities with respect to the trust assets and the fulfillment of the purposes for which the Certificates were issued and the trust was constituted.

In this sense, in order to determine whether the facts denounced are consistent with the hypotheticals set forth in Article 2, Section VII of the LMV, or Article 50 of the CUE, the descriptive characteristics of what would be considered as a Relevant Event can be considered in a concatenated manner.

**FIVE:** In the first instance, entering into the analysis of the facts with respect to the specific events related to the blocking of the accounts in the terms described in the complaint, considering that according to the evidence in the record that was analyzed, no reliable proof of such event was found, and consequently, it is not possible to validate any such seizures. On the other hand, with respect to what the complainant indicated as relevant events that were not disclosed, pointing out in his complaint:

❖ *The delivery of the $2,000,000,000.00 (TWO BILLION AMD 00/100 MEXICAN PESOS) by Mr. EL-MANN ARAZI.*
❖ *The existence of an investigation opened against the EL-MANN ARAZI brothers for their alleged participation in the commission of the crime of Transacting with Illicit Gains.*
❖ *The granting of the aforementioned expediency measures for the crime of Transacting with Illicit Gains.*

The resulting situation could potentially fall under the provisions of Section V, paragraph b) of Article 50 of the CUE, which, as mentioned above, indicates that with respect to litigation, judicial, administrative or arbitration proceedings of importance for the issuer or for the legal entities it controls or in which it has a significant influence, legal acts issued against shareholders who have at least a significant influence, directors and relevant executives must be considered as a relevant event.

In order to determine whether the elements indicated in said subsection have been met, several assumptions must be considered, the first of which is the existence of a judicial or administrative proceeding, as can be seen from the content of the interviews conducted with Max, André and Moussa El-Mann Arazi, as well as the consultation and authorization for the granting of an Experiency Measure in favor of said persons, as per the record from Investigation FED/SEIDF/UNAI-CDMX/0001015015/2019, wherein they were taken as defendants, with regard to the crime stipulated in Article 400 Bis of the Federal Criminal Code, of relevance to the financial system.

With the certainty in the existence of the prosecutorial proceeding, the importance that it generates is confirmed by the significant influence that derives from its decision-making or management powers and, with respect to which, any impact or effect on its legal, economic, financial, and even personal or any other type of situation, may be consequential or important to the issue and its information, stressing that in the structure of FIBRA, the subjects indicated as defendants in the criminal

[Initials]

Av. Insurgentes Sur No. 1971, Col. Guadalupe, [Illegible]
Tel: (55) 3454 6000 www.gob.mx/cnbv

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV    MEXICAN NATIONAL BANKING AND
SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

investigation (Max, André and Moussa El-Mann Arazi, who apparently also goes by Moisés El-Mann Arazi), as well as in the existence of the Expediency Measures that were presented in the complaint, have participated in various ways in the Trust Agreement and its respective Amendment Agreements, forming part of the Technical Committee of said instrument for the issuance of Securities registered in the Registry (in this case, CBFIs).

In this regard, it bears mention that the shareholders and sole members of the Board of Directors of Fibra Uno Administración, S.A. de C.V., as can be identified from the articles of incorporation identified under number 114,506, executed before Gerardo Correa Etchegaray, Notary Public 89 of Mexico City, which is recorded as public information for the securities issue, are Max and André El-Mann Arazi, appointing Moussa El-Mann Arazi as general attorney-in-fact with broad powers and, at the time of the incorporation of the Trust, deciding to continue to play a relevant role in the structure of the issuing vehicle, through their direct participation as Members of the Technical Committee of the Trust, in which they even occupy the position of Regular Members together with Moussa El-Mann Arazi, as Chair and Member Director of the same, remaining in such capacity during the occurrence of the events that are the subject matter of the complaint.

In this regard, it should be noted that in accordance with Article 80 of the Credit Institutions Act, as well as Article 64 Bis I of the LMV, for the case of this type of Issuer Trust, it provides for the creation of a Technical Committee, whose powers must be established in the constitutive document.

As regards Trust Agreement F/1401 (F/one thousand four hundred and one), the Clause Nine determines, among other things, the creation, initial formation and powers of the aforementioned Committee, such text which allows one to determine the overwhelming importance of its actions and decisions in the behavior and fulfillment of the Trust's purposes. As mentioned above, Moussa El-Mann Arazi holds the position of Committee Chair, André El-Mann Arazi the position of Director, and Max El-Mann Arazi and Elías Sacal Micha are Regular Members, being recognized as a whole as the El-Mann Family and Relevant Family, as such terms are defined in the Trust Agreement, in view of which it is clear that they act as a Group of Persons, in accordance with the provisions of Article 2, Section IX of the LMV.

The responsibility of the alleged investigated parties is corroborated in terms of the provisions of Clause 9.1.14 of the Trust Agreement, which indicates that the members of the Technical Committee must comply with the duties of diligence, loyalty and responsibility established for the members of the Boards of Directors of the stock corporations indicated in articles 30 to 40 of the LMV.

In this way, the complainant indicates that Max, André and Moisés El-Mann Arazi have, since the execution of the trust agreement that gave rise to the issuance of the CBFIs (FIBRA) F/1401, been members of its Technical Committee, a situation that, according to the complaint, the prosecutorial records, and the public information that exists in the BMV, had not been modified as of the date of the acts, facts or events that are the subject of the complaint.

On the other hand, the participation and role that André, Max, and Moisés El-Mann Arazi represent for the Issuer is clearly relevant, as Trust Agreement F/1401 establishes the participation of *Adherent Trustors*, defining them as any **Owner** that contributes Real Estate to the trust assets, whereby they will acquire for trust purposes the rights and obligations established therein and in the respective Adhesion Agreement, and on whose percentage stake will depend the attribute of *Relevant Family,* as defined in Trust Agreement F/1401. In this regard, the Trust Agreement establishes that the *Owners,* in their capacity as *Adherent Trustors*, will contribute to another trust, which will be identified as the *Control Trust,* ownership of the CBFIs they receive for the contribution of Real Estate, and they may, if they hold at least 3% of the outstanding CBFIs, also hold the status of *Relevant Adherent Trustor,* with the influence that these may represent, together with those who hold the status of *Adherent Trustor,* for the exercise of reversion rights on contributed real estate,

[Initials]

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV    MEXICAN NATIONAL BANKING AND
SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

of exclusivity or preference rights regarding the acquisition or disposal of real estate by and for the Trust, of the appointment of members of the Technical Committee, as applicable to each one, as well as regarding the procedures related to the Real Estate of the Trust F/1401.

In this regard, from the List of Contributed Real Estate Assets that is part of Trust Agreement F/1401, a significant participation of André, Max, and Moisés El-Mann Arazi, as Owners, is identified, whose definition contemplated in the trust itself shows that they have the status of Adherent Trustors.

Additionally, in accordance with Trust Agreement F/1401, the obligation was established to hire an Advisor, through the execution of a Planning Advisory Agreement, whose services would consist of providing the Issuer Trust with all the specialized advice it requires, in connection with the planning, strategy and execution of the important decisions of the Trust, particularly in connection with the location, selection, review, acquisition, development, construction, conditioning, operation, maintenance and sale of the Real Estate and the financial planning, strategy and execution of the Trust's <u>transcendental decisions</u>, particularly those related to the location, selection, review, acquisition, development, construction, conditioning, operation, maintenance and sale of Real Estate and to the financial and strategic planning of the Trust's Assets, as well as the relationship with investors, which was entered into with Fibra Uno Administración, S.A. de C.V.; in addition to being the Advisor, it is the Trustor in Trust Agreement F/1401, with participation in André, Max, and Moussa El-Mann Arazi's stake in the capital stock and participation in the administrative bodies and as general attorneys-in-fact with broad powers.

From all of the above, it can be concluded that André, Max, and Moussa El-Mann Arazi have a high importance, among others, in the structure, operation and decisions of the issuance of the CBFIs issued by Banco Actinver, S.A., Multi-banking Institution, Actinver Financial Group.

**SIX.** Regarding the existence of a proceeding with the Public Prosecutor's Office in the form of an Investigation; the respective reparation of the damage; the authorization of the Expediency Measure in favor of André, Max, and Moussa El-Mann Arazi, it could be determined that the conditions are met as provided in paragraph b) of section V of article 50, related to: "*V. In connection with litigation and regulatory changes: ... b) Judicial, administrative or arbitration proceedings of importance to the issuer or to the legal entities it controls or in which it has a significant influence, as well as the rulings issued in such proceedings, or issued against shareholders who have at least a significant influence, directors and relevant executives*", significant influence which is highlighted in the Annual Report presented in 2020, in which there is a section called *"Administrator of the Trust Assets"*, where the members of the Technical Committee and Relevant Officers are recognized as Directors, including among others Mr. André El-Mann Arazi, who is even responsible for its integration, according to the signature in the Sworn Declarations that are attached to the Annual Report and that are presented in accordance with the provisions of article 33, section 1, paragraph b), numeral 1.4 of the CUE.

From the foregoing, the importance that André, Max, and Moussa El-Mann Arazi have is evident both for the Issuer and for the legal entities it controls, such as F1 Management, S.C., in its capacity as Administrator, the foregoing given their attributes and participation in the various bodies, positions, functions and jobs in the Issuer's legal structure, its Technical Committee *(where they act as Chair and Non-Independent Proprietary Members)*; the Administrator *(as Partner, General Director, member of the Board of Directors and Attorneys-in-fact)*; the Advisor *(where they are also shareholders, members of the Board of Directors and attorneys-in-fact, respectively)*; not to mention their participation as members of the Technical Committee of the Control Trust and Adherent Trustor.

From the foregoing it is clear the relevance of the information related to the existing prosecutorial investigation against the assets mentioned, whose lack of disclosure as a relevant event could undoubtedly influence the investing public, by violating one of the guiding principles in stock exchange legislation which is the disclosure of information, as stated in the definition that the LMV has regarding relevant information; consequently, it can be determined that the facts related to the existence of a proceeding with the Public Prosecution in the form of an opened Investigation; the respective

[Initials]

[Seal] UNITED MEXICAN STATES
**TREASURY**
SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT

CNBV   MEXICAN NATIONAL BANKING AND
SECURITIES COMMISSION

Official Note No. 211-1/110 40973 JFSG/2021

reparation of the damage; the authorization of the Expediency Measure in favor of André, Max, and Moussa El-Mann Arazi, have relevance in relation to the positions they occupy in the structure of the F/1401 Trust Fund, as can be inferred from the evidence that comprises the Investigation Record sent for analysis by this Commission, regardless of whether or not they were directly related to the operation of the Trust, in our opinion they constitute a Relevant Event that should be disclosed, in terms of articles 50, section V, paragraph b) of the CUE, in connection with article 2, section VII, 104, section V and 105, first paragraph, of the Securities Market Act.

**SEVEN.** Thus, in accordance with what is indicated in the preceding sections, in the present case there are Relevant Events which should have been disclosed with no such disclosure having been made. It remains to determine whether the acts, facts or events denounced could be subject to deferral in their disclosure, in accordance with the provisions of sections I to III of the aforementioned article 105 of the LMV, which indicates:

> "**Article 105.** Issuers shall be obliged to disclose through the stock exchange on which their securities are listed, for immediate dissemination to the public and under the terms and conditions established by said exchange, the relevant events at the time they become aware of them and may only defer their disclosure when the following conditions are met:
>
> I. They are not consummated acts, facts or events.
> II. There is no information in mass media.
> III. There are no unusual movements in the price or trading volume of the securities, such movements being considered as any change in the supply or demand of the securities or in their price, which is not consistent with their historical behavior and cannot be explained with the information available to the public.
>
> When disclosing relevant events in terms of the provisions of the first paragraph of this article, issuers shall be obliged to disclose to the public all relevant information in connection with the aforementioned events."

Based on the above terms, and given the nature of the events denounced, consisting of the existence of proceedings that had as a consequence the reparation of damage for the subsequent authorization of an Expediency Measure with respect to the proceedings brought within an Investigation before the Public Prosecutor's Office, these have the characteristic of being consummated acts, and thus, having omitted to disclose the relevant events described while having, in accordance with the Securities Market Act and the CUE, the legal obligation to disclose them to the public or to the shareholders or holders of securities, without any case allowing deferral of their disclosure under the terms of the law, the **terms established in Article 383, section II of the Securities Market Act apply to the conduct in question**.

**EIGHT.** Finally, with respect to the malice displayed by the defendants, as is evidenced by the prosecutorial evidence that comprises the record of the Investigation, it must be pointed out that André, Max, and Moussa El-Mann Arazi had first-hand knowledge of these facts, there being multiple acts for which Expediency Measures had been authorized for them, and in accordance with their legal and contractual obligations as members of the Technical Committee of the F/1401 Trust, Relevant Officers and members of the governing body of F1 Management, S.C., as Administrator of Trust F/1401, in the Securities Market Act, the General Provisions applicable to securities issuers and other participants in the securities market (CUE), Trust Agreement F/1401 and its Amendments, in the Administration Agreement entered into with F1 Management, S.C., as Administrator, they should have informed the investor public or

[Initials]

| | | |
|---|---|---|
| [Seal] UNITED MEXICAN STATES<br>**TREASURY**<br><small>SECRETARIAT OF THE TREASURY AND PUBLIC CREDIT</small> | CNBV | MEXICAN NATIONAL BANKING AND SECURITIES COMMISSION<br><br>Official Note No. 211-1/110 40973 JFSG/2021 |

CBFI holders through the disclosure of Relevant Events as to the existence of the Investigation from which the above-mentioned Expediency Measures in criminal matters were derived, omitting to do so in the terms already described in the preceding sections, which means its actions fall under the case established in section II, article 383 of the Securities Market Act.

Based on the foregoing, deriving from the comprehensive review of the evidence provided and described in this official letter, it is appropriate to issue the following:

### CONCLUSION

**SOLE.** From the analysis of the prosecutorial proceedings contained in the investigation **FED/SEIDF/UEIDFF-CDMX/0000879/2020**, it is determined that **André EI-Mann Arazi, Max EI-Mann Arazi, and Moussa EI-Mann Arazi**, in the terms indicated in the Facts and Considerations of this document, under the characteristics and conditions that can be deduced from the concatenated evaluation of said evidentiary elements, engaged in conduct that falls under the description set out and sanctioned in **section II of article 383 of the Securities Market Act**.

The foregoing is without prejudice to the degree of co-participation that in accordance with **number 13 of the Federal Criminal Code** corresponds to the rest of the members of the Technical Committee of Trust F/1401, to the trust institution, Banco Actinver, SA, Mult-banking Institution, Actinver Financial Group, as well as to the Administrator F1 Management, S.C., through its **CEO and Board of Directors**, or whoever may be responsible within said legal entities, **for the same offense set forth in article 383, section II of the Securities Market Act**, derived from their knowledge of the conduct deployed and described in this document.

The foregoing is without prejudice to the imposition of any penalties that, pursuant to other laws, may be applied for the commission of one or more other crimes.

This opinion is issued based on Article 388, paragraphs one and six of the Securities Market Act, Article 1, 37, sections VII and XV of the Internal Regulations of the National Banking and Securities Commission.

### SINCERELY

[signature].
**MS. GABRIELA GÓMEZ SOTO**
DEPUTY GENERAL DIRECTOR OF CRIMES "A".

CC: **Mr. Sergio Antonio Martínez Escalante**, Head of the Specialized Unit for the Investigation of Tax and Financial Crimes. In attention to your official communication UEIDFF/3446/2020 dated November 26, 2020. For your information. Av. de los Insurgentes 20, Colonia Roma Norte, Alcaldía Cuauhtémoc, C.P. 06700, Mexico City.

**EXHIBIT:** Authentic copy of investigation record number **FED/SEIDF/UEIDFF-CDMX/0000879/2020**, consisting of one volume with 384 pages.

**CGS/JFSG**

[Initials]



# TRANSLATOR CERTIFICATION

Date: December 20, 2023

To whom it may concern:

I, Daniel Feather, a translator fluent in the Spanish and English languages, on behalf of Morningside Translations, do solemnly and sincerely declare that the following is, to the best of my knowledge and belief, a true and correct translation of the document(s) listed below in a form that best reflects the intention and meaning of the original text.

The document is designated as:

- **"CNBV Opinion re El Mann Payment.pdf" (pages 1-13)**

_____
Signature

Daniel Feather

_____
Print



# TRANSLATOR CERTIFICATION

Date: December 20, 2023

To whom it may concern:

I, Michael Reimer, a translator fluent in the Spanish and English languages, on behalf of Morningside Translations, do solemnly and sincerely declare that the following is, to the best of my knowledge and belief, a true and correct translation of the document(s) listed below in a form that best reflects the intention and meaning of the original text.

The document is designated as:

- **"CNBV Opinion re El Mann Payment.pdf" (pages 13-24)**

_____
Signature

Michael Reimer
_____
Print

**The Leader in Global IP Solutions**

CNBV

Oficio No. 211-1/110-40973-JFSG/2021

**Vicepresidencia Jurídica**
**Dirección General de Delitos y Sanciones**
Dirección General Adjunta de Delitos A
Ciudad de México, 25 de enero de 2021

Oficio No. 211-1/110-40973-JFSG/2021

Exp CNBV 2C121. OD/080A/2020

ASUNTO: Se emite opinión en términos y para los efectos

**PROCURADURÍA FISCAL DE LA FEDERACIÓN**
SUBPROCURADURÍA FISCAL FEDERAL DE INVESTIGACIONES
DIRECCIÓN GENERAL DE DELITOS FINANCIEROS Y DIVERSOS
Av. Insurgentes Sur No. 795, Piso 8
Col. Nápoles, Alcaldía Benito Juárez
C.P. 03810, Ciudad de México.

En veinticuatro fojas útiles se emite opinión derivada de la solicitud contenida en el oficio UEIDFF/3446/2020 de fecha 26 de noviembre de 2020, mediante el cual la Fiscalía General de la República remitió a este Órgano Desconcentrado, copia auténtica de la carpeta de investigación número FED/SEIDF/UEIDFF-CDMX/0000879/2020 constante de un Tomo con 384 fojas útiles, iniciada con motivo de la denuncia presentada por RAFAEL ZAGA TAWIL en contra de BANCO ACTINVER, S.A. INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO ACTINVER y F1 MANAGEMENT, S.C, y quien resulte responsable, por hechos con apariencia de delito previsto en la Ley del Mercado de Valores, solicitando en términos de lo dispuesto por el artículo 37, fracciones VII, VIII y XV del Reglamento Interior de esta Comisión, la emisión de una Opinión.

Al respecto, del contenido de la denuncia presentada por el querellante ante la Fiscalía General de la República, se desprende que, en la misma señala entre otros, los siguientes:

A N T E C E D E N T E S

*I.- Con fecha diez de enero de dos mil once, se suscribió el Contrato de Fideicomiso identificado con el número F/1401 (Fideicomiso Uno o FUNO), que celebraron por una parte FIBRA UNO ADMINISTRACIÓN, S.A. DE C.V. legalmente representada por el señor ANDRÉ ELMANN ARAZI, en su carácter de fideicomitente, DEUTCHE BANK MÉXICO, S.A., Institución de Banca Múltiple División Fiduciaria, legalmente representada por el señor ANDRÉS SAINZ GONZÁLEZ, y THE BANK OF NEW YORK MÉXICO,S.A., Institución de Banca Múltiple (ahora CI BANCO, S.A, Institución de Banca Múltiple), en su carácter de representante común de los tenedores de los Certificados Bursátiles Fiduciarios Inmobiliarios (CBFI´s), representada por la señora MÓNICA JIMÉNEZ LABORA SARABIA.*

*II.- Es importante hacer del conocimiento de esa Autoridad Ministerial de la Federación que dentro de la CLÁUSULA PRIMERA del contrato de fideicomiso antes mencionado se señala como Familia Relevante a la*

Av. Insurgentes
Tel. (55)
/



*familia EL-MANN ARAZI, entendiéndose por dicha familia a todos y/o cualesquiera de los señores MOUSSA (quien también responde a nombre de MOISES), MAX Y ANDRÉ, todos de apellidos EL-MANN ARAZI, así como el señor ELÍAS SACAL MICHA.*

*Asimismo, en términos de lo dispuesto por dicha cláusula se entiende como Familias Relevantes a todas y/o cualquiera de las personas integrantes de la Familia EL-MANN y otras familias, en la medida de que cada una de esas personas en lo individual o como familia, a través del fideicomiso de control detenten cuando menos el 3% de los CBFI´s en circulación.*

*III.- En términos de la CLÁUSULA QUINTA de dicho acuerdo de voluntades, el objeto principal de fideicomiso "consiste en la adquisición y/o construcción de Bienes Inmuebles para ser destinadas al arrendamiento, la adquisición de derecho de percibir ingresos provenientes del arrendamiento de dichos bienes inmuebles, así como recibir financiamiento para esos fines con garantía sobre los bienes inmuebles".*

*De igual forma, dentro de dicha cláusula se estableció que el fiduciario tendría la facultad para el cumplimiento de los fines del fideicomiso <u>cobrar, recibir, y administrar rentas y cualquier otra cantidad en relación con las Inversiones Permitidas y cualquier otro bien que sea parte del Patrimonio del Fideicomiso, así como preparar y proveer toda la información relacionada con el fideicomiso que deba ser entregada de conformidad con el acuerdo de voluntades antes mencionado, la Ley del Mercado de Valores, la Circular Única de Emisoras, el Reglamento Interior de la Bolsa Mexicana de Valores y demás legislación aplicable,</u> así como toda la información que sea requerida de conformidad con otras disposiciones el fideicomiso y otros contratos en los que el fideicomiso sea parte.*

*IV.- En términos de la CLÁUSULA NOVENA del multicitado acuerdo de voluntades el Comité Técnico del Fideicomiso se integró de la siguiente manera:*

| Miembro Propietario | Miembro Suplente | Miembro Independiente |
|---|---|---|
| Moisés El-Mann Arazi. | Charles El-Mann Fasja. | No--------------- |
| André El-Mann Arazi. | Charles El-Mann Jafif. | No--------------- |
| Isidoro Attié Laniado. | Eduardo Cherem Harari. | No--------------- |
| Elías Sacal Micha. | Alberto Sacal El-Mann. | No--------------- |
| Max El-Mann Arazi. | Charles El-Mann Metta. | No--------------- |
| Abude Attié Dayán. | Isaac Attié Laniado. | No--------------- |
| Amín Guindi Hemsani. | Alberto Guindi Hemsani. | No--------------- |
| Jaime Kababie Sacal. | Rafael Kababie Sacal. | No--------------- |
| Ignacio Trigueros Legarreta. | Por designar----- | Sí--------------- |
| Henry Davis. | Por designar----- | Sí--------------- |
| Rubén Goldberg Javkin. | Por designar----- | Sí--------------- |
| Herminio Blanco Mendoza. | Por designar----- | Sí--------------- |

*No se debe de perder de vista que, en términos de lo dispuesto por la CLÁUSULA NOVENA antes mencionada, el comité técnico del fideicomiso estará integrado hasta por veintiún miembros propietarios y sus respectivos suplentes, mismos que serán nombrados o ratificados en la Asamblea de Tenedores de la siguiente forma:*

*Cualesquier tenedores que en lo individual o en conjunto tengan 10% de los CBFI´s en circulacion tendran el derecho de designar en Asamblea de Tenedores a un miembro propietario y su respectivo suplente en el Comité Técnico (siempre y cuando dichos Tenedores no hubieren renunciado a su derecho a designar miembros del Comité Técnico)*



Oficio No. 211-1/110-40973-JFSG/2021

Los Fideicomitentes adherentes, a través del Fideicomiso de Control, *mientras los mismos mantengan la titularidad de por lo menos del 15% de los CBFI´s en circulación a través de dicho Fideicomiso de Control*, tendrán el derecho de designar al resto de los miembros propietarios del comité técnico y sus respectivos suplentes, de manera tal que tendrán el derecho de designar al menos a la mitad más uno del total de los miembros del Comité Técnico en la propia Asamblea de Tenedores. Los Fideicomitentes Adherentes a su discreción, podrán designar exclusivamente miembros del Comité Técnico que no sean considerados Independientes.

Lo anterior, en el entendido de que en ningún caso los Miembros Independientes podrán representar menos del 25% de los miembros propietarios del Comité Técnico y sus respectivos suplentes...

Asimismo, es importante hacer del conocimiento de esa Autoridad Ministerial de la Federación que una de las facultades innegables del Comité Técnico del Fideicomiso consiste en "Instruir al fiduciario la revelación de Eventos Relevantes de que tenga conocimiento, entre los cuales se incluyen todos aquellos acuerdos del mismo cuyo sentido sea contrario a la opinión emitida por el Comité de Prácticas o Comité de Auditoría o aquel o aquellos que ejerzan dichas funciones. Asimismo, deberá (sic) Fiduciario solicitar al Administrador la revelación de Eventos Relevantes de que tenga conocimiento éste último.

**V.-** En cumplimiento a lo dispuesto por la CLÁUSULA DÉCIMA del contrato de fideicomiso, con fecha veinte de enero de dos mil once, el entonces fiduciario DEUTCHE BANK MÉXICO, S.A., Institucion de Banca Múltiple División Fiduciaria, legalmente representado por su delegado fiduciario ALONSO ROJAS DINGLER, celebró con F1 MANAGEMENT, S.C. legalmente representada por el señor ANDRÉ EL-MANN ARAZI, un contrato de prestación de servicios y operación.

En términos de lo dispuesto por las cláusulas DÉCIMA y TERCERA del contrato de fideicomiso y del contrato de prestación de servicios antes mencionado, respectivamente, los servicios que habría de prestar el Administrador consistirían en realizar todos los actos necesarios y convenientes para realizar la más eficiente administración, operación y mantenimiento del patrimonio del fideicomiso, de conformidad con lo establecido en el contrato de servicios y el fideicomiso, entre los cuales se encuentra el *supervisar el cumplimiento oportuno de todas las obligaciones a cargo del fideicomiso, particularmente todas aquellas relacionadas con los CBFI´s y derivadas de la Ley del Mercado de Valores y disposiciones relacionadas.*

**VI.-** Con fecha dieciocho de marzo de dos mil once, el fideicomiso F/1401 comenzó a realizar oferta pública de CBFI´s utilizando como sistema de negociación bursátil a la Bolsa Mexicana de Valores.

**VII.-** Mediante el convenio de sustitución fiduciaria correspondiente, con efectos a partir del primero de julio de dos mil ocho, se nombró a BANCO ACTINVER, S.A. Institución de Banca Múltiple, Grupo Financiero Actinver como nuevo fiduciario del fideicomiso F/1401, en sustitución de DEUTCHE BANK MÉXICO, S.A. Institución de Banca Múltiple, División Fiduciaria.

Como consecuencia del convenio antes mencionado, BANCO ACTINVER, S.A., Institución de Banca Múltiple, Grupo Financiero Actinver adquirió todas y cada una de las obligaciones de la emisora de los Certificados Bursátiles Fiduciarios Inmobiliarios que representan el derecho a una parte alícuota de los frutos de los rendimientos de los bienes o derechos o del producto de la venta de los bienes o derechos que formen parte del patrimonio fideicomitido al fideicomiso F/1401, *entre los cuales se encuentra el reporte de eventos relevantes en los términos de lo dispuesto por los artículos 2°, fracción VII, 104, fracción V, 105 y 106 de la Ley del Mercado de Valores.*

**VIII.-** Asimismo, para efectos del presente escrito de denuncia de hechos es importante mencionar que los miembros actuales del Comité Técnico del fideicomiso son los señores *MOISÉS, ANDRÉ y MAX, todos de apellidos EL-MANN ARAZI,* ABUDE ATTIÉ DAYAN, ISIDORO ATTIÉ LANIADO, *ELIAS SACAL MICHA,* JAIME

Av



CNBV /    ANC AINA :

Oficio No. 211-1/110-40973 JFSG/2021

*KABABIE SACAL, RUBÉN GOLBERG JAVKIN, HERMINIO BLANCO MENDOZA, IGNACIO TRIGUEROS LEGARRETA, ANTONIO FRANCK CABRERA y ALBERTO MULÁS ALONSO.*

*No se debe perder de vista que los antecedentes que contiene el presente capítulo fueron elaborados con base a la información pública de la Bolsa Mexicana de Valores y del Fideicomiso F/1401 conocido como Fideicomiso Fibra Uno.*

Asimismo, el denunciante RAFAEL ZAGA TAWIL señala entre otros, los siguientes:

### HECHOS

**1.-** Que el 13 de febrero de 2020, compareció con el carácter de imputado dentro de la carpeta de investigación FED/SEIDF/UNAI-CDMX/0001015/2019, radicada ante el Agente del Ministerio Público de la Federación en funciones de Fiscal en Jefe de la Unidad de Investigación y Litigación "D" en la Ciudad de México, de la Unidad Especializada en Investigación de Delitos cometidos por Servidores Públicos y Contra la Administración de Justicia de la Fiscalía General de la República, en la que se investiga básicamente que los señores OCTAVIO TINAJERO ZENIL, LUÍS RODOLFO ARGÜELLES RABELL y JUAN CRISTOBAL GIL RAMÍREZ, en su entonces Subdirector Jurídico, Subdirector General de Canales de Servicio y Subdirector de Administración de Cartera del INFONAVIT, respectivamente, indebidamente celebraron con TELRA REALTY, S.A.P.I. de C.V., los siguientes contratos:

- ❖ *Convenio de Colaboración que celebran por una parte el Instituto del Fondo Nacional de la Vivienda para los Trabajadores, en lo sucesivo el INFONAVIT, representado por el Lic. JOSÉ. ANTONIO TINAJERO ZENIL por la otra TELRA REALTY, S.A.P.I., de C.V., en lo sucesivo la PROMOTORA, representada en este acto por el señor RAFAEL ZAGA TAWIL, de fecha nueve de junio de dos mil catorce.*
- ❖ *Contrato de Prestación de Servicios que celebran por una parte el Instituto del Fondo Nacional de la Vivienda para los Trabajadores, representado por el señor Ingeniero RODOLFO ARGÜELLES RABELL y por la otra TELRA REALTY, S.A.P.I., de C.V., en lo sucesivo la PROMOTORA, representada en este acto por el señor RAFAEL ZAGA TAWIL, de fecha veintinueve de junio de dos mil quince.*
- ❖ *Contrato de Prestación de Servicios que celebran por una parte el Instituto del Fondo Nacional de la Vivienda para los Trabajadores, representado por el señor Ingeniero RODOLFO ARGÜELLES RABELL y por la otra TELRA REALTY, S.A.P.I., de C.V., en lo sucesivo la PROMOTORA, representada en este acto por el señor RAFAEL ZAGA TAWIL, de fecha seis de noviembre de dos mil quince.*
- ❖ *Contrato de Prestación de Servicios Profesionales que celebran por una parte el Instituto del Fondo Nacional de la Vivienda para los Trabajadores, representado en este acto por su Subdirector General de Administración de Cartera, Lic. JUAN CRISTOBAL GIL RAMÍREZ, a quien en el curso de este instrumento se le denominará EL INFONAVIT y por la otra la persona moral denominada TELRA REALTY, SOCIEDAD ANÓNIMA PROMOTORA DE INVERSIÓN DE CAPITAL VARIABLE, a quien en lo sucesivo se le denominará EL PROMOTOR, representada en este acto por el señor RAFAEL ZAGA TAWIL, de fecha veinticuatro de febrero de dos mil dieciséis.*

**2.-** Que derivado de su comparecencia ante el Ministerio Público de la Federación que conoce de los presentes hechos, tuvo conocimiento que:

**a)** El 31 de enero de 2020 se presentó una persona que se ostentó como abogado de los señores MAX y ANDRÉ de apellidos EL-MANN ARAZI, quien por instrucción de estos, presentó por cuenta y orden de ellos, un proyecto de acuerdo reparatorio firmado por los señores EL-MANN ARAZI que deseaban suscribir con el INFONAVIT. para supuestamente tenerlo por reparado de los daños que se investigan en la carpeta de investigación FED/SEIDF/UNAI-CDMX/0001015/2019, presentando para tales efectos, copias de los cheques que suscribieron los señores EL-MANN ARAZI de sus respectivas cuentas de cheques aperturadas en BBVA-Bancomer, S.A. a ombre del INFONAVIT cada uno por la cantidad de mil millones de pesos, acuerdo en el cual en el antecedente



4, los señores EL-MANN ARAZI, manifestaron que el 28 de enero de 2020 tuvieron conocimiento de que: "... *la Unidad de Inteligencia Financiera de la Secretaría de Hacienda y Crédito Público, realizó un bloqueo de cuentas que se encuentran en el sistema financiero nacional de las cuales son titulares, cotitulares, firmantes y/o autorizados, fideicomitentes, representantes legales y/o apoderados; además de que se identifican como beneficiarios y/o fideicomisarios...*" los señores ANDRÉ y MAX de apellidos EL-MANN ARAZI, entre las cuales se encuentran cuentas bancarias del Fideicomiso F/1401 y de F1 Management, S.C.; así como también, que se le informara al INFONAVIT para que diera por reparado el daño y, que se le comunicara del acuerdo a la Unidad de Inteligencia Financiera para efecto de que las cuentas bloqueadas fueran liberadas y los cheques originales pudieran ser entregados.

b) El 6 de febrero de 2020, otro abogado de los señores MAX y ANDRÉ de apellidos EL-MANN ARAZÍ, se presentó ante el Ministerio Público de la Federación que conoce de la carpeta de investigación FED/SEIDF/UNAI-CDMX/0001015/2019, quien en nombre y representación de ellos, hizo entrega al señor OSCAR JAVIER PRIEGO BEREZALUCE, Coordinador General Jurídico del INFONAVIT los cheques originales exhibidos en copia el 31 de enero de ese año, quien a su vez le manifestó que una vez que fueran cobrados se daría por satisfecha la reparación del daño y procedería a firmar el acuerdo reparatorio propuesto, acontecimiento del cual afirma el denunciante, nunca ocurrió en razón de que incurriría en responsabilidad los funcionarios del INFONAVIT al no respetar el contrato de transacción y el finiquito.

**3.-** Menciona que el 10 de febrero de 2020 en la conferencia matutina del Presidente de la República y en la que estuvo presente el Fiscal General de la República, informó a la ciudadanía que la Fiscalía podía decir con satisfacción que estaba entregando al Instituto para Devolver al Pueblo lo Robado un cheque por dos mil millones de pesos y, que a partir de esa fecha la prensa nacional publicó una serie de notas periodísticas indicando que los recursos entregados por la Fiscalía General de la República al Instituto para Devolver al pueblo lo Robado, habían derivado de un acuerdo reparatorio celebrado con TELRA REALTY, S.A.P.I, de C.V., en beneficio del INFONAVIT, acontecimiento que refiere, es falso; que a partir de dicha situación el 11 de febrero de 2020, FUNO emitió un comunicado de prensa en el que deslindaba al Fideicomiso F/1401, como a sus directivos de lo manifestado por el Gobierno Federal en su conferencia matutina del 10 de febrero, así como por lo publicado en los diversos medios de comunicación en las fechas subsecuentes, esto, ocultado que dos miembros de su Consejo Técnico suscribieron el acuerdo reparatorio y giraron los cheques mencionados, así como la razón por la cual fueron bloqueadas las cuentas de dicho fideicomiso, la cual, es precisamente por el vínculo innegable que tiene la familia EL-MANN y por los puestos que sus miembros ocupan dentro del Comité Técnico, hechos que a pesar de ser relevantes, no fueron ni han sido revelados al publico inversionista, a la Comisión Nacional Bancaria y de Valores, ni a la Bolsa Mexicana de Valores, incluso, menciona que no se informó del bloqueo de cuentas, hecho relevante que impediría que FUNO pudiera cobrar las rentas de los inmuebles que forman parte del fideicomiso y repercutiría en sus índices de solvencia y liquidez.

**4.-** Que como consecuencia de que los señores ANDRÉ y MAX de apellidos EL-MANN ARAZI, no obtuvieron el consentimiento del INFONAVIT para suscribir el acuerdo reparatorio, comparecieron ante la Fiscalía General de la República para solicitar un criterio de oportunidad en su favor respecto del delito de Operaciones con Recursos de Procedencia Ilícita previsto y sancionado por el artículo 400 Bis del Código Penal Federal, transcribiendo parte de las entrevistas que el Ministerio Público de la Federación les tomó a los señores MAX, ANDRÉ y MOUSSA de apellidos EL-MANN ARAZI, de la siguiente manera:

Entrevista de fecha 20 de febrero de 2020, rendida por el señor MAX EL-MANN ARAZI: "... *manifestando que derivado del bloqueo de cuentas practicado por la Unidad de Inteligencia Financiera a mi persona, en carácter de investigado y después de haberme impuesto de las constancias que integran la carpeta de investigación de mérito, niego categóricamente haber cometido algún hecho ilícito, ya que siempre me he conducido conforme a los ordenamientos legales aplicables. Manifestando que el origen de los recursos que utilizo para todos y cada uno de mis negocios siempre ha sido totalmente lícitos, en ese tenor, niego tener responsabilidad alguna en los hechos que originaron la presente investigación, pero ya que se ha puesto en tela de juicio una operación celebrada entre la persona moral TELRA REALTY, S.A.P.I. de C.V., y el Instituto del Fondo Nacional de la Vivienda*





*para los Trabajadores, derivado de la cual fueron transferidos recursos al Fideicomiso 366/2017 de Banco Ve Por Más, S.A. Institución de Banca Múltiple, con la única finalidad de dar por terminada cualquier o futura en la que me pudiese (sic) presente controversia relacionar indebidamente, ya que no tengo ninguna participación en los hechos que se investigan y toda vez que en días pasados, de manera voluntaria hice entrega a la Fiscalía General de la República de un cheque de caja por la cantidad de $1´000,000.00.00 (UN MIL MILLONES DE PESOS 00/100 M.N.) solicito en mi beneficio la aplicación de un criterio de oportunidad que extinga la acción penal a mi favor"*

Entrevista de fecha 20 de febrero de 2020, rendida por el señor ANDRÉ EL-MANN ARAZI: "... Manifiesta que es su deseo declarar en relación a los hechos que se investigan en su contra en la presente carpeta de investigación, las cuales en su clasificación jurídica preliminar se siguen por el delito previsto en el artículo 217, fracción II, del Código Penal Federal vigente en la época de los hechos, manifestado el compareciente ANDRÉ EL-MANN ARAZI lo siguiente: Que derivado del bloqueo de cuentas practicado por la Unidad de Inteligencia Financiera a mi persona en carácter de investigado y después de haberme impuesto de las constancias que integran la presente carpeta de investigación, niego categóricamente haber cometido algún hecho ilícito, ya que siempre me he conducido conforme a los ordenamientos legales aplicables. De igual forma manifiesto que el origen de los recursos que utilizo para todos y cada uno de mis negocios siempre ha sido totalmente lícito y en ese sentido, niego tener responsabilidad en los hechos que originaron la presente carpeta de investigación; sin embargo, toda vez que se ha puesto en tela de juicio una operación celebrada entre la persona moral TELRA REALTY, S.A.P.I de C.V., y el Instituto del Fondo Nacional de la Vivienda para los Trabajadores, derivado de la cual fueron transferidos recursos al Fideicomiso 366/2017 del Banco Ve Por Más, S.A. Institución de Banca Múltiple, aclarando que dentro del Comité Técnico de dicho Fideicomiso se encontraba como miembro independiente además del suscrito mi hermano MOISÉS EL-MANN ARAZI, con la única finalidad de dar por terminada cualquier controversia presente o futura en la que se me pudiese relacionar indebidamente, ya que no tengo ninguna participación en los hechos que se investigan y toda vez que en días pasados, de manera voluntaria hice entrega a la Fiscalía General de la República de un cheque de caja por la cantidad de $1´000,000,000.00 (Un mil millones de pesos 00/100 M.N.) solicito en mi beneficio la aplicación de un criterio de oportunidad que extinga la acción penal a mi favor".

Entrevista de fecha 11 de marzo de 2020 rendida por el señor MOUSSA EL-MANN ARAZI Presidente del Comité Técnico del Fideicomiso Fibra Uno, *"...manifestando... que derivado del bloqueo de cuentas practicado por la Unidad de Inteligencia Financiera a mis hermanos ANDRÉ y MAX EL-MANN ARAZI, tengo conocimiento que miembros de mi familia y el de la voz tenemos el carácter de investigados en la presente carpeta de investigación y, después de haberme impuesto de las constancias que integran la carpeta de merito, categóricamente niego haber cometido algún hecho ilícito, ya que toda mi vida me he conducido dentro del marco de la ley. En ese sentido, el origen de los recursos que utilizo para todos mis negocios siempre ha sido totalmente lícito, por lo que niego tener responsabilidad alguna en los hechos que originaron la presente investigación. No obstante, al tener conocimiento que se ha cuestionado una operación celebrada entre la persona moral TELRA REALTY, S.A.P.I. de C.V. y el Instituto del Fondo Nacional de la Vivienda para los Trabajadores, derivado de la cual fueron transferidos recursos al Fideicomiso 366/2017 de Banco Ve Por Más, S.A. Institución de Banca Múltiple, con la única finalidad de mantener intacta mi buena reputación y evitar tener una controversia respecto de hechos que se investigan, solicito en mi beneficio la aplicación de un criterio de oportunidad que extinga la acción penal en mi favor pues, en días pasados, de manera voluntaria mis hermanos hicieron entrega a la Fiscalía General de la República de dos cheques de caja, cada uno por la cantidad de $1´000,000,000.00 ( Un Mil Millones de pesos 00/100 M.N.), con lo que en caso de haber causado algún daño, se ha reparado o garantizado el mismo por lo que hace a mi familia".*

Diligencias de las que dice el denunciante, se desprende que el señor MOUSSA EL-MANN ARAZI tenía pleno conocimiento del bloqueo de cuentas, sin embargo, este hecho no fue revelado en términos de la Ley del Mercado de Valores; y, que la Fiscalía General de la República mediante acuerdo de fecha 20 de mayo de 2020, consideró procedente otorgarle a los hermanos EL-MANN ARAZI los criterios de oportunidad, que le fueron solicitados en términos del artículo 256, fracción II del Código Nacional de Procedimientos Penales.



**HACIENDA**
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBL.

/CNBV/     COMIS... ...
            BAN... ... ...

Oficio No. 211-1/110-40973-JFSG/2021

**5.-** Continúa manifestando el denunciante señalando que: "...en términos de las Disposiciones de Carácter General emitidas por la Comisión Nacional Bancaria y de Valores, se considera como evento relevante en términos de lo dispuesto por el artículo 2°, fracción II, de la Ley del Mercado de Valores y, por ende, debe ser revelado en términos de lo dispuesto por los artículos 104, fracción V, 105 y 106 de dicho ordenamiento legal, <u>todos los procedimientos judiciales, administrativos o arbitrales de importancia para la emisora o para las personas morales que ésta controle o en las que tenga influencia significativas, así como en el sentido de las resoluciones que recaigan en dichos procedimientos, o bien emitidas en contra de accionistas cuando tengan cuando menos una influencia significativa, consejeros y directivos relevantes, así como cualquier situación que repercuta en la estructura financiera o en los resultados o en los índices de liquidez, solvencia, rentabilidad y utilización de activos, así como cualquier cambio de política contable, financiera o económica en relación al ejercicio inmediato anterior o aquel en que se presente tal cambio.</u>

No obstante lo anterior, refiere el denunciante, que no fueron hechos del conocimiento del público inversionista, ni de la Comisión Nacional Bancaria y de Valores, ni de la Bolsa Mexicana de Valores, los siguientes eventos relevantes.

❖ *La existencia de bloqueos de las cuentas bancarias del Fideicomiso F/1401.*
❖ *La existencia de bloqueos de las cuentas bancarias de la persona moral F1 MANAGEMENT, S.C. o la sociedad civil que la sustituyó conforme a lo previsto en el contrato de fideicomiso.*
❖ *Que el origen de dichos bloqueos deriva de la relación innegable que tiene FUNO con la familia EL-MANN ARAZI y con los puestos que éstos ocupan dentro del Comité Técnico del mismo fideicomiso.*
❖ *La entrega de los $2 ´000,000,000.00 (DOS MIL MILLONES DE PESOS 00/100 M.N.) por parte de los señores EL-MANN ARAZI.*
❖ *De la existencia de una carpeta de investigación seguida en contra de los hermanos EL-MANN ARAZI por su supuesta participación en la comisión del delito de Operaciones con Recursos de Procedencia Ilícita.*
❖ *El otorgamiento de los criterios de oportunidad antes mencionados por el delito de Operaciones con Recursos de Procedencia Ilícita.*

Por lo que considera que BANCO ACTINVER, S.A., Institución de Banca Múltiple, Grupo Financiero Actinver, como división fiduciaria del fideicomiso F/1401 (Fideicomiso Fibra Uno o FUNO), en su carácter de emisora, los miembros del Comité Técnico del mencionado fideicomiso y F1 Management, S.C., en su carácter de Administrador, ocultaron y omitieron revelar eventos relevantes.

**6.-** Refiere el denunciante que el 20 de julio de 2020, Goldman Sachs & Co., LLC y BANCO SANTANDER, S.A, Institución de Banca Múltiple, Grupo Financiero Santander publicaron un desplegado en el periódico Reforma en donde felicitan al Fideicomiso Fibra Uno, *Por la exitosa reapertura de sus bonos en el mercado internacional por un monto de: USD $650,000,000.00 (SEISCIENTOS CINCUENTA MILLONES DE DÓLARES 00/100 USD); reapertura que evidentemente se realizó sin haber revelado la información y eventos relevantes antes mencionados, siendo importante resaltar que dicha reapertura tuvo como fecha de colocación el quince de julio de dos mil veinte.*

Finalmente, el denunciante señala que a efecto de acreditar los antecedentes y hechos de su denuncia, solicita se tengan por desahogados diversos datos de prueba. (Fojas 4 a 22)

**7.-** En las constancias que integran la carpeta de investigación remitida, obran entre otros, los siguientes datos de prueba:

**A)** Escritura Pública número 115,636 de fecha 10 de enero de 2011, pasada ante la fe del Licenciado Gerardo Correa Echegaray, titular de la notaría pública número 89 del Distrito Federal, hoy Ciudad de México, relativa a la constitución del Contrato de Fideicomiso irrevocable identificado con el número F/1401 que celebraron **FIBRA UNO ADMINISTRACIÓN, S.A. de C.V.**, en su calidad de **Fideicomitente**, representada por su apoderado legal





**HACIENDA**
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

CNBV       COMISIÓN NACIONAL
BANCARIA Y DE VALORES

Oficio No. 211 1/110-40973-JFSG/2021

André El-Mann Arazi, **DEUTSHE BANK MÉXICO, S.A,** Institución de Banca Múltiple, División Fiduciaria, como **Fiduciaria,** representada por su delegado fiduciario Licenciado Andrés Sainz González y, **THE BANK OF NEW YORK MELLON, S.A.,** Institución de Banca Múltiple, como **Representante Común** de los tenedores de los CBFI´s, representada por su delegada fiduciaria Mónica Jiménez Labora Sarabia, instrumento en el cual se aprecia que en el capítulo de DECLARACIONES, consta que: (Fojas 34 a 130)

I.- Fibra Uno Administración S.A. de C.V., (a) Es una sociedad anónima de capital variable constituida de conformidad con la escritura pública número 114,506 de fecha 15 de julio de 2010, otorgada ante la fe del Licenciado Gerardo Correa Echegaray, notario público 89 del Distrito Federal.

II.- El Fiduciario por conducto de su delegado fiduciario (a) Es una institución de banca múltiple constituida mediante escritura pública número 57,861 de fecha 25 de febrero de 2000, (c) que su delegado fiduciario acredita su personalidad con la escritura pública número 30,884 de fecha 12 de marzo de 2010, otorgada ante la fe del notario público122 del Distrito Federal.

III.- El Representante Común por conducto de su delegado fiduciario (a) Es una sociedad anónima constituida a través de la escritura pública número 57,840 de fecha 6 de febrero de 2008, otorgada ante la fe del notario público 1 del Distrito Federal, (d) que comparece al presente fideicomiso a efecto de aceptar el cargo de representante común de los Tenedores de CBFI´s a ser emitidos por el Fiduciario del Fideicomiso, consistente de las obligaciones que impone la Ley del Mercado de Valores y las demás disposiciones emitidas por la Comisión Nacional Bancaria y de Valores.

Que, en diversas CLÁUSULAS, establecieron:

**PRIMERA. DEFINICIONES.**

*1.1.- Términos Definidos.- Los términos con mayúscula inicial utilizados en el presente fideicomiso y no se encuentren definidos de otra manera en el mismo, tendrán el significado que se le atribuye a dichos términos en la presente Cláusula Primera y serán utilizados en forma singular o plural según sea aplicable...*

*a.- ADMINISTRADOR significa F1 Management, S.C. o la sociedad civil que la sustituya de tiempo en tiempo conforme a lo previsto en el presente fideicomiso, en el entendido de que el fiduciario para efectos del presente Fideicomiso detentara y controlará como socio al menos el 99.995 de los derechos sociales y corporativos del Administrador, incluyendo la facultad de designar a su órgano de administración y cuyo objeto social será la administración, operación y mantenimiento del presente Fideicomiso y de sus propiedades, actividades que deberá llevar a cabo conforme a los términos del Contrato de Administración que celebre con el Fiduciario*

*i.- Bienes Inmuebles: significa conjuntamente los Bienes Inmuebles Aportados, los Bienes Inmuebles Adquiridos y cualquier otros bienes inmuebles que se destinen al arrendamiento y que adquiera el Fiduciario para el cumplimiento de los fines de este fideicomiso.*
*j.- Bienes Inmuebles Adquiridos: Significa los bienes inmuebles y Derechos de Arrendamiento, en su caso, que serán adquiridos por el Fiduciario, única y exclusivamente con tal carácter, con los Recursos Derivados de la primera Colocación, mismos que se relacionan en el anexo A del Presente Fideicomiso.*
*k.- Bienes Inmuebles Aportados: significa los bienes inmuebles que serán aportados con motivo de la primera Emisión por los Propietarios, conforme a lo previsto en la Cláusula Segunda del presente Fideicomiso, mismos que se relacionan en el anexo B del presente Fideicomiso.*
*l. BMV. Significa Bolsa Mexicana de Valores, S.A.B. de C.V.*
*m.- Certificados Bursátiles Fiduciarios Inmobiliarios o CBIs: significa los certificados bursátiles fiduciarios a ser emitidos por el Fiduciario de conformidad con el presente Fideicomiso, la L.M.V. la Circular Única de Emisoras y otras disposiciones legales aplicables, a ser inscritos en el RNV y listados en la MBV y, en su caso, otros mercados internacionales.*



Av.



o) *Circular Única de Emisoras: significa las Disposiciones de Carácter General Aplicables a las Emisoras de Valores y a otros participantes del Mercado de Valore publicadas en Diario Oficial de la Federación el 19 de marzo de 2003, según las mismas hayan sido reformadas de tiempo en tiempo.*

p.- *Circular I 2005: significa la Circular I 2005 emitida por el Banco de Mexico la cual contiene las Reglas a las que deberán sujetarse las Instituciones de Crédito, Casas de Bolsa, Instituciones de Seguros, Instituciones de Fianzas, Sociedades Financieras de Objeto Limitado y la Financiera Rural, en las operaciones de fideicomiso según la misma haya sido reformada de tiempo en tiempo.*

r.- *CNBV: significa la Comisión Nacional Bancaria y de Valores.*

g.- *Comité Técnico: tiene el significado que se le atribuye a dicho término en la Cláusula Novena, sección 9.1 del presente Fideicomiso.*

z.- *Contrato de Administración: significa el contrato que será celebrado por el Fiduciario y el Administrador conforme al documento que se agrega al presente Fideicomiso como Anexo "C" y, en su caso conforme a las modificaciones autorizadas por el Comité Técnico y acordadas por el Administrador, a efecto de que el Administrador proporcione los Servicios de Administración. Lo anterior, en el entendido que dicho contrato deberá estipular en plazo forzoso de por lo menos 5 años y renovaciones anuales automáticas.*

uu.- *Emisión: significa cada emisión de CBFI´s que realice el Fiduciario, de tiempo en tiempo en cada fecha de Emisión, de conformidad con lo establecido en el presente Fideicomiso y al amparo de lo previsto por los artículos 223 y 224 de la LISR.*

ww.- *Eventos Relevantes: tiene el significado atribuido a eventos relevantes de la LMV.*

zz.- **Familia El-Mann**: *significa todos y/o cualquiera de los señores Moussa El-Mann Arazi (quien también acostumbra usar el nombre de Moisés El-Mann Arazi), Max El-Mann Arazi, André El-Mann Arazi y Elias Sacal Micha.*

ccc.- *Familias Relevantes: significa todas y/o cualquiera de las personas integrantes de la Familia Attié, la Familia El-Mann, la Familia Guindi y la Familia Kababie, en la medida en que cada una de esas personas en lo individual o como familia, a través del Fideicomiso de Control detente el control de cuando menos el 3% de los CBFI's en circulación.*

fff.- *Fibras: significa los fideicomisos de inversión en bienes raíces de conformidad con lo dispuesto en los artículos 223 y 224 de la LISR.*

ggg.- *Fideicomisarios en Primer Lugar: significa los tenedores de los CBFI´s representado por el Representante Común.*

hhh.- *Fideicomisario en segundo Lugar: significa el Fideicomitente Adherente por lo que hace a los bienes aportados.*

mmm.- *Fideicomitente Adherente Relevante: significa todas y/o cualquiera de las personas integrantes de las Familias Relevantes, en la medida en que cada una de esas personas en lo individual o como familia a través del Fideicomiso de Control, detente el control de cuando menos el 3% de los CBFI´s en circulación en cualquier tiempo.*

nnn.- *Fiduciario Emisor: significa Deutshe Bank México, S.A., Institución de Banca Múltiple, División Fiduciaria, o sus sucesores, cesionarios o quien sea designado subsecuentemente como fiduciario de conformidad con el presente Fideicomiso.*

tttt.- *LMV: significa la Ley del Mercado de Valores.*

lllll.- *Representante común: significa The Bank of New York Mellon, S.A., Institución de Banca Múltiple, quien será el representante común de los Tenedores de los CBFI´s o quien sea nombrado subsecuentemente como representante común de los Tenedores.*

**TERCERA. PARTES DEL FIDEICOMISO.**

a. *FIDEICOMITENTE,*                    Fibra Uno Administración S.A. de C.V.

b- *FIDEICOMITENTES ADHERENTES*        Cada uno de los Fideicomitentes adherentes.

c. *FIDUCIARIO*                         Deutshe Bank México, S.A. Institución de Banca Múltiple, División Fiduciaria.



CNBV    COMISIÓN ~~~~~~
BANC~~~ ~~ ~~~~~~

Oficio No. 211-1/110-40973 JF-SG/2021

d. FIDEICOMITENTES EN PRIMER LUGAR

Los Tenedores de los CBFI´s representados por el Representante Común, respecto de los derechos que se les atribuyen conforme a los términos del presente Fideicomiso y los CBFI´s.

e. FIDEICOMISARIOS EN SEGUNDO LUGAR

Los Fideicomitentes Adherentes en cuanto a los Derechos de Reversión.

f. REPRESENTANTE COMÚN

The Bank of New York Mellon, S.A., Institución de Banca Múltiple

QUINTA. FINES DEL FIDEICOMISO.

(5.1) Fines del Fideicomiso. El fin principal del Fideicomiso consiste en la adquisición y/o construcción de Bienes Inmuebles para ser destinados a arrendamiento; la adquisición del derecho de percibir ingresos provenientes del arrendamiento de dichos bienes inmuebles...; El Fiduciario, para efecto de cumplir con el fin principal del Fideicomiso realizara, entre otras, las siguientes actividades: (i) adquirir, mantener y disponer de los bienes inmuebles y derechos que comprendan el Patrimonio del Fideicomiso: (ii) distribuir y administrar en las Cuentas, los recursos que se obtengan de la Emisión de los CBFI´s...

(o) Cobrar, recibir y Administrar Rentas y cualquier otra cantidad en relación con las inversiones Permitidas y cualquier otro bien o derecho que sea parte del Patrimonio del Fideicomiso.

(x) Preparar y proveer toda la información relacionada con el Fideicomiso que deba ser entregada de conformidad con éste Fideicomiso, la LMV, la circular Única de Emisoras, el Reglamento Interior de la BMV y la Legislación Aplicable, así como toda la información que sea requerida de conformidad con otras disposiciones de este Fideicomiso y otros contratos en los que el Fideicomiso sea parte.

NOVENA. COMITÉ TÉCNICO...

(9.1, I) De conformidad con lo establecido en el artículo 80 de la LIC, por medio del presente se establece un Comité Técnico (el Comité Técnico) que permanecerá en funciones durante la vigencia del Fideicomiso.

(9.1.2) El Comité Técnico estará integrado hasta por 21 miembros propietarios y sus respectivos suplentes, mismos que serán nombrados o ratificados en Asamblea de Tenedores de la siguiente forma:

Cualquier Tenedores que en lo individual o en conjunto tengan 10% de los CBFI´s en circulación tendrán el derecho de designar en Asamblea de Tenedores a un miembro propietario y su respectivo suplente en el Comité Técnico (siempre y cuando dichos tenedores no hubieren renunciado a su derecho a designar miembros del Comité Técnico)

Los Fideicomitentes Adherentes a través del Fideicomiso de Control, tendrán el derecho de designar al resto de los miembros propietarios del Comité Técnico y sus respectivos suplentes, de manera tal que tendrán el derecho de designar al menos a la mitad más uno del total de los miembros del total de los miembros del Comité Técnico en la propia Asamblea de Tenedores. Los Fideicomitentes Adherentes a su discreción podrán designar exclusivamente miembros del Comité Técnico que no sean considerados como Miembros Independientes.

Lo anterior en el entendido de que en ningún caso los Miembros Independientes podrán representar menos del 25% de los miembros propietarios del Comité Técnico y sus respectivos suplentes

FACULTADES DEL COMITÉ TÉCNICO.

(9.1.24) El Comité Técnico tendrá las siguientes facultades indelegables.



# HACIENDA
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

CNBV    COMISIÓN NACIONAL
BANCARIA

Oficio No. 211 1/110 40973 JI SG/2021

*(i) Acordar la emisión de los CBFI´s en cada fecha de Emisión y Colocación en el mercado de valores en México y/o el extranjero. Exclusivamente para efectos de la primera Emisión que se realice y los actos previos a la misma, el Fideicomitente designa en este acto un comité técnico integrado exclusivamente por los señores MOUSSA EL-MANN ARAZI (quien también acostumbra usar el nombre de Moisés El-Mann Arazi) y ANDRÉ EL-MANN ARAZI, quienes deberán acordar los términos y condiciones de la primera Emision de CBFI´s y su Colocación e instruir al Fiduciario todos los actos necesarios y/o convenientes el efecto, incluyendo la celebración de los Contratos de Adhesión.*

*(xvii) Instruir al Fiduciario la revelación de Eventos Relevantes de que tenga conocimiento, entre los cuales se incluyen todos aquellos acuerdos del mismo cuyo sentido sea contrario a la opinión emitida por el Comité de Prácticas o Comité de Auditoría o aquel o aquellos que ejerzan dichas funciones. Asimismo deberá instruir al Fiduciario solicitar al Administrador la revelación de Eventos Relevantes de que tenga conocimiento éste último.*

*(9.26) Comité Técnico a partir de la Emisión. El Comité Técnico a partir de la Emisión de CBFI´s y hasta que se realice una nueva designación conforme lo previsto por el presente Fideicomiso, estará integrado de la siguiente manera:*

| MIEMBRO PROPIETARIO | MIEMBRO SUPLENTE | MIEMBRO INDEPENDIENTE |
|---|---|---|
| 1.- Moisés El-Mann Arazi | Charles El-Mann Fasja | NO |
| 2.-André El-Mann Arazi | Charle El-Mann Jafif Arazi | NO |
| 3.- Isidoro Attié Laniado | Eduardo Cherem Harari | NO |
| 4.- Elías Sacal Micha | Alberto Sacal El-Mann | NO |
| 5.- Max El-Mann Arazi | Charles El-Mann Metta | NO |
| 6.- Abude Attié Dayán | Isaac Attié Laniado | NO |
| 7.- Amín Guindi Hemsani | Alberto Guindi Hemsani | NO |
| 8.- Jaime Kababie Sacal | Rafael Kababie Sacal | NO |
| 9.- Ignacio Trigueros | Por designar | SI |
| 10.- Henry Davis | Por designar | SI |
| 11.- Rubén Goldberg | Por designar | SI |
| 12.- Herminio Blanco | Por designar | SI |

## DÉCIMA. ADMINISTRADOR Y EMPRESAS DE SERVICIO.

*DESIGNACIÓN DEL ADMINISTRADOR*

*(10.1) En virtud de la celebración de este Fideicomiso, se designa a F1 Management, S.C., como Administrador quien deberá aceptar su cargo y convenir el Contrato de Administración el cumplir con las obligaciones a su cargo establecidas en el presente Fideicomiso...Posteriormente, el nombramiento del Administrador corresponderá a la Asamblea de Tenedores o en su caso al Comité Técnico conforme lo previsto por la Cláusula Novena, sección 9.1.24 inciso (vi).*

*(10.4) ... el fiduciario faculta y autoriza al Administrador llevar a cabo todos y cada uno de los actos que sean necesarios para el cumplimiento de los fines del Fideicomiso*

*OBLIGACIONES DEL ADMINISTRADOR.*

*(10.7) El Administrador tendrá a su cargo las siguientes obligaciones:*



**HACIENDA**
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

CNBV   COMISIÓN
BANCARIA

Oficio No 211 1/110 40973-JFSG/2021

*(i) Deberá proporcionar los Servicios de Administración, conforme a los términos y condiciones previstas en el presente Fideicomiso y en el Contrato de Administración...*

*(iv) Las demás que se establezcan en el Contrato de Administración, el presente Fideicomiso (incluyendo las previstas en la sección 9.1.24 de la Cláusula Novena), el título y demás convenios y contratos relativos. Obligaciones que a la letra dicen:*

*i) Acordar la emisión de los CBFI´s en cada fecha de Emisión y Colocación en el mercado de valores en México y/o el extranjero. Exclusivamente para efectos de la primera Emisión que se realice y los actos previos a la misma, el Fideicomitente designa en este acto un comité técnico integrado exclusivamente por los señores MOUSSA EL-MANN ARAZI (quien también acostumbra usar el nombre de Moisés El-Mann Arazi) y ANDRÉ EL-MANN ARAZI, quienes deberán acordar los términos y condiciones de la primera Emisión de CBFI s y su Colocación e instruir al Fiduciario todos los actos necesarios y/o convenientes el efecto, incluyendo la celebración de los Contratos de Adhesión.*

**B)** Copia del Contrato de Prestación de Servicios de Administración y Operación que celebraron F1 MANAGEMENT, S.C., representada por el señor ANDRÉ EL-MANN ARAZI (EL ADMINISTRADOR) y DEUTSHE BANK MÉXICO, S.A, Institución de Banca Múltiple, División Fiduciaria (EL FIDUCIARIO) en su caracter de Fiduciario en el Fideicomiso número F/1401, representada por su Delegado Fiduciario Alfonso Rojas Dingler, en el que se aprecia que, en su CLÁUSULA TERCERA de Servicios, acordaron: (Fojas 131 a 145)

*El Administrador prestará al Fiduciario los Servicios que sean necesarios y convenientes para realizar la más eficiente administración, operación y mantenimiento del patrimonio del Fideicomiso, de conformidad con lo establecido en el presente Contrato y el Fideicomiso, cuyo contenido y obligaciones a cargo del mismo que reconoce y acepta de manera expresa, incluyendo sin limitar los siguientes:*

*(c) Supervisar el cumplimiento oportuno de todas las obligaciones a cargo del Fideicomiso, particularmente todas aquellas relacionadas con los CBFI´s y derivada de la Ley del Mercado de Valores y disposiciones relacionadas.*

**C)** Copia Simple de la escritura pública 115, 743, otorgada ante la fe del licenciado Gerardo Correa Etchegaray, titular de la Notaría Pública 89 de la Ciudad de México, la cual contiene el Convenio Modificatorio al Contrato de Fideicomiso Irrevocable F/1401, de fecha 28 de enero de 2011, mediante el cual convinieron en modificar (i) la Declaración II del Fiduciario en la que se agrega una declaración bajo el inciso (p); (ii) el inciso f de la Cláusula Primera; (iii) el inciso j de la Cláusula Primera; (iv) el inciso e de la Cláusula Primera; (v) la Cláusula Novena, sección 9.1.2, párrafo tercero; (vi) la Cláusula Novena, sección 9.1.9, párrafo; y (vii) la Cláusula Décima, sección 10.11; para quedar redactadas en los términos siguientes: (Fojas 237 a 260)

*II.- Declara el Fiduciario...*
*Que mediante oficio número ASJ, de fecha 8 de diciembre de 2018, emitido por la Lic. María de Lourdes Ochoa Neira, Directora de Permisos Artículo 27 Constitucional, Departamento de Fideicomisos de la Secretaría de Relaciones Exteriores, dicha Secretaría confirmó que no se requiere de su autorización para constituir el Fideicomiso.*

*PRIMERA DEFINICIONES.*

*f.- Significa Fibra uno Administración S.A. de C.V., o la sociedad que la sustituya de tiempo en tiempo conforme lo previsto en el presente Fideicomiso y cuyo objeto social sea la prestación a este Fideicomiso de los Servicios de Asesoría en Planeación.*
*j.- Bienes Inmuebles Adquiridos: significa los bienes inmuebles y Derechos de Arrendamiento, en su caso, que serán adquiridos por el Fiduciario única y exclusivamente con tal carácter, con los Recursos Derivados de la*



**HACIENDA**
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

CNBV

COMISIÓN N°

Oficio No. 211-1/110-40973-JFSG/2021

*Emisión correspondientes a la primera Colocación mismos que se relacionan en el Anexo "A" del presente Fideicomiso.*

*NOVENA.- COMITÉ TÉCNICO, COMITÉ DE AUDITORÍA y COMITÉ DE PRÁCTICAS.*

*9.1.2.- ...Los Fideicomitentes Adherentes, a través del Fideicomiso de Control mientras los mismos mantengan la titularidad de por lo menos del 15% de los CBFI´s en circulación a través de dicho Fideicomiso de Control, tendrán el derecho de designar al resto de los miembros del Comité Técnico y sus respectivos suplentes, de manera tal que tendrán el derecho de designar al menos a la mitad más uno del total de los miembros del Comité Técnico en la propia Asamblea de Tenedores Los Fideicomitentes Adherentes, a su discreción, podrán designar exclusivamente miembros del Comité Técnico que no sean considerados como Miembros Independientes.*
*9.1.9.- El Presidente del Comité Técnico será aquella persona que designen los Fideicomitentes Adherentes a través del Fideicomiso de Control mientras los mismos la titularidad de por lo menos el 15% de los CBFI´s en circulación a través de dicho Fideicomiso de Control tendrá voto de calidad en caso de empate. En caso de que los Fideicomitentes Adherentes a través del Fideicomiso de Control dejen de mantener la titularidad del porcentaje de CBFI´s antes mencionado, el Presidente del Comité Técnico será asignado por el propio Comité Técnico, asimismo el Secretario del Comité Técnico, quien no podrá ser miembro del Comité Técnico, será asignado por el propio Comité Técnico.*

*DÉCIMA.- ADMINISTRADOR Y EMPRESAS DE SERVICIOS.*

*10.11.- A más tardar en la fecha de Emisión el fiduciario celebrará el Contrato de Asesoría en Planeación con Fibra Uno Administración, S.A. de C.V. conforme al documento que se agrega al presente Fideicomiso como Anexo D. Posteriormente el nombramiento del Asesor corresponderá al Comité Técnico.*

D) Copia Simple de la escritura pública 26, 658, otorgada ante la fe del licenciado Celso de Jesús Pola Castillo, titular de la Notaría Pública 244 de la Ciudad de México, la cual contiene el Segundo Convenio Modificatorio al Contrato de Fideicomiso Irrevocable F/1401, de fecha 17 de marzo de 2015, la cual se refiere al Segundo Convenio Modificatorio al Contrato de Fideicomiso F/141, que celebraron FIBRA UNO ADMINISTRACIÓN, S.A. de C.V. como Fideicomitente, representada por su apoderado general señor André El-Mann Arazi; DEUTCHE BANK MEXICO, S.A., Institución de Banca Múltiple, División Fiduciaria, como Fiduciaria, representado por su Delegado Fiduciario Licenciado Alonso Rojas Dingler; y, CIBANCO, S.A., como representante común de los tenedores de los CBFI´s, representada por sus Delegados Fiduciarios Licenciados Mónica Jiménez Labora Sarabia y Luis Felipe Mendoza Cárdenas, el cual únicamente contiene el anverso de las fojas que lo integran, (Fojas 276 a 315)

E) Aviso de fecha 2 de julio de 2018, mediante el cual Fibra Uno (BMV, FUNO 11) (FUNO o Fideicomiso Fibra Uno) anuncia que ha celebrado el convenio de sustitución fiduciaria con efectos a partir del 1 de julio de 2018, nombrando a Banco Actinver, S.A., Institución de Banca Múltiple, Grupo Financiero Actinver, como nuevo fiduciario del Fideicomiso irrevocable F/1401, en sustitución de Deutche Bank México, Institucion de Banca Múltiple. (Fojas 316 y 317)

F) Copia simple del comunicado de prensa de FUNO de fecha 11 de febrero de 2020, respecto a información publicada en algunos medios, aclarando que dicha situación no tiene ninguna relación con FUNO (Fibra Uno) (Foja 318)

G) Entrevistas que el Ministerio Público de la Federación les tomó a Max, André y Moussa, de apellidos El-Mann Arazi, (Fojas 319 a 330)



Oficio No. 211-1/110-40973-JF-SG/2021

H) Copia simple de la Determinación por Criterio de Oportunidad emitida dentro de la Carpeta de Investigación FED/SEIDF/UNAI-CDMX/0001015/2019, (Fojas 331 a 375)

De los hechos antes expuestos y de los documentos que obran en el expediente, así como de las evidencias probatorias concatenadas entre sí, y:

## C O N S I D E R A N D O

**PRIMERO.-** Esta Comisión Nacional Bancaria y de Valores, de conformidad con lo previsto en los artículos 1º, 37, fracción VII y antepenúltimo párrafo del Reglamento Interior de la misma, en relación con el 388 de la Ley del Mercado de Valores (LMV), es competente para emitir su Opinión con respecto a los hechos que se investigan en la carpeta de investigación **FED/SEIDF/UEIDFF-CDMX/0000879/2020**, en contra del BANCO ACTINVER, S.A., Institución de Banca Múltiple Grupo Financiero Actinver, en su carácter de Emisora y Fiduciaria y, de quien o quienes resulten responsables, por las razones *de iure y de facto* vertidas en el cuerpo del presente oficio.

**SEGUNDO.-** Derivado de la naturaleza de los hechos denunciados, es procedente el análisis del presupuesto hipotético que se encuentra contenido en el artículo 383, fracción II de la LMV, dispositivo legal que a la letra establece:

> *"**Artículo 383.-** Serán sancionadas con prisión de cinco a diez años, las personas que:*
>
> *I.- (...)*
>
> *II.- Oculte u omita revelar información o eventos relevantes, que en términos de este ordenamiento legal deban ser divulgados al público o a los accionistas o tenedores de valores, salvo que se haya diferido su divulgación en los términos de esta Ley. "*

Del análisis de dicho presupuesto típico legal, pueden apreciarse los siguientes elementos:

a) El ocultamiento u omisión en la revelación como conducta típica.
b) Que dicho ocultamiento u omisión sea respecto de información o eventos relevantes.
c) El que en términos del ordenamiento legal debieran ser divulgados.

De lo anterior, es evidente que para el análisis de la posible actualización de los elementos y por ende la conducta que comprende el presupuesto típico sancionado penalmente por la LMV, es necesario vincularlo con otros dispositivos normativos, donde se defina lo que debe ser considerado como un Evento o Información Relevante, así como en su caso en dónde se establezca la obligación de su revelación cuando se esté ante la presencia de los mismos, y en su caso, los supuestos de excepción o diferimiento para el cumplimiento de esa obligación. Para tales efectos debe citarse el contenido de los artículos 2º, 104 y 105 de la mencionada LMV, de conformidad con lo siguiente:

> *"**Artículo 2º.-** Para efectos de esta Ley se entenderá por:*
>
> *V. Eventos relevantes, a los actos, hechos o acontecimientos, de cualquier naturaleza que influyan o puedan influir en los precios de los valores inscritos en el Registro. La Comisión Nacional Bancaria y de Valores deberá establecer en Disposiciones Generales, de forma enunciativa mas no limitativa, aquellos actos,*





 

**HACIENDA**
SECRETARÍA  HACIENDA Y CRÉDITO PÚBLICO

*hechos o acontecimientos que se consideraran eventos relevantes, así como los criterios a seguir por parte de las emisoras para determinar cuándo un evento reviste tal carácter.*

*(...)*

***XII.*** *Información relevante, toda información de una emisora necesaria para conocer su situación real y actual en materia financiera, administrativa, operacional, económica y jurídica, y sus riesgos, así como, en su caso, la información del grupo empresarial al que pertenezca, independientemente de su posición en el grupo, siempre que influya o afecte dicha situación, y que sea necesaria para la toma de decisiones razonadas de inversión y estimación del precio de los valores emitidos por la propia emisora, conforme a usos y practicas de análisis del mercado de valores mexicano.*

*"**Artículo 104.-** Las emisoras con valores inscritos en el Registro estarán obligadas a presentar a la Comisión y a la bolsa en la que listen sus valores, información relevante para su difusión inmediata al público en general a través de esta última, mediante los reportes que a continuación se indican:*

*(...)*

*III. Reportes anuales que comprendan:*

*a) Los estados financieros anuales o sus equivalentes, en función de la naturaleza de la emisora, acompañados del dictamen de auditoría externa, así como de un informe que reúna los requisitos a que se refiere el artículo 86, fracciones II a IX, XI y XII, de esta Ley.*

*V. Reportes sobre eventos relevantes, ajustándose a lo establecido en el artículo 105 de esta Ley.*

*...*

*Tratándose de títulos fiduciarios, la información a que se refiere este artículo deberá proporcionarse respecto del patrimonio fideicomitido. Cuando el cumplimiento de las obligaciones en relación con los valores que se emitan al amparo del fideicomiso dependa total o parcialmente del fideicomitente, del administrador del patrimonio fideicomitido, del garante o avalista o de cualquier otro tercero, éstos deberán presentar la información que la Comisión determine mediante disposiciones de carácter general, en relación con los aspectos a que se refiere este artículo.*

*...*

*La Comisión expedirá las disposiciones de carácter general que establezcan los requisitos, términos y condiciones con que deberá cumplir la información a que se refiere este artículo."*

*"**Artículo 105.-** Las emisoras estarán obligadas a revelar a través de la bolsa en la que se listen sus valores, para su difusión inmediata al público y en los términos y condiciones que ésta establezca, los eventos relevantes en el momento en que tengan conocimiento de los mismos y únicamente podrán diferir su divulgación cuando se cumplan las condiciones siguientes:*

Av. Insurgentes



CNBV / COMISION ... BANCARIA ...

Oficio No. 211-1/110-40973 JFSG/2021

> I.- No se trate de actos, hechos o acontecimientos consumados.
> II.- No exista información en medios masivos de comunicación.
> III.- No existan movimientos inusitados en el precio o volumen de operación de los valores, considerándose por dichos movimientos a cualquier cambio en la oferta o demanda de los valores o en su precio, que no sea consistente con su comportamiento histórico y no pueda explicarse con la información disponible en el público.
>
> Al revelar los eventos relevantes en términos de lo establecido en el primer párrafo de este artículo, las emisoras estarán obligadas a difundir al público toda la información relevante en relación con los citados eventos"

**TERCERO.-** Esta Dirección General, le comunicó a la Dirección General de Emisoras que la Fiscalía General de la República requirió a la Comisión Nacional Bancaria y de Valores, emitir una opinión de delito en un asunto de supuesta ocultación de información relevante sobre una emisión de valores por el Banco Actinver en su carácter de fiduciario (Mediante convenio de sustitución fiduciaria, con efectos a partir del primero de julio de dos mil dieciocho, se nombró a BANCO ACTINVER, S.A., Institución de Banca Múltiple, Grupo Financiero Actinver como nuevo fiduciario del fideicomiso F/1401, en sustitución de DEUTCHE BANK MÉXICO, S.A., Institución de Banca Múltiple, División Fiduciaria -como fiduciaria del fideicomiso identificado con el número F/1401 (Fideicomiso Fibra Uno o FUNO), en su carácter de Emisora en términos de lo dispuesto por el artículo 2°, fracción V de la Ley del Mercado de Valores-); solicitándole para estar en posibilidades de dar cumplimiento a dicho requerimiento, informara si en el primer semestre de 2020 se publicó o hicieron saber a la CNBV, información relevante del Fideicomiso F/1401, consistente en:

- ❖ La existencia de bloqueos de las cuentas bancarias del Fideicomiso F/1401.
- ❖ La existencia de bloqueos de las cuentas bancarias de la administradora F1 MANAGEMENT, S.C.
- ❖ La entrega de los $2´000,000,000.00 (DOS MIL MILLONES DE PESOS 00/100 M.N.) por parte de los hermanos MAX, ANDRÉ y MOUSSA EL-MANN ARAZI (miembros del Comité Técnico) como criterio de oportunidad para finiquitar el expediente penal.
- ❖ De la existencia de una carpeta de investigación FED/SEIDF/UNAI-CDMX/0001015/2019, seguida en contra de los hermanos EL-MANN ARAZI por su supuesta participación en la comisión del delito de Operaciones con Recursos de Procedencia Ilícita.
- ❖ El otorgamiento de los criterios de oportunidad antes mencionados por el delito de Operaciones con Recursos de Procedencia Ilícita.

En respuesta a lo anterior, la Dirección General de Emisoras de esta Comisión a través de su titular, nos comunicó:

I. Con fecha 31 de enero de 2020, se publicó a través del medio masivo de comunicación denominado "El Financiero", entre otra información, lo siguiente: "...La Unidad de Inteligencia Financiera solicitó a la Comisión Nacional Bancaria y de Valores, de Adalberto Palma, que dé vista a almacenes de depósito, casas de bolsa, casas de cambio, instituciones de banca de desarrollo, de banca múltiple, sociedades cooperativas de ahorro y préstamo y sociedades de inversión, toda la información que contengan de André y Max El Mann Arazi. El requerimiento de la instancia que capitanea Santiago Nieto es el número 110/F/B/646/2020. Se trata de los desarrolladores inmobiliarios..." (en adelante la "Noticia del 31 de Enero"), misma que constituye información pública que puede ser consultada en la página de internet (red pública global) de dicho medio, https://www.elfinanciero.com.mx/opinion/dario-celis/tren-transistmico-en-ruta-de-colision



**HACIENDA**
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

CNBV
COMISIÓN NACIONAL
BANCARIA Y DE VALORES

Oficio No. 211-1/110 40973-JFSG/2021

II.   Con fecha 11 de febrero de 2020, se publicó a través del medio masivo de comunicación denominado "El Financiero", entre otra información, lo siguiente: "El gobierno de la 4T asestó un primer golpe seco, al índice de flotación, en el sector inmobiliario. El misil lo dirigió a los empresarios André y Max El-Mann Arazi y Rafael y Teófilo Zaga Tawil. Se trata de los accionistas de Telra Realty, una empresa que obtuvo en 2014 un contrato exclusivo del Infonavit para desarrollar un programa de Movilidad Hipotecaria, mejor conocido como Cambiavit. [...] Semanas atrás, y todavía más puntual ayer, le informe que la Unidad de Inteligencia Financiera (UIF), de Santiago Nieto, había solicitado información de los principales accionistas del Fibra Uno. [...] Los más rápidos en reaccionar fueron los El-Mann, que ofrecieron a la FGR y a la UIF un acuerdo reparatorio a fin de evitar un daño mayor que afectara al resto de sus negocios. El principal de ellos, precisamente, Fibra Uno. fideicomiso que posee más de 560 propiedades que representan 8.7 millones de metros cuadrados que registran un 94.3 por ciento de ocupación. [...]" (en adelante la "Noticia del 11 de Febrero" y en conjunto con la Noticia del 31 de Enero, las "Noticias"), misma que constituye información pública que puede ser consultada en la referida página de internet de dicho medio, https://www.elfinanciero.com.mx/opinion/dario-celis/los-el-mann-reparan-2-mil-mdp-a-la-4t...

III.   Derivado de la información contenida en las Noticias, a través de **evento relevante enviado el día 11 de febrero de 2020 a las 12:41 horas por la Emisora** (en adelante el "Evento Relevante"), a través del Sistema Electrónico de Envío y Difusión de Información de la Bolsa Mexicana de Valores, S.A.B. de C.V. (en adelante la "Bolsa") denominado Emisnet (en adelante "Emisnet"), mismo que constituye información pública que puede ser consultada en la página de internet de la Bolsa www.bmv.com.mx, hizo del conocimiento al público inversionista lo siguiente: "Con respecto a la información publicada en algunos medios el día de hoy, es importante aclarar que la situación no tiene ninguna relación con FUNO ® (Fibra UNO) y con sus operaciones. FUNO ® manifiesta que no tiene, ni ha tenido, vinculación alguna con proyectos de vivienda social o relacionadas con el Infonavit. FUNO ® y sus directivos están comprometidos con México y trabajan con las autoridades de los tres niveles de gobierno para impulsar el desarrollo social y económico de nuestro país. FUNO ® se conduce con responsabilidad, ética y respeto absoluto al marco de la ley.".

IV.   Asimismo, mediante el Reporte Anual 2019 enviado el día 30 de abril de 2020 a las 19:03 horas (en adelante el "Reporte Anual 2019") a través del Emisnet de la Bolsa, mismo que constituye información pública que puede ser consultada en la página de internet de la Bolsa www.bmv.com.mx, la Emisora declaró lo siguiente (énfasis añadido): "**Hasta donde razonablemente tiene conocimiento el Administrador F1 Management y nosotros, no existen juicios, procedimientos administrativos o arbitrales relevantes que puedan tener un impacto significativo para nuestro Administrador F1 Management, el Fideicomitente o nuestros Tenedores de CBs.** Tampoco se tiene conocimiento de la alta probabilidad de que en un futuro exista uno o varios juicios o procedimientos administrativos de los referidos anteriormente. [...]"

Asimismo, se hace de su conocimiento que FUNO, como emisora de valores, tiene la obligación de revelar toda la información relevante de la que tenga conocimiento, en términos de los artículos 2, fracciones VII y XII, 104 y 105 de la Ley del Mercado de Valores, en relación con el Título Quinto de las Disposiciones de carácter general aplicables a las emisoras de valores y otros participantes del mercado de valores, particularmente con lo previsto en el artículo 50, fracción V, inciso b).

Como se desprende del informe transcrito, no se publicó mediante Emisnet ningún evento relevante en la época de los hechos denunciados relacionado con: i) La entrega de los $2´000,000,000.00 (DOS MIL MILLONES DE PESOS 00/100 M.N.) por parte de los hermanos MAX, ANDRÉ y MOUSSA EL-MANN ARAZI (miembros del Comité Técnico) como criterio de oportunidad para finiquitar el expediente penal; ii) De la existencia de una carpeta de investigación FED/SEIDF/UNAI-CDMX/0001015/2019, seguida en contra de los hermanos EL-MANN



CNBV

ARAZI por su supuesta participación en la comisión del delito de Operaciones con Recursos de Procedencia Ilícita; iii) El otorgamiento de los criterios de oportunidad antes mencionados por el delito de Operaciones con Recursos de Procedencia Ilícita.

**CUARTO.-** Por lo que corresponde al tipo en estudio, en primer instancia debe señalarse que éste no exige una calidad específica respecto al sujeto activo al prever que puede ser cualquier persona, sin embargo, por la naturaleza de la conducta tipificada, es evidente que sanciona a quien teniendo la obligación de llevar a cabo la difusión de los actos, hechos o acontecimientos de cualquier naturaleza que influyan o puedan influir en los precios de los valores inscritos en el Registro, **omitan** realizar su deber de divulgación, como conductas de acción o de omisión, cuyo examen de adecuación y responsabilidad se realizará más adelante, una vez determinada la actualización del resto de elementos descriptivos y normativos previstos en el antijurídico establecido en el **artículo 383, fracción II de la Ley del Mercado de Valores**.

Al respecto, cabe mencionar que las acciones previstas como conductas, corresponden al ocultamiento u omisión, que los sujetos obligados a la revelación, realizan sobre la información o eventos que pueden influir, incluso de manera relativa, sobre los valores inscritos en el Registro Nacional de Valores, en este caso, los Certificados Bursátiles Fiduciarios Inmobiliarios (CBFI's), cuya emisión integra la denominada FIBRA UNO o FUNO.

De esta forma, previo al estudio y determinación de la posible comisión de las conductas de acción o de omisión respectivas, como punto de partida, debe determinarse si los hechos denunciados revestían las características conceptuales de un Evento o Información Relevante, así como si una vez reunidas, debían, en términos de la LMV y la normativa emanada de ella, ser divulgados al público, a los accionistas o a los tenedores de valores

Desde esa premisa, el denunciante señaló dentro de su narrativa, actos, hechos o acontecimientos que consideraba actualizaron Eventos Relevantes, que debiendo ser revelados, no lo fueron, tales como:

❖ La entrega de los $2'000,000,000.00 (DOS MIL MILLONES DE PESOS 00/100 M.N.) por parte de los señores EL-MANN ARAZI.

❖ De la existencia de una carpeta de investigación seguida en contra de los hermanos EL-MANN ARAZI por su supuesta participación en la comisión del delito de Operaciones con Recursos de Procedencia Ilícita.

❖ El otorgamiento de los criterios de oportunidad antes mencionados por el delito de Operaciones con Recursos de Procedencia Ilícita.

Al respecto, como se establece en el invocado artículo 2°, fracción VII, contiene los elementos de lo que debe ser definido o considerado como un <u>Evento Relevante</u>, indicando adicionalmente, que la Comisión Nacional Bancaria y de Valores deberá establecer en Disposiciones Generales, de forma enunciativa mas no limitativa, aquellos actos, hechos o acontecimientos que se consideraran eventos relevantes, así como los criterios a seguir por parte de las emisoras para determinar cuándo un evento reviste tal carácter.

En atención a lo prescrito, el artículo 50 de las *Disposiciones de carácter general aplicables a las emisoras de valores y a otros participantes del mercado de valores* (CUE), perteneciente al Título Quinto "Revelación de Eventos Relevantes", determina una serie de supuestos enunciativos, que pueden configurar eventos con la característica de relevancia.

Al tomar en cuenta las características de los hechos denunciados, así como de las manifestaciones expresas hechas por el denunciante, se considera que los mismos pudieran caer bajo el estudio de los supuestos del artículo 50 de la CUE, siguientes:



**HACIENDA**

CNBV    COMIS... ...
BANCA... ...

*"**Artículo 50.**- Las emisoras de valores inscritos en el Registro deberán transmitir sus eventos relevantes a la bolsa a través del SEDI, en la forma y términos que se establece en el presente Título, y posteriormente en la misma fecha a la Comisión a través del STIV-2.*

*De forma enunciativa más no limitativa y siempre que influyan o puedan influir en los precios de los valores inscritos en el Registro, se considerarán eventos relevantes los siguientes:*

*I. ...*

*IV. Respecto de la situación financiera de la emisora:*

*...*

*h) Cualquier situación que repercuta en la estructura financiera o en los resultados o en los índices de liquidez, solvencia, rentabilidad y utilización de activos, así como cualquier cambio de política contable, financiera o económica en relación al ejercicio inmediato anterior a aquél en que se presente tal cambio.*

*...*

*V. En relación con litigios y modificaciones regulatorias:*

*....*

*b) Los **procedimientos judiciales, administrativos** o arbitrales **de importancia para la emisora o para las personas morales que ésta controle o en las que tenga una influencia significativa,** así como el sentido de las resoluciones que recaigan en dichos procedimientos, o bien, emitidas en contra de accionistas que tengan cuando menos una influencia significativa, consejeros y directivos relevantes.*

*X. Los demás actos, hechos o acontecimientos que tengan la capacidad de influir en el precio de los valores de las emisoras.*

*Tratándose de títulos fiduciarios o de valores cuyo cumplimiento dependa total o parcialmente del fideicomitente, administrador del patrimonio del fideicomiso, del garante o avalista o de cualquier otro tercero, la información a que se refiere este artículo deberá revelarse, según corresponda, en relación con dichos sujetos. Asimismo, para el caso de certificados bursátiles fiduciarios de desarrollo inmobiliarios, de inversión en energía e infraestructura o de proyectos de inversión, la información de este artículo deberá revelarse y enviarse además, en relación con las sociedades respecto de las cuales el fideicomiso invierta o adquiera títulos representativos de su capital social, considerando cada una de las inversiones o desinversiones que, en su caso, se efectúen.*

*Las emisoras, a efecto de determinar si un evento reviste el carácter de relevante, deberán considerar si el acto, hecho o acontecimiento de que se trate representa, en su caso, cuando menos el 5% de los activos, pasivos o capital total consolidado, o bien, el 3% de las ventas totales consolidadas del ejercicio anterior de la emisora. Cuando dicha operación represente menos de los porcentajes señalados o no sea cuantificable de manera porcentual, la emisora deberá evaluar si el acto, hecho o acontecimiento de que se trate constituye o puede constituir información relevante en términos de la Ley del Mercado de Valores."*

En la especie, al tratarse de una emisión de Certificados Bursátiles Fiduciarios Inmobiliarios (CBFI's), conocidos como FIBRA, la estructura legal establecida para tales efectos se realizó a través de un Fideicomiso, cuya



**HACIENDA**
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

(CNBV)

COMISIÓN N...
BANCAR... ...

Oficio No. 211-1/11● 40973-JF-SG/2021

institución fiduciaria es una Institución de Crédito, en este caso Banco Actinver, S.A., Institución de Banca Múltiple, Grupo Financiero Actinver, por lo que inicialmente es dicha Institución quien mediante la utilización de un Vehículo (Fideicomiso) lleva a cabo la emisión de los certificados, atendiendo a las características que respecto a dichos Valores, regulan los artículos 63 y 63 Bis 1, fracción II, de la LMV, por lo que en primera instancia, atendiendo al contenido de la mencionada fracción VII del artículo 2°, de la LMV, es quien ostenta el carácter de Emisora.

Lo anterior, sin perjuicio de la responsabilidad y obligaciones que la propia LMV, las disposiciones de carácter general que de ella emanan, y los propios documentos de la emisión (Contrato de Fideicomiso, Contrato de Administración, contratos diversos, prospecto, folletos, reportes, constitutivas, etc.) prevén para los demás sujetos u órganos colegiados que participan en la estructura del vehículo emisor, así como del cumplimiento de obligaciones, dado que, entre otros, el Fideicomitente, el Fiduciario, el Comité Técnico del fideicomiso, el Administrador, y algunos otros terceros tienen a su cargo, diversas obligaciones, cargas o responsabilidades, respecto al patrimonio fideicomitido y el cumplimiento de los fines, para los cuales se realizó la emisión de los Certificados, y se constituyó el fideicomiso.

En ese sentido, a efecto de determinar si los hechos denunciados se adecuan a los supuestos enunciados por el artículo 2°, fracción VII de la LMV, o bien, el artículo 50 de la CUE, puede atenderse de forma concatenada con las características descriptivas de lo que se consideraría como un Evento Relevante.

**QUINTO.-** En primera instancia, entrando al análisis de los hechos respecto a los específicos relacionados con los bloqueos de las cuentas en los términos narrados en la denuncia, considerando que de acuerdo con las constancias del expediente analizado, no se ubicó constancia fehaciente de ese evento, consecuentemente, no es posible validar dichos aseguramientos. Por otra parte, por lo que respecta a lo que el denunciante indicó como eventos relevantes que no fueron revelados, señalando en su denuncia:

❖ *La entrega de los $2'000,000,000.00 (DOS MIL MILLONES DE PESOS 00/100 M.N.) por parte de los señores EL-MANN ARAZI.*
❖ *De la existencia de una carpeta de investigación seguida en contra de los hermanos EL-MANN ARAZI por su supuesta participación en la comisión del delito de Operaciones con Recursos de Procedencia Ilícita.*
❖ *El otorgamiento de los criterios de oportunidad antes mencionados por el delito de Operaciones con Recursos de Procedencia Ilícita.*

Ello, derivaría en la posible actualización de lo previsto en la fracción V, inciso b) del artículo 50 de la CUE, la cual como ya fue señalado, indica que respecto a los litigios debe considerarse como evento relevante los procedimientos judiciales, administrativos o arbitrales de importancia para la emisora o para las personas morales que ésta controle o en las que tenga una influencia significativa, actos jurídicos emitidos en contra de accionistas que tengan cuando menos una influencia significativa, consejeros y directivos relevantes.

Para determinar la actualización de los elementos señalados en dicho inciso, debe atenderse a varios supuestos, siendo el primero de ellos la existencia de un procedimiento judicial o administrativo, tal como puede apreciarse del contenido de las entrevistas realizadas a Max, André y Moussa El-Mann Arazi, así como de la consulta y autorización para el otorgamiento de un Criterio de Oportunidad en favor de las personas indicadas, en términos del contenido de la Carpeta de Investigación FED/SEIDF/UNAI-CDMX/0001015/2019, en que se les otorgaba el carácter de imputados, respecto al delito previsto en el artículo 400 Bis del Código Penal Federal, de relevancia para el sistema financiero.

Con la certeza en la existencia del procedimiento ministerial mencionado, se confirma la importancia que éste genera por la influencia significativa que deviene de sus facultades de decisión o dirección y, respecto de las cuales, cualquier impacto o efecto en su situación jurídica, económica, financiera, e incluso personal o de cualquier otra índole, puede tener una consecuencia o importancia en la emisión y su información, destacando que en la estructura de la FIBRA, los sujetos señalados como imputados en los procedimientos de investigación

Av. Insurgentes Sur No. 1971. Col. Guadalupe Inn, C. ...
Tel. (56) 1454 6000   www.gob.mx/cnbv

(EXILU)



**HACIENDA**
SECRETARIA DE HACIENDA Y CRÉDITO PÚBLICO

CNBV    COMISIÓN NACIONAL BANCARIA Y DE VALORES

Oficio No. 211-1/110-40973-JFSG/2021

penal (Max, André y Moussa El-Mann Arazi, quien al parecer también se ostenta como Moisés El-Mann Arazi), así como en la existencia de los Criterios de Oportunidad que fueron presentados en la denuncia, han participado de diversas formas en el Contrato de Fideicomiso y sus respectivos Convenios modificatorios formando parte del Comité Técnico de dicho instrumento de emisión de los Valores inscritos en el Registro (en este caso CBFI´s).

Al respecto, cabe mencionar que los accionistas e integrantes de la totalidad del Consejo de Administración de Fibra Uno Administración, S.A. de C.V., según puede identificarse de la escritura de constitución identificada con el número 114,506, otorgada ante la fe del licenciado Gerardo Correa Etchegaray, Notario Público 89 de la Ciudad de México, que consta como información pública de la emisión, son Max y André El-Mann Arazi, señalando como apoderado general con facultades amplias a Moussa El-Mann Arazi y, determinando al momento de la constitución del Fideicomiso, continuar con un papel relevante en la estructura del vehículo emisor, a través de su participación directa como Miembros del Comité Técnico del Fideicomiso, del cual incluso ocupan el cargo de Miembros Titulares junto con Moussa El-Mann Arazi, siendo Presidente y Miembro Director del mismo, manteniéndose con dicho carácter durante la realización de los hechos materia de la denuncia.

Al respecto, debe señalarse que de conformidad con el artículo 80 de la Ley de Instituciones de Crédito, así como en el artículo 64 Bis 1 de la LMV, para el caso de este tipo de Fideicomisos Emisores, prevé la creación de un Comité Técnico, cuyas facultades deben ser establecidas en su documento constitutivo.

Por lo que corresponde al Contrato de Fideicomiso F/1401 (F/mil cuatrocientos uno), la Cláusula Novena determina entre otros, la creación, conformación inicial y facultades del aludido Comité, de cuyo contenido puede determinarse la total trascendencia de su actuar y decisión en el comportamiento y cumplimiento de los fines del Fideicomiso; órgano colegiado en el que como se mencionó Moussa El-Mann Arazi ocupa el cargo de Presidente, André El-Mann Arazi el de Director y Max El-Mann Arazi y Elías Sacal Micha son de igual forma Miembros Titulares, siendo reconocidos en su conjunto como Familia El-Mann y Familia Relevante, según dichos términos se definen en el Contrato de Fideicomiso, ante la cual es claro que actúan como un Grupo de Personas, de acuerdo a lo previsto por el artículo 2º, fracción IX, de la LMV.

La responsabilidad de los presuntos investigados se corrobora en términos de lo previsto en la Cláusula 9.1.14 del Contrato de Fideicomiso, la cual indica que los miembros del Comité Técnico deberán cumplir con los deberes de diligencia, lealtad y responsabilidad establecidos para los miembros de los Consejos de Administración de las sociedades anónimas bursátiles señalados en los artículos del 30 al 40 de la LMV.

De esta forma, el denunciante indica que Max, André y Moisés El-Mann Arazi cuentan, desde la celebración del contrato de fideicomiso que dio origen a la emisión de los CBFI´s (FIBRA) F/1401, con el carácter de miembros de su Comité Técnico, situación que, de la denuncia, las constancias ministeriales y la información pública que existe en la BMV, no había sido modificado a la fecha de los actos, hechos o acontecimientos objeto de la denuncia.

Por otra parte, es clara la relevancia que la participación y rol que André, Max, y Moisés El-Mann Arazi representan para la Emisora, en virtud de que el Contrato de Fideicomiso F/1401 establece la participación de *Fideicomitentes Adherentes* definiéndolos como cualquier **Propietario** que aporte Bienes Inmuebles al patrimonio del fideicomiso, por cuya aportación adquirirá para efectos del fideicomiso los derechos y obligaciones establecidos en el mismo y en el Convenio de Adhesión respectivo, y de cuyo porcentaje de tenencia dependerá el atributo de *Familia Relevante*, tal como se define en el propio Contrato de Fideicomiso F/1401. Al respecto, en dicho Contrato de Fideicomiso se establece que los *Propietarios*, en su carácter de *Fideicomitentes Adherentes*, aportarán a otro fideicomiso, que será identificado como el *Fideicomiso de Control*, la titularidad de los CBFI´s que reciban por la aportación de Bienes Inmuebles, pudiendo, en caso de detentar cuando menos el 3% de los CBFI´s en circulación, tener también el carácter de *Fideicomitente Adherente Relevante*, con la influencia que estos pueden representar, en conjunto con los que ostenten el carácter de *Fideicomitente Adherente*, para el ejercicio de derechos de reversión sobre inmuebles aportados,

Av. Insurgentes Sur No. 1971, Col. Guadalupe Inn, CP 01020, Álvaro Obregón, CDMX.
Tel: (55) 1454 6000  www.gob.mx/cnbv



Oficio No. 211-1/110-40973 JFSG/2021

de derechos de exclusividad o preferencia respecto de la adquisición o enajenación de inmuebles por y para el Fideicomiso, de designación de miembros del Comité Técnico, según sea aplicable a cada uno, así como respecto a los procedimientos relacionados con los Bienes Inmuebles del Fideicomiso F/1401.

En ese sentido, de la Relación de Bienes Inmuebles Aportados que forma parte del Contrato de Fideicomiso F/1401, se identifica una importante participación de André, Max, y Moisés El-Mann Arazi, como Propietarios, de cuya definición contemplada en el mismo fideicomiso puede apreciarse cuentan con el carácter de Fideicomitente Adherente.

Adicionalmente, de conformidad con el propio Contrato de Fideicomiso F/1401, se establecía la obligación de llevar a cabo la contratación de un Asesor, mediante la celebración de un Contrato de Asesoría en Planeación cuyos Servicios consistirían en otorgar al Fideicomiso Emisor toda la asesoría especializada requerida por él mismo, en relación con la planeación, estrategia y ejecución de las <u>decisiones trascendentales</u> del Fideicomiso, particularmente las relativas a la ubicación, selección, revisión, adquisición, desarrollo, construcción, acondicionamiento, operación, mantenimiento y venta de Bienes Inmuebles y a la planeación financiera y estratégica del Patrimonio del Fideicomiso, así como la relación con inversionistas, mismo que fue celebrado con Fibra Uno Administración, S.A. de C.V.; de forma adicional a contar con el carácter de Asesor, es el Fideicomitente en el Contrato de Fideicomiso F/1401, con la participación en el capital social, en los órganos de administración y como apoderados generales con facultades amplias de André, Max, y Moussa El-Mann Arazi.

De todo lo antes relacionado, puede concluirse que André, Max, y Moussa El-Mann Arazi, tienen una alta importancia, entre otras, en la estructura, funcionamiento y decisiones de la emisión de los CBFI´s emitidos por Banco Actinver, S.A., Institución de Banca Múltiple, Grupo Financiero Actinver.

**SEXTO.-** Por lo que respecta a la existencia de un procedimiento seguido ante el Ministerio Público en forma de Carpeta de Investigación; la reparación del daño respectiva; la autorización del Criterio de Oportunidad en favor de André, Max, y Moussa El-Mann Arazi, pudiera determinarse la actualización del supuesto previsto por el inciso b) de la fracción V del artículo 50, relacionado con: "*V. En relación con litigios y modificaciones regulatorias:....b) Los procedimientos judiciales, administrativos o arbitrales de importancia para la emisora o para las personas morales que ésta controle o en las que tenga una influencia significativa, así como el sentido de las resoluciones que recaigan en dichos procedimientos, o bien, emitidas en contra de accionistas que tengan cuando menos una influencia significativa, consejeros y directivos relevantes*", influencia significativa que se destaca con el Reporte Anual presentado en 2020, en el que existe un apartado denominado "*Administrador del Patrimonio del Fideicomiso*", donde se les reconoce el carácter de Administradores a los miembros del Comité Técnico y de Directivos Relevantes, entre otros, a André El Mann Arazi, el cual incluso es de los responsables de su integración, según la firma existente en las Declaraciones bajo protesta de decir verdad que están adjuntos al Reporte Anual y que se presentan de conformidad con lo previsto por el artículo 33, fracción I, inciso b), numeral 1.4) de la CUE.

De lo señalado en este Considerando, queda evidenciada la importancia que André, Max, y Moussa El-Mann Arazi tienen tanto para la Emisora como para las personas morales que ésta controla, tal como lo es FI Management, S.C., en su carácter de Administrador, lo anterior dado sus atributos y participación en los diversos órganos, cargos, funciones y empleos en la estructura legal del Emisor, su Comité Técnico (*en donde desempeñan el carácter de Presidente, y Miembros Propietarios No Independientes*); el Administrador (*como Socio, Director General, integrante del Consejo Directivo y Apoderados*); el Asesor (*en donde de igual forma son accionistas, integrantes del Consejo de Administración y apoderados, respectivamente*); sin olvidar, su participación como integrantes del Comité Técnico del Fideicomiso de Control y Fideicomitente Adherente.

De lo anteriormente expuesto se desprende la relevancia de la información relacionada con la investigación ministerial existente en contra de los activos en mención, cuya falta de divulgación como evento relevante indudablemente podía influir en el público inversionista, al violentarse uno de los principios rectores en la legislación bursátil que es el de revelación de información, como se señala en la definición que la LMV tiene respecto a información relevante; en consecuencia, puede determinarse que los hechos relacionados con la existencia de un procedimiento seguido ante el Ministerio Público en forma de Carpeta de Investigación; la



**HACIENDA**
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

CNBV

COMISIÓN NACIONAL BANCARIA Y DE VALORES

Oficio No. 211-1/110-40973-JFSG/2021

reparación del daño respectiva; la autorización del Criterio de Oportunidad en favor de André, Max, y Moussa El-Mann Arazi, tiene relevancia en relación con los puestos que ocupan en la estructura del Fideicomiso F/1401, según se desprende de las constancias que integran la Carpeta de Investigación remitida para análisis de esta Comisión, con independencia de si se encontraban o no vinculadas directamente a la operación del Fideicomiso, en nuestra opinión se actualizan como un Evento Relevante que debía ser revelado, en términos de los artículos 50, fracción V, inciso b) de la CUE, en relación con el artículo 2, fracción VII, 104, fracción V y 105 primer párrafo, de la Ley del Mercado de Valores.

**SÉPTIMO.-** De esta forma, de acuerdo a lo señalado en los Considerandos anteriores, se estaría en presencia de Eventos Relevantes, que debían ser revelados, sin que dicha revelación hubiera sido realizada, restando determinar si los actos, hechos o acontecimientos denunciados podían ser susceptibles de diferimiento en su revelación, atendiendo a lo previsto en las fracciones I a III del mencionado artículo 105 de la LMV, el cual indica:

> *"Artículo 105.- Las emisoras estarán obligadas a revelar a través de la bolsa en la que se listen sus valores, para su difusión inmediata al público y en los términos y condiciones que ésta establezca, los eventos relevantes en el momento en que tengan conocimiento de los mismos y únicamente podrán diferir su divulgación cuando se cumplan las condiciones siguientes:*
>
> *I.- No se trate de actos, hechos o acontecimientos consumados.*
> *II.- No exista información en medios masivos de comunicación.*
> *III.- No existan movimientos inusitados en el precio o volumen de operación de los valores, considerándose por dichos movimientos a cualquier cambio en la oferta o demanda de los valores o en su precio, que no sea consistente con su comportamiento histórico y no pueda explicarse con la información disponible en el público.*
>
> *Al revelar los eventos relevantes en términos de lo establecido en el primer párrafo de este artículo, las emisoras estarán obligadas a difundir al público toda la información relevante en relación con los citados eventos"*

De los supuestos anteriores, y dada la naturaleza de los eventos denunciados, consistentes en la existencia de procedimientos que tuvieron como consecuencia la reparación de un daño para la posterior autorización de Criterios de Oportunidad respecto al procedimiento instaurado dentro de la Carpeta de Investigación que se llevaba ante el Ministerio Público, los mismos tenían el carácter de consumados, lo anterior, por lo que al haber omitido la revelación de los eventos relevantes descritos, teniendo de acuerdo con la Ley del Mercado de Valores y la CUE, la obligación legal de divulgarlos al público o a los accionistas o tenedores de valores, sin que se actualizara ningún supuesto de diferimiento en su divulgación en términos de la propia ley, actualiza el **presupuesto típico previsto por el artículo 383, fracción II de la Ley del Mercado de Valores.**

**OCTAVO.-** Finalmente, por lo que respecta al dolo desplegado por los denunciados, como se desprende de las constancias ministeriales que integran la Carpeta de Investigación, debe señalarse el conocimiento que de estos hechos tenían de primera mano André, Max, y Moussa El-Mann Arazi, actualizándose diversos hechos propios, bajo los cuales habrían sido autorizados en su favor los mencionados Criterios de Oportunidad, los cuales de acuerdo a sus obligaciones legales y contractuales previstas como miembros del Comité Técnico del Fideicomiso F/1401, Directivos Relevantes y miembros del órgano directivo de F1 Management, S.C., como Administrador del Fideicomiso F/1401, en la Ley del Mercado de Valores, las Disposiciones de carácter general aplicables a las emisoras de valores y a otros participantes del mercado de valores (CUE), en el Contrato de Fideicomiso F/1401 y sus Convenios Modificatorios, en el Contrato de Administración celebrado con F1 Management, S.C., como Administrador, debían haber hecho del conocimiento del público inversionista o sus



**HACIENDA**
SECRETARÍA DE HACIENDA Y CRÉDITO PÚBLICO

/CNBV

Oficio No. 211-1/110-40973 JFSG/2021

tenedores de CBFI's mediante la revelación de Eventos Relevantes, la existencia de la Carpeta de investigación de donde derivaron los Criterios de oportunidad en materia penal tantas veces citados; omitiendo realizarlo en los términos ya descritos en los anteriores Considerandos, lo que ubica su actuar en la hipótesis establecida en la fracción II, del artículo 383 de la Ley del Mercado de Valores.

Por lo anterior, derivado del estudio integral de las constancias aportadas y descritas en el presente oficio, es procedente emitir la siguiente:

## C O N C L U S I Ó N

ÚNICA. Del análisis de las actuaciones ministeriales contenidas en la carpeta de investigación FED/SEIDF/UEIDFF-CDMX/0000879/2020, se determina que los señores **André El-Mann Arazi, Max El-Mann Arazi, y Moussa El-Mann Arazi**, en los términos señalados en los Hechos y Considerandos de este documento, bajo las características y condiciones que se desprenden de la valoración concatenada de dichos elementos probatorios, adecuaron su conducta a la descripción típica que se encuentra prevista y sancionada por la **fracción II del artículo 383 de la Ley del mercado de Valores.**

Lo anterior, sin perjuicio del grado de coparticipación que de conformidad con el numeral **13 del Código Penal Federal** corresponda por el mismo delito previsto en el **artículo 383, fracción II de la Ley del Mercado de Valores**, al resto de los integrantes del **Comité Técnico del Fideicomiso F/1401**, a la institución fiduciaria, **Banco Actinver, S.A., Institución de Banca Múltiple, Grupo Financiero Actinver**, así como al Administrador **F1 Management, S.C.**, a través de su **Director General y Consejeros de Administración**, o quien o quienes resulten responsables dentro de dichas personas morales, derivado de su conocimiento de la conducta desplegada y descrita en los Considerandos del presente documento.

Lo anterior sin perjuicio de la imposición de las sanciones que, conforme a otra u otras leyes, puedan aplicarse por la comisión de otro u otros delitos.

Se emite la presente Opinión con fundamento en el artículo 388 párrafos primero y sexto de la Ley del Mercado de Valores, 1°, 37, fracciones VII y XV del Reglamento Interior de la Comisión Nacional Bancaria y de Valores.

A T E N T A M E N T E

**LIC. GABRIELA GÓMEZ SOTO**
DIRECTORA GENERAL ADJUNTA DE DELITOS "A"

C.c.p.- **Lic. Sergio Antonio Martínez Escalante,** Titular de la Unidad Especializada en Investigación de Delitos Fiscales y Financieros. - En atención a su oficio UEIDFF/3446/2020 de fecha 26 de noviembre de 2020. Para su conocimiento. - Av. de los Insurgentes número 20, Colonia Roma Norte, Alcaldía Cuauhtémoc, C.P. 06700, Ciudad de México.

**ANEXO:** Copia auténtica de la carpeta de investigación número **FED/SEIDF/UEIDFF-CDMX/0000879/2020,** constante de un Tomo con 384 fojas útiles.

**GGS/JFSG**