# EXHIBIT 50

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SERVICIOS FUNERARIOS GG, S.A. DE C.V.,<br><br>Plaintiff,<br><br>v.<br><br>ADVENT INTERNATIONAL CORPORATION,<br><br>Defendant,<br><br>and<br><br>ADVENT INTERNATIONAL CORPORATION,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>SERVICIOS FUNERARIOS GG, S.A. DE C.V.,<br><br>Counterclaim-Defendant. | Civil Action No. 23-cv-10684 |

**MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION FOR THE ISSUANCE OF LETTERS ROGATORY
<u>PURSUANT TO THE HAGUE EVIDENCE CONVENTION</u>**

In accordance with Chapter 1 of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (23 UST 2555, TIAS No. 7444 [1970]) ("Hague Convention") and Federal Rule of Civil Procedure 28(b), Plaintiff and Counterclaim-Defendant Servicios Funerarios GG, S.A. de C.V. ("Servicios Funerarios") and Defendant and Counterclaim-Plaintiff Advent International Corp. ("AIC") (and together with Servicios Funerarios, the "Parties"), respectfully request that the Court issue the Letters of Request (the "Letters") in the form attached as Exhibits A–T to the Declaration of Gabriel F. Soledad dated June 23, 2023, addressed to the Central Authority in the United Mexican States ("Mexico"), to compel documents and testimony from relevant non-parties located in Mexico.

## AREAS OF DISAGREEMENT

The Parties have worked in good faith to reach complete agreement; however, three areas of disagreement remain.

First, the Parties disagree on whether certain six Letters should be issued under Federal Rule of Civil Procedure 26. Those six Letters are not included in this Joint Motion. Instead, each party will separately move for the issuance of the disputed letters each is seeking.

Second, Servicios Funerarios objects to AIC's request for testimony to the extent that would exceed the limit of 10 depositions per side. Servicios Funerarios' position is that the depositions sought pursuant to the requested Letters Rogatory are governed by the limit under Fed. R. Civ. P. 30(a)(2)(A)(i), which limits each party to taking no more than 10 depositions. Servicios Funerarios therefore asks that the Court not issue more than 10 Letters Rogatory seeking to take depositions for either side.

AIC maintains that this issue is not ripe. Because the letters rogatory process is cumbersome and uncertain, AIC cannot predict which Letters will be issued by the Mexican

2

Authorities.  *See Netherby Ltd. v. Jones Apparel Grp., Inc.*, 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005) (rejecting argument that request to depose five employees at same company is overbroad because "in light of the somewhat cumbersome nature of the letters rogatory process, it is appropriate to issue letters seeking the deposition of all five employees").  Moreover, AIC does not yet know which depositions it intends to notice. Indeed, anticipating this reality, pursuant to this Court's May 25 Scheduling Order, neither party is required to identify any depositions it will take until September 21, 2023.  See Dkt. No. 36. In the meantime, AIC is entitled to *notice* more than 10 depositions—applicable rules limit only the taking of more than 10 depositions per side. Finally, because Servicios Funerarios has identified more than 30 individuals from whom it "may use to support its claims or defenses" in its initial disclosures, if and when the issue becomes ripe, AIC will seek leave to take more than ten depositions provided under Rule 30.  *See United States v. United Techs. Corp.*, No. 3:16-CV-01730 (AVC), 2020 WL 7339916, at *7–8 (D. Conn. Dec. 14, 2020) (ordering discovery on forty-five custodians listed in defendant's initial disclosures because "[t]hese forty-five individuals are not 'additional' custodians but the very individuals identified by Defendant as 'likely to support its claims or defenses'" in its initial disclosures").

Third, AIC maintains that Servicios Funerarios waives its right to ask questions during any deposition arising from any issued Letter that Servicios Funerarios has expressly refused to join. And, if Servicios Funerarios is allowed to ask questions during one of those depositions, that deposition should count against the number of depositions it has taken.

Servicios Funerarios maintains that depositions pursuant to the Letters should be treated exactly as normal depositions, where the party that does not notice or request the deposition is nevertheless entitled to examine the witness without the deposition being counted against its deposition limit.  That is precisely the way the deposition limit will be applied in this litigation and

3

Servicios Funerarios does not believe there should be a different rule for depositions pursuant to the Letters.[1]

## BACKGROUND

This action arises from Servicios Funerarios' acquisition of the Mexican funeral services company Grupo Gayosso S.A. de C.V. ("Gayosso") from affiliates of AIC in January 2021. Servicios Funerarios alleges that AIC fraudulently induced Servicios Funerarios to buy Gayosso by falsely representing Gayosso's financial state. In particular, Servicios Funerarios alleges that Gayosso's financial statements failed to disclose or understated various costs, liabilities, and obligations.

Prior to bringing this action, Servicios Funerarios filed a civil case in Mexico based on similar allegations against AIC, the AIC-affiliated special purpose vehicles that directly owned Gayosso, and AIC's Mexican affiliate, Advent International PE Advisors, S.C. ("Advent Mexico"). Servicios Funerarios then initiated Mexican criminal proceedings that led to what AIC has alleged are unlawful arrest warrants and Interpol Red Notices against AIC's and Advent Mexico's employees, and unlawful embargoes against unrelated assets owned by unrelated AIC-managed funds. *See* ECF No. 14 ¶¶ 151–52, 180, 182.

Servicios Funerarios and AIC now request that this Court issue the Letters pursuant to the Hague Convention, so that the Parties can obtain the evidence they need—a significant portion of which is located in Mexico and falls within the purview of the Mexican courts—to prosecute and defend their respective claims. The non-parties from whom the Parties seek evidence possess information related to the issues in this case, including (among other things) Gayosso's practices

---

[1] Depending on how the Court resolves the areas of disagreement described above, the parties may need to modify the Letters to reflect the Court's ruling.

4

alleged in the Complaint, the disclosure of information concerning those practices to Servicios Funerarios during Servicios Funerarios' due diligence, the Mexican criminal proceedings, arrest warrants, and asset embargoes, the Interpol Red Notices, and both parties' damages.

## ARGUMENT

Under federal law, a United States District Court may issue a letter rogatory requesting the deposition of a witness or the production of documents located in a foreign jurisdiction. *See* 28 U.S.C. § 1781; Fed. R. Civ. P. 28(b). Such a request may be made pursuant to any relevant treaty or convention between the United States and the foreign state. *See* Fed. R. Civ. P. 28(b)(1)(A)-(B); *Société Nationale Industrielle Aérospatiale v. United States District Court*, 482 U.S. 522, 544–46 (1987); *see also Brown v. State St. Corp.*, 2006 WL 8458183, at *2 (D. Mass. Mar. 20, 2006); *Fid. Int'l Currency Advisor A Fund, LLC v. United States*, 2007 WL 9412764, at *1 (D. Mass. May 23, 2007). The Hague Convention authorizes courts to seek assistance from a judicial authority abroad to compel testimony and documents from individuals and entities outside the United States. *See* Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, art. 1, 23 U.S.T., 2557.

Courts take a "permissive" approach to motions for letters rogatory under the Hague Convention and typically grant such motions "unless there is a good reason not to." *Brown*, 2006 WL 8458183, at *2; *see also Crosby Legacy Co., LLC v. TechnipFMC PLC*, C.A. No. 1:18-cv-10814-MLW, at 5 (D. Mass. Dec. 22, 2022), ECF No. 125. "A letter of request is properly granted 'where there is compliance with the requirements of the [Hague] Convention and the information sought is within the scope of discovery as set forth in Rule 26 of the Federal Rules of Civil Procedure.'" *Crosby Legacy Co.*, C.A. No. 1:18-cv-10814-MLW, at 5 (quoting *Crouch v. Liberty Pride Corp.*, 2016 WL 4718431 at *2 (E.D.N.Y. Sept. 9, 2016)).

5

I.      **Issuance of the Letters is Proper Under the Hague Convention**

    A.      **The Hague Convention Applies**

The Hague Convention applies if three conditions are met: (1) both the requesting and receiving countries are parties to the Hague Convention; (2) the evidence sought is related to a "civil or commercial matter[ ]"; and (3) the evidence sought is used for a "judicial proceeding." Hague Convention, art. 1. All three requirements are satisfied here. The United States and Mexico are both signatories to the Hague Convention and are bound by its provisions.[2] This suit is a civil or commercial matter. And the evidence that the Parties seek from Mexican non-parties will be used in this judicial proceeding.

    B.      **The Letters Comply with the Hague Convention**

The Letters contain all of the information required by the Hague Convention. Article 3 requires letters rogatory to include the following information, all of which is included in the Letters:

> (a) the authority requesting its execution and the authority requested to execute it, if known to the requesting authority (*see* Exs. A–T ¶¶ 2, 5(B));
>
> (b) the names and addresses of the parties to the proceedings and their representatives, if any (*see* Exs. A–T ¶ 6);
>
> (c) the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto (*see* Exs. A–T ¶ 7);
>
> (d) the evidence to be obtained or other judicial act to be performed (*see* Exs. A–T ¶ 8);
>
> (e) the names and addresses of the persons to be examined (*see* Exs. A–T ¶ 9);
>
> (f ) the questions to be put to the persons to be examined or a statement of the subject-matter about which they are to be examined (*see* Exs. A–N ¶ 11);

---

[2] *See* HCCH, Status Table, 20: Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, https://www.hcch.net/en/instruments/conventions/status-table/?cid=82 (last accessed June 7, 2023).

6

(g) the documents or other property, real or personal, to be inspected (*see* Exs. A–T ¶ 10);

(h) any requirement that the evidence is to be given on oath or affirmation, and any special form to be used (*see* Exs. A–N ¶ 12); and

(i) any special method or procedure to be followed under Article 9 (*see* Exs. A–N ¶ 13).

Hague Evidence Convention art. 3, 23 U.S.T. at 2558–59.

The Parties will take the necessary steps to ensure compliance with Mexico's language requirements. Mexico's reservation pursuant to Article 4 of the Convention requires that a Spanish translation of the letters be supplied. *See* Hague Conference on Private International Law: Declarations and Reservations of Mexico ¶ A.[3] Accordingly, if the Court grants this motion, the Parties will promptly arrange for a translation of the letters rogatory as executed by the Court, as well as their exhibits and schedules, prior to their transmission to Mexico.

### C. The Parties' Letters are Consistent with Mexico's Reservations to the Convention

Article 23 of the Convention provides that "[a] Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries." Hague Evidence Convention art. 23, 23 U.S.T. at 2568. Pursuant to that authority, Mexico has stated that "it shall only be able to comply with letters of request issued for the purpose of obtaining the production and transcription of documents when the following requirements are met":

(a) that the judicial proceeding has been commenced;

(b) that the documents are reasonably identifiable as to date, subject and other relevant information and that the request specifies those facts and circumstances that lead the requesting party to reasonabl[y] believe that the requested documents are known to the person from whom they are requested or that they are in his possession or under his control or custody;

---

[3] Available at https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=508&disp=resdn.

7

(c) that the direct relationship between the evidence or information sought and the pending proceeding be identified.

Declarations and Reservations of Mexico ¶ C.  By its terms, that reservation does not apply to the Letters to the extent they seek depositions rather than documents.  And to the extent the Letters seek documents, they are consistent with Mexico's reservation.  The Parties' document requests seek evidence in connection with this judicial proceeding, which has already commenced.  As required by subsection (b), the document requests are tailored to each non-party's specific role in this action.  Accordingly, it is "reasonable [to] believe that the requested documents are known to the person from whom they are requested or that they are in his possession or under his control or custody."  Declarations and Reservations of Mexico ¶ C; *see* Exs. A–T & sched. A.  The requests also clearly identify the "date, subject and other relevant information" requested from each non-party.  Declarations and Reservations of Mexico ¶ C; *see* Exs. A–T & sched. A.  Finally, there is a direct relationship between the evidence sought and this proceeding, as required by subsection (c), and as detailed *infra* Section II.

Moreover, any doubt about compliance with Mexico's reservation is a question for the Mexican authorities and is not a basis for denying the issuance of the Letters.  *See In re Baycol Prods. Litig.*, 348 F. Supp. 2d 1058, 1061 (D. Minn. 2004); (holding that the decision whether to execute plaintiff's letter of request in spite of Italy's reservation under Article 23 was better left to the appropriate Italian tribunal); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 475 (D. Del. 2003) (finding that in light of the Netherlands' Article 23 reservation, the decision of whether or not to enforce defendant's letter of request was best made by the appropriate judicial authorities in the Netherlands).

II. **The Parties' Letters Comply with the Federal Rule of Civil Procedure 26**

8

The Court should issue the Letters because the information sought is within the scope of discovery as set forth in Rule 26 of the Federal Rules of Civil Procedure. "In considering the issuance of letters rogatory, U.S. courts apply the discovery principles contained in Rule 26." *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012); *Crosby Legacy Co.*, C.A. No. 1:18-cv-10814-MLW, at 5. Under Rule 26(b), "[p]arties may obtain discovery regarding a nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

Here, subject to each Party's respective objections and reservations with respect to specific non-parties as set forth below, the Parties seek evidence from non-parties that have information concerning issues in this case: Gayosso's practices alleged in the Complaint, including accounting and financial reporting practices, the disclosure of such information to Servicios Funerarios during its due diligence, the Mexican criminal proceedings, arrest warrants, and asset embargoes, the Interpol Red Notices, and both parties' damages. *See Netherby Ltd. v. Jones Apparel Grp., Inc.*, 2005 WL 1214345, at * (S.D.N.Y. May 18, 2005) ("Courts routinely issue [letters rogatory] where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence."). The relevance of each non-party and basis for each request is expressed below:

*Persons From Whom The Parties Jointly Seek Documents and Testimony*

- **Octavio Trejo García (Ex. A):** As Gayosso's former CFO, Mr. Trejo was involved with the company's accounting and financial reporting, the transition from GAAP to IFRS 15 in 2017, and the disclosure of information provided to Servicios Funerarios through the due diligence process. Mr. Trejo is a Mexican resident who is not under either party's control because he is no longer employed by Gayosso. Although Servicios Funerarios will produce documents from Mr. Trejo's Gayosso email account through his last date of employment with Gayosso in February 2023, the Parties have reason to believe that Mr. Trejo may have additional relevant communications on his personal email accounts and personal devices.

- **Jose Luis Lopez Rosales (Ex. B) and Juan Venancio Torres Ortega (Ex. C):** Messrs. Lopez Rosales and Torres Ortega as Gayosso's suppliers have information concerning Servicios Funerarios' allegations regarding Gayosso's debts with suppliers and double invoicing.

- **Charles Bunce (Ex. D):** Mr. Bunce is the head of auditing for EY for Latin America and has knowledge of EY's audits of Gayosso.

*Persons From Whom the Parties Jointly Seek Only Documents*

- **Mancera S.C. ("Mancera"), an Ernst & Young LLP ("EY") member firm, (Ex. E):** Mancera advised Gayosso in connection with its conversion to IFRS in 2017, audited Gayosso's financial statements, and performed financial due diligence of Gayosso for Servicios Funerarios in connection with the transaction. The Parties request documents from and to depose a corporate designee of Mancera S.C. and also requests documents from and to depose the individuals who conducted the audits and due diligence of Gayosso.

*Persons From Whom AIC Seeks Documents and Testimony*

- **Mario Arregoytia Garcia (Ex. F):** Mr. Arregoytia led the audits of Gayosso's financial statements and provided a letter to Gayosso's Audit Committee which was relied upon in the Mexican Criminal Proceeding concerning the Gayosso's compliance with IRFS, and was named by Servicios Funerarios' counsel in the Mexican Criminal Proceeding as an individual with relevant knowledge.

- **Rafael Aguirre (Ex. G); Ximena Barragan Soteno (Ex. H); Francisco Lobera Estrada (Ex. I):** Messrs. Aguirre and Estrada and Ms. Barragan, each formerly or currently employed by or affiliated with EY, were identified by Servicios Funerarios in its initial disclosures as having knowledge concerning Gayosso's financial and accounting information, practices, methodologies, and operations, and Servicios Funerarios' relevant allegations concerning alleged misrepresentations.

- **André El-Mann (Ex. J) and Gonzalo Pedro Robina Ibarra (Ex. K):** Mr. El-Mann is the CEO and Mr. Robina is the Deputy CEO of Fibra Uno. Messrs. El-Mann and Robina analyzed and directed the buyer-side of the acquisition of Gayosso, including but not limited to the acquisition of real estate assets and the sale and leaseback transaction. Mr. Robina signed the SPA on behalf of Banco Actinver, as the Trustee of Fibra Uno.

- **Leon Cohen (Ex. L) and Marcelo Rivero Garza (Ex. M):** Messrs. Cohen and Garza were independent members of Gayosso's Board of Directors, and may have insight into Gayosso's financial situation prior to and after the closing of the Gayosso Transaction.[4]

---

[4] If granted, the Parties will need to amend these letters to include the address for these two individuals.

10

- **Ariel Saenz Gonzalez (Ex. N):** Servicios Funerarios has identified Mr. Saenz Gonzalez as Gayosso's suppliers on whom it intends to rely concerning its allegations regarding Gayosso's debts with suppliers and double invoicing.

*Persons From Whom AIC Seeks Documents*

- **PricewaterhouseCoopers, S.C. ("PwC"), a Mexican subsidiary of PwC (Ex. O):** Servicios Funerarios has identified PwC as having conducted an analysis of Gayosso's revenue recognition under IFRS in November 2022.

- **Galaz, Yamazaki, Ruiz Urquiza, S.C. ("Deloitte"), a Mexican subsidiary of Deloitte (Ex. P):** Deloitte analyzed the costs associated with the revenues recognized under IFRS, audited Gayosso's financial statements for 2021 and 2022, and is assisting in defending against a claim concerning Gayosso's 2016 taxes asserted by *Servicio de Administración Tributaria*—the Mexican government's tax administration agency.

- **Fibra Uno Administración S.A. de C.V. ("Fibra Uno")[5] (Ex. Q):** Fibra Uno is a party to the SPA, has specialized knowledge of the negotiations of the Gayosso transaction, the due diligence provided to Servicios Funerarios, the value of the transaction, and the alleged damage Servicios Funerarios.

- **Banco Ve por Más, Sociedad Anónima, Institución de Banca Múltiple, Grupo Financiero Ve por Más ("Bx+") (Ex. R):** Bx+ is the trustee of the trust that owns shares in Servicios Funerarios and was classified by a submission to the Federal Commission of Economic Competition as an indirect economic agent to the Gayosso transaction and would have documents reflecting the buyers' understanding of the value of the Gayosso acquisition

- **Banco Actinver, S. A., Institucion de Banca Multiple, Grupo Financiero Actinver ("Actinver") (Ex. S):** Actinver is the trustee of the trust known as "Fibra Uno" that owns the real estate subject of the Gayosso transaction.

- **HSBC México S.A. ("HSBC") (Ex. T):** HSBC, a bank in Mexico, financed, in part, Servicios Funerarios' acquisition of Gayosso. Accordingly, HSBC will have information supporting that debt financing.

In sum, the Parties' requested relief under the Hague Convention is warranted and necessary to obtain evidence from each of the foregoing non-parties.

---

[5] AIC reserves its rights to seek leave to compel Servicios Funerarios to produce documents from Fibra Uno and to compel Fibra Uno to deposition in the United States.

11

## CONCLUSION

For the reasons stated herein, the Parties respectfully request that the Court grant this motion for issuance of the Letters submitted herewith and approve, date, and sign the Letters, and that the Clerk of the Court affix the seal of this Court to the Letters, attached as Exhibits A–T. The Parties further request leave to update the Letters to arrange for their translation into Spanish upon their execution by the Court and prior to their transmission to the appropriate Mexican authorities.

Dated: June 23, 2023

/s/ *Carlos M. Sires*

Carlos M. Sires
Jason Hilborn
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
csires@bsfllp.com
jhilborn@bsfllp.com

David Boies
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300
dboies@bsfllp.com

Michael Aleo
Thomas Lesser
LESSER, NEWMAN, ALEO & NASSER LLP
39 Main Street, Suite 1
Northampton, MA 01060
Telephone (413) 584-7331
Facsimile: (413) 586-7076
aleo@LNN-law.com
lesser@LNN-law.com

*Counsel for Plaintiff and Counterclaim-Defendant Servicios Funerarios GG, S.A. de C.V.*

Respectfully submitted,

/s/ *Andrew J. Rossman*

Andrew J. Rossman*
Nicholas A. S. Hoy*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
andrewrossman@quinnemanuel.com
nicholashoy@quinnemanuel.com

Gabriel F. Soledad*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW
Washington, D.C. 20005
(202) 538-8000
gabrielsoledad@quinnemanuel.com

Peter L. Welsh (No. 643261)
Daniel V. Ward (No. 667158)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7050
Peter.Welsh@ropesgray.com
Daniel.Ward@ropesgray.com

**Admitted Pro Hac Vice*

*Counsel for Defendant and Counterclaim-Plaintiff Advent International Corporation*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of June, 2023, I caused to be served a copy of the foregoing document via the CM/ECF system on all counsel of record.

/s/ *Andrew J. Rossman*

Andrew J. Rossman
*Counsel for Defendant and
Counterclaim-Plaintiff AIC*