```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/2/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADVENT INTERNATIONAL CORPORATION,

                Petitioner,

-against-

ANDRE EL-MANN ARAZI, GONZALO PEDRO ROBINA IBARRA, FIBRA UNO ADMINISTRACION S.A. DE C.V.,

                Respondents.

24-mc-16 (MKV)

OPINON & ORDER
DENYING IN PART AND
GRANTING IN PART
MOTION TO COMPEL
AND
DENYING IN PART AND
GRANTING IN PART
CROSS-MOTION TO QUASH

---

MARY KAY VYSKOCIL, United States District Judge:

      Petitioner Advent International Corporation ("AIC") moves to compel compliance with six subpoenas for testimony and documents, which AIC contends it properly served on Respondents Andre El-Mann Arazi ("El-Mann"), Gonzalo Pedro Robina Ibarra ("Robina"), and Fibra Uno Administración S.C. ("Administración") in connection with a civil fraud action pending in Massachusetts, *Servicios Funerarios GG, S.A. de C.V. v. Advent International Corporation*, No. 23-cv-10684-IT (D. Mass.). Respondents cross-move to quash on the grounds that none of the respondents was properly served, none of the subpoenas for testimony complies with the 100-mile rule under Rule 45 of the Federal Rules of Civil Procedure, and none of the respondents is subject to the personal jurisdiction of this Court.

      In an earlier Order, the Court directed the parties to appear for an evidentiary hearing because the parties' affidavits presented a direct conflict of fact as to whether El-Mann was properly served [ECF No. 29]. At the hearing, AIC's process servers testified, but El-Mann refused to appear on the ground that the Court lacks personal jurisdiction over him [ECF No. 40 ("Tr.")]. The Court also entertained oral argument.

For the reasons set forth below, Petitioner's motion to compel is GRANTED in part and DENIED in part, and Respondents' cross-motion to quash is GRANTED in part and DENIED in part. The Court grants Petitioner's motion, and denies Respondents' cross-motion, with respect to El-Mann. Based on the evidence admitted at the hearing, the Court concludes that El-Mann was properly served in New York. He is therefore subject to "tag" personal jurisdiction here, although, pursuant to Rule 45, he is not required to travel to New York for his deposition.

The Court denies Petitioner's motion compel Robina's compliance with its subpoenas. AIC failed to effectuate personal service on Robina in New York and never moved for alternative service. Because Robina was never properly served, the motion to quash is denied as moot. Finally, the Court denies Petitioner's motion compel and grants Respondents' motion to quash with respect to Administración because AIC has failed to make a *prima facie* showing that Administración is subject to personal jurisdiction.

## I. BACKGROUND[1]

### A. The Parties and the Underlying Massachusetts Case

Petitioner Advent International Corporation ("AIC"), a Massachusetts-based private equity firm, initiated this miscellaneous action to compel compliance with subpoenas for testimony and documents, which it seeks in connection with a civil fraud case pending in the District of Massachusetts, *Servicios Funerarios GG, S.A. de C.V. v. Advent International Corporation*, No. 23-cv-10684-IT (D. Mass.). The plaintiff in the Massachusetts case, Servicios Funerarios ("SF"),

---

[1] The Court cites the parties' briefs [ECF No. 5 ("AIC Mem"); ECF No. 23 ("Opp."); ECF No. 25 ("Reply")] for certain points about the background facts and procedural backdrop of this case. As discussed below, the Court's factual findings about AIC's efforts to serve Respondents are based on the testimony proffered by two process servers, Baldeo Drepaul and Vincent Mannetta, at a traverse hearing [ECF No. 40 ("Tr.")]. The Court relies on the parties' declarations and exhibits, including El-Mann's Declaration [ECF Nos. 7, 8, 21, 23, 23-1 ("El-Mann Decl."), 26], in connection with Respondents' arguments about personal jurisdiction and the 100-mile rule, since those issues were not the subject of the evidentiary hearing, and AIC did not object to Respondents' reliance on El-Mann's Declaration for purposes of analyzing personal jurisdiction and the 100-mile rule. *See* Tr. at 11:21–11:25.

a Mexican "investment vehicle," alleges that AIC falsely inflated the value of an asset that AIC sold to SF, and AIC asserts counterclaims. AIC Mem. at 1, 10; Opp. at 4. Respondents Andre El-Mann Arazi ("El-Mann"), Gonzalo Pedro Robina Ibarra ("Robina"), and Fibra Uno Administración S.C. ("Administración") are not parties to the Massachusetts case.

AIC contends, however, that SF is merely a cat's paw. According to AIC, the real parties in interest are El-Mann, a wealthy Mexican national, and what AIC describes as "the real estate business he and his family control, Fibra Uno." AIC Mem. at 1. AIC describes Respondent Gonzalo Pedro Robina Ibarra ("Robina") as "the Deputy CEO of Fibra Uno." AIC Mem. at 5. In its briefs, AIC refers to Respondent Administración as "Fibra Uno." *See* AIC Mem. at *passim*. As discussed below, and crucial to the question of personal jurisdiction over Administración, Respondents maintain that AIC misleadingly lumps together several distinct entities under the name "Fibra Uno." Specifically, according to Respondents, AIC conflates the Fibra Uno trust and the subsidiary that manages it, which are not parties to this action and have not been served with any subpoenas, with Respondent Administración, which is an "external advisor to the Fibra Uno trust, pursuant to an advisory agreement." Opp. at 2.

In the Massachusetts case, AIC sought discovery from "Fibra Uno" [ECF No. 7-50 ("D. Mass. Order")]. SF professed not to control the requested discovery and identified El-Mann and Robina as individuals from Fibra Uno with responsive information [ECF No. 7-37 (SF's responses and objections to AIC's First Set of Interrogatories)]. In an order denying a motion to compel SF to produce discovery, the judge in the Massachusetts case concluded that AIC had identified facts that "may show that Fibra Uno and/or the ElMann family possess relevant information but do[] not establish that SF has control over their documents." D. Mass. Order at 7 & n.4.

3

AIC and SF jointly moved for issuance of letters rogatory to Respondents, which motion the Massachusetts judge granted. AIC Mem. at 12–13; Opp. at 1. However, AIC represents that, nevertheless, "no letters rogatory have yet issued, there is no timetable on which they will (if ever) issue." Reply at 4. As such, AIC undertook to serve subpoenas for testimony and documents on Respondents when El-Mann and Robina traveled to New York City for "FUNO Day," an annual set of presentations to investors in New York. *See* AIC Mem. at 4, 13; Opp. at 3.

B. **The Parties' Submissions in This Action**

AIC filed a motion to compel compliance with the subpoenas, which AIC contends it properly served on Respondents in New York, together with numerous supporting exhibits [ECF Nos. 1, 5, 6, 7, 8, 21]. In its opening brief, AIC stressed Respondents' "central relevance" to the Massachusetts case. AIC Mem. at 12; *see id*. at 14–16. It devoted much of the brief, and many exhibits, to claims that Respondents were "behind" not only the transaction with SF at issue in the Massachusetts case, but also a retaliatory scheme to prosecute AIC and its principals through corrupt Mexican prosecutors and judges. AIC Mem. at 1–3, 6–10, 24.

In support of its contention that Respondents were properly served, AIC filed affidavits of service (and affidavits of non-service) and declarations from two process servers, Baldeo Drepaul and Vincent Mannetta [ECF Nos. 7-53, 7-54]. The affidavits of service for the subpoenas directed at El-Mann state that Drepaul made "several attempts to hand [El-Mann] the documents," but "El-Mann refused to take the papers," so Drepaul "drop[ped] the document[s] in front of him and told him that he was served" [ECF No. 7-53 at 8, 9]. The affidavits of service for the subpoenas directed at Administración state that Drepaul served the entity through El-Mann at the same time and in the same manner [ECF No. 7-53 at 12, 13].

4

With respect to Robina, AIC filed affidavits of service based on Drepaul's interaction with El-Mann, stating that Drepaul told El-Mann he was "serving him as a courtesy for Gonzalo Pedro Robina Ibarra" [ECF No. 7-53 at 14, 15]. AIC also submitted affidavits of "non service," stating that its process servers made two unsuccessful attempts to serve personally Robina at his hotel [ECF No. 7-53 at 4, 5, 10, 11]. In addition, AIC submitted affidavits stating that Drepaul left subpoenas for Robina with hotel security [ECF No. 7-53 at 17, 18] and AIC mailed copies of the subpoenas to Robina at a business address in Mexico [ECF No. 7-55].

Turning to personal jurisdiction, AIC argued in its brief that the Court has "tag" jurisdiction over El-Mann because El-Mann "was personally served while physically present in New York." AIC Mem. at 18. AIC further argued that the Court has personal jurisdiction over each of the respondents because, AIC asserted, Respondents "regularly solicit New York investments." AIC Mem. at 19. In support of this assertion, AIC cited the annual series of presentations in New York called "FUNO Day." AIC Mem. at 20.

AIC likewise argued that its subpoenas for testimony comply with the 100-mile of Rule 45 on the ground that Respondents regularly transact business in New York. AIC Mem. at 22. In the alternative, AIC argued that "Courts routinely modify third-party subpoenas to order compliance at locations outside of the United States." *Id*. AIC stated that it "ha[d] offered (and is still willing)" to take the depositions in Mexico City. *Id*.

Respondents filed an opposition brief and cross-motion to quash, together with supporting exhibits [ECF Nos. 22, 23]. The exhibits include a chart purporting to show that the Fibra Uno

trust and Administración are distinct entities [ECF No. 23-2 ("Chart")]. Respondents also filed declarations by El-Mann and Robina [ECF Nos. 23-1 ("El-Mann Decl."), 23-3 ("Robina Decl.")].[2]

In his declaration, El-Mann avers that he is the CEO of the Fibra Uno trust and the CFO of Administración. El-Mann Decl. ¶¶ 1, 2. He further avers that the Chart accurately reflects the "corporate structure of the Fibra Uno trust and related entities." El-Mann Decl. ¶ 18. With respect to personal jurisdiction and the 100-mile rule, El-Mann avers that he lives in Mexico City and does "not regularly transact business in person in New York City. El-Mann Decl. ¶¶ 3, 6. Specifically, El-Mann represents that, in the last five years, he has traveled to New York City "approximately 3-4 times per year" and "[n]o trip was longer than five days." El-Mann Decl. ¶ 7. Crucially, he avers that only one such trip is principally for business each year (the annual FUNO Day) and "[t]he rest of [the] trips are principally for leisure." El-Mann Decl. ¶¶ 8, 9.

El-Mann further avers that "Administración is headquartered in Mexico City." El-Mann Decl. ¶ 12. According to El-Mann, Administración is one of several external advisors to the Fibra Uno trust and it "does not regularly transact business" in New York City. El-Mann Decl. ¶ 15; *see* Chart. El-Mann avers that Administración does not have any offices or employees in New York City and "Administración did not conduct any business related to" the transaction with SF "in New York City." El-Mann Decl. ¶ 16.

In his declaration, El-Mann also gave an account of his interaction with Drepaul in New York City. *See* El-Mann Decl. ¶ 17. This aspect of the El-Mann Declaration is not in evidence, *see* Tr. at 11:16–17, and the Court describes it here only to explain the procedural history. In his sworn declaration, El-Mann stated that "an individual approached him" in New York City,

---

[2] As discussed below, AIC clearly failed to effectuate personal service on Robina, as required by Rule 45, and never moved for alternative service. As such, the contents of Robina's declaration have no bearing on the resolution of the parties' motions.

"dropped some documents" on the sidewalk, "said 'you are served,' and took a picture." El-Mann Decl. ¶ 17. Crucially, he further swore that, as El-Mann walked away, "the man who approached [him] returned and picked up the documents from the sidewalk." El-Mann Decl. ¶ 17. In their brief, Respondents argued that AIC did not properly serve El-Mann, and, therefore, did not obtain tag jurisdiction over him, because "the [process] server did not leave the papers with" El-Mann, but rather "picked up the papers" and took them with him. Opp. at 1, 11 (arguing that service "was nullified when [the process server] removed the papers").[3]

AIC filed a reply brief and supporting exhibits [ECF Nos. 25 ("Reply"), 26, 26-1 ("Drepaul Decl.")]. AIC responded that "Respondents' argument that service [on El-Mann] was invalid relies on an outright falsehood," since its process server never "withdrew the subpoenas after attempting service." Reply at 1–2. In a declaration, the process server Drepaul stated: "I never picked up the documents after leaving them at Mr. El-Mann's feet. After I served Mr. El-Mann I walked away . . . . Shortly thereafter, I observed a woman who I did not know pick up the documents and walk away with them. The woman appeared to me to have been part of Mr. El-Mann's entourage . . . ." Drepaul Decl. ¶ 5. AIC submitted a photograph—stamped with the time and GPS coordinates—of a woman holding papers [ECF No. 26-1 at 4].

Respondents then filed a request for leave to file a surreply [ECF No. 27]. They included their proposed surreply and several exhibits, including a further declaration by El-Mann. El-Mann maintained that the process server who approached him "picked up the documents" he had dropped "in front of" El-Mann [ECF No. 27-4]. AIC filed an opposition [ECF No. 28]. The Court denied

---

[3] At the end of their brief, Respondents tacked on an argument that the Court should quash the subpoenas as overbroad and unduly burdensome. *See* Opp. at 19–22. A party seeking to quash subpoenas on these grounds bears the burdens of proof and persuasion. *See Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009); *Kirschner v. Klemons*, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005). Respondents, however, fail to substantiate their assertions that the breadth of information sought and inconvenience of complying are disproportionate to the Massachusetts case. The Court cannot simply rely on Respondents' assertions. *See Kirscher*, 2005 WL 1214330, at *3. Moreover, Respondents arguably abandoned this line of attack at oral argument.

the request for further briefing [ECF No. 29]. The Court directed the parties to appear for "an evidentiary hearing on whether Petitioner's process server left subpoenas in Mr. El-Mann's proximity in New York" [ECF No. 29]. The Court also granted Respondents' request for oral argument on the motions [ECF No. 29].

### C. The Hearing

After granting the parties' request for an adjournment [ECF No. 33], the Court held an evidentiary hearing on the question of whether AIC's process server left subpoenas in El-Mann's close vicinity to determine whether he was properly personally served in New York City. El-Mann did not appear at the hearing to testify, contending that the Court lacks personal jurisdiction over him. *See* Tr. at 10:12–15. Respondents did not offer his declarations, or any other "evidence related to service," instead arguing that "the burden is on [AIC] to prove proper service" and that "even under the facts that [AIC's] process servers put forth . . . , service wasn't proper." Tr. at 10:22–11:3, 11:6–8, 11:16–17.

AIC offered the testimony of two witnesses, their process servers Baldeo Drepaul and Vincent Mannetta, who are both employed by a company called Court Support. It also offered a number of exhibits, including subpoenas for documents and testimony with witness fees [PX 7–12], affidavits of service [PX 3–5], and photographs from scene of the interaction between Drepaul and El-Mann [PX 18–20]. The exhibits were received without objection. *See* Tr. at 23:3, 26:3–4, 27:21, 30:19, 54:5.

Drepaul testified, in pertinent part, that he approached El-Mann, identified himself as a licensed process server, and "asked" El-Mann to accept the papers "about four times." Tr. at 20:14–24. But, Drepaul testified, El-Mann "refuse[d]" to accept the papers. Tr. at 20:24–25; *accord* Tr. at 20:17–18, 23:16. Drepaul then "place[d] the paper[s] in front of him" on the

8

sidewalk, "right in front of him," "about one foot" away, and "told him that he was served." Tr. at 21:14–24; *see id.* at 24:8. Drepaul testified that El-Mann turned and walked away, and Drepaul stepped back and took a time-stamped "GPS" photograph of the papers and El-Mann in close proximity.[4] *See* Tr. at 24:8–14; *see id.* at 21:20–22:2, 22:16–19.

Drepaul further testified that he walked a short distance away and stopped to "tak[e] notes," and, "two minutes" later, he "saw a woman picked up the paper." Tr. at 29:18–22. He "took another GPS picture" of the woman holding "the paper that was just served."[5] Tr. at 29:25–30:2. Drepaul testified that he did not recognize the woman in the picture and that "she is not affiliated with" AIC or Court Support, the company that employs the Drepaul and Mannetta. Tr. at 31:22–32:1.

On cross-examination, Respondents elicited from Drepaul that, although he had signed a declaration stating that he perceived the woman who picked up the papers to be part of El-Mann's entourage, he had not seen her speaking with El-Mann, or getting in or out of a car with him, and he did not see her "hand the papers to Mr. El-Mann." Tr. at 37:16–38:2. Further, Drepaul did not speak to the woman. Tr. at 38:3–4.

Mannetta testified that he was also present and witnessed Drepaul's interaction with El-Mann. In particular, Mannetta testified that El-Mann "ignored" the process servers, so Drepaul "dropped the papers at [El-Mann's] feet, . . . directly in front of him." Tr. at 51:22–25. He further testified that a "female eventually picked up the documents" who was "[u]nknown to [him]" and "didn't work for Court support." Tr. at 54:20–21. On cross, Respondents elicited from Mannetta that, although he had signed a declaration stating that he saw a woman pick up the papers, he could

---

[4] That picture was admitted as PX-18.
[5] That picture was admitted as PX-19.

9

not, in fact, recall whether he "actually personally witness[ed] the woman pick up the papers and walk away with them." Tr. at 56:23–57:4.

After the conclusion of the testimony, the Court heard oral argument on the cross-motions. AIC stressed that "it's undisputed . . . that the respondents have possession, custody or control of relevant" information. Tr. at 64:20–22. With respect to service on El-Mann, AIC argued that, "when service is refused, . . . the appropriate next step is to leave the papers with the target of the service . . . . And to leave the papers with someone doesn't require that the person take them." Tr. at 66:18–67:9. AIC further argued that it is reasonable to infer that the woman who picked up the papers "may have been part of [El-Mann's] entourage" based on "photographically confirmed" timing and the unlikelihood that "a stranger walking down the street of Park Avenue" would take them. Tr. at 68:3–4, 68:18, 69:3–4. AIC also reiterated that it is willing to take depositions in Mexico City or remotely. Tr. at 75:6–7.

Respondents did not contest relevance during oral argument.[6] Respondents argued that AIC failed to serve El-Mann and obtain personal jurisdiction over him in New York because, Respondents maintained, the subpoenas and witness fees were not properly "left" with El-Mann. Tr. at 93:4. Abandoning the argument in their brief that service was nullified by the process server purportedly taking the papers back, Opp. at 11, Respondents argued that service was nullified because "the process servers themselves witnessed . . . a complete stranger pick[] up the papers and walk[] away with them." Tr. at 93:5–9.

With respect to Robina, Respondents argued that AIC "admits that he was never personally served" and "leave of court is required to effectuate alternative service." Tr. 85:2–5. Respondents further argued that "there has been absolutely no showing that Administración," in contrast with

---

[6] Respondents also failed to press, let alone substantiate, the assertion in their brief that the subpoenas are overbroad and unduly burdensome.

the Fibra Uno trust, "conducts any business in New York City." Tr. at 86:18–19. Respondents also maintained that "the vast weight of authority" requires a subpoena that violates the 100-mile rule to "be quashed," not modified. Tr. at 100:17–19.

## II. LEGAL STANDARDS

Rule 45 of the Federal Rules of Civil Procedure governs subpoenas. It states that "[s]erving a subpoena requires delivering a copy to the named person," along with witness fees for testimony. Fed. R. Civ. P. 45(b)(1). In the past, courts generally interpreted Rule 45 to require personal service in all circumstances. *See* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed., 2024 update); *Agran v. City of New York*, 1997 WL 107452, at *1 (S.D.N.Y. Mar. 11, 1997). Recently, a number of courts in this Circuit have authorized service of subpoenas by alternative means after diligent attempts at personal service. *See Sec. & Exch. Comm'n v. Pence*, 322 F.R.D. 450, 454 (S.D.N.Y. 2017); *JPMorgan Chase Bank, N.A.*, 2009 WL 1313259, at *3 (S.D.N.Y. May 11, 2009) (granting alternative service after nine attempts). "Although 'case law is split as to whether a subpoena may be validly served . . . by any means other than personal delivery to the witness . . . alternate service *must be authorized by a court*." *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) (emphasis in original) (quoting *Lapin v. Goldman, Sachs & Co.*, 2009 WL 2924521, at *2 (S.D.N.Y. Sept. 10, 2009)); *see Kenyon v. Simon & Schuster, Inc.*, 2016 WL 5930265, at *3 (S.D.N.Y. Oct. 11, 2016).[7]

Rule 45 also addresses proof of service. It states: "Proving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the

---

[7] In *Ultradent Products, Inc. v. Hayman*, the district court ruled that service of a subpoena by certified mail was sufficient, even though the serving party had not requested leave to serve by alternative means. 2002 WL 31119425, at *4 (S.D.N.Y. Sept. 24, 2002). This case appears to be an outlier. Indeed, the court acknowledged that the only authority it cited could be "distinguished" because the party in the cited case had "moved for an order in advance of the service." *Id.*

11

names of the persons served. The statement must be certified by the server." Fed. R. Civ. P. 45(b)(4). In determining the adequacy of service of a subpoena under Rule 45, courts look to Rule 4 for guidance, which, in turn, requires that service of process comport with the state law where the district court sits. *See Aristocrat Leisure*, 262 F.R.D. at 306; *Pence*, 322 F.R.D. at 455. In New York, "a process server's affidavit of service establishes a prima facie case of" proper service. *Old Republic Ins. Co. v. Pac. Fin. Servs. of America, Inc.*, 301 F.3d 54, 57 (2d Cir. 2002). "A defendant's sworn denial of receipt of service, however, rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing," called a "traverse hearing." *Id.* at 57–58.

"A district court must have personal jurisdiction over a nonparty to compel it to comply with a Rule 45 subpoena." *Gucci America, Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015); *see also First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998). Petitioner has the burden to "make a *prima facie* showing" of personal jurisdiction. *Broumand v. Joseph*, 522 F. Supp. 3d 8, 14 (S.D.N.Y. 2021) (emphasis added). The Court has "so-called tag jurisdiction" over a foreign national who is personally served while physically present in this District. *In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002); *see Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 553 (S.D.N.Y. 2005) *aff'd*, 332 F. App'x 643 (2d Cir. 2009). However, the Court cannot acquire tag jurisdiction over a foreign corporation through such personal service on an officer. *See Estate of Ungar*, 400 F. Supp. 2d at 553.

The 100-mile rule protects nonparty witnesses from being compelled to travel more than 100 miles from where they live, work, or regularly transact business in person. *See In re Edelman*, 295 F.3d at 178. Specifically, Rule 45(c) provides that a "subpoena may command" a nonparty "to attend a . . . deposition only . . . within 100 miles of where the person resides, is employed, or

12

regularly transacts business in person." Fed. R. Civ. P. 45(c). "The court for the district where compliance is required must quash *or modify* a subpoena that . . . requires a person to comply beyond the geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3) (emphasis added).

### III.   DISCUSSION

#### A.   The El-Mann Subpoenas

The Court finds that AIC properly served El-Mann in New York City. The case law, which Respondents cite, is clear: "'where the person to be served is himself clearly attempting to resist or evade service,'" the papers "may be 'left in close proximity to the person to be served.'" *Margouleff v. Beck*, No. 18-cv-7334 (RA), 2019 WL 3296989, at *5 (S.D.N.Y. July 23, 2019) (quoting *Prof'l Billing Res., Inc. v. Haddad*, 183 Misc. 2d 829, 832 (N.Y.C. Civ. Ct. 2000)); *see Jane Doe I v. Karadzic*, No. 93-cv-0878 (PKL), 1996 WL 194298, at *1 (S.D.N.Y. Apr. 22, 1996) (ruling that a party was properly served when, after ignoring a process server, the papers were dropped in his vicinity as he walked away); *Melkaz Int'l Inc. v. Flavor Innovation Inc.*, 167 F.R.D. 634, 642 n.6 (E.D.N.Y. 1996) (explaining that, "under CPLR § 308(1)," service "may be accomplished by leaving [the papers] in the general vicinity of a person who resists service") (internal quotation marks omitted); *McDonald v. Ames Supply Co., Inc.*, 22 N.Y.2d 111, 115-16, 238 N.E.2d 726, 728, 291 N.Y.S.2d 328, 332 (1968)).

Based on the evidence at the hearing, the Court finds that El-Mann attempted to resist or evade service because he refused to accept the papers and ignored the process servers. *See* Tr. at 20:17–18, 20:24–25, 23:16; 51:22–25. Specifically, Drepaul testified that, after he identified himself as a licensed process server, he "asked" El-Mann to accept the papers "about four times." Tr. at 20:14–24. Drepaul testified that El-Mann "refuse[d.]" Tr. at 20:24–25; *accord* Tr. at 20:17–

13

18, 23:16.  Mannetta likewise testified that El-Mann "ignored" Drepaul's attempts to hand him the papers.  Tr. at 51:22–25.

The Court finds that the process server then properly left the papers in El-Mann's close proximity.  *Margouleff*, 2019 WL 3296989, at *5.  Specifically, Drepaul testified that he placed the papers "right in front of" El-Mann, "about one foot" away from him.  Tr. at 21:14–24; *see id.* at 24:8.  Mannetta corroborated that Drepaul "dropped the papers at [El-Mann's] feet, . . . directly in front of him."  Tr. at 51:22–25.  Photographs admitted in evidence at the hearing appear to confirm this testimony, and Respondents do not dispute it.

In this circumstance, when Drepaul "left [the papers] in the vicinity of [El-Mann] as he walked away," Drepaul accomplished personal service on El-Mann.  *Jane Doe I v. Karadzic*, 1996 WL 194298, at *2.  Respondents contend that the process server should have done more.  At oral argument, counsel for Respondents asserted that, after four failed attempts to hand the papers to El-Mann, "the process server could have tried again."  Tr. at 97:7–8.  The Court asked counsel, "how many times do you have to try?"  Tr. at 95:22.  She responded that "maybe one more effort would have been appropriate."  Tr. at 95:25–96:1.  When the Court asked for authority, she stated that she was "setting a limit" based on "common sense."  Tr. at 96:4–5.  Respondents' position that a process server must attempt to hand subpoenas to the intended recipient five times, rather than four, is arbitrary and is not supported by case law (or common sense).  By repeatedly attempting to hand El-Mann the documents and then placing them at his feet and telling him he had been served, Drepaul "acted reasonably and diligently" to effectuate service in accordance with New York law and the Federal Rules of Civil Procedure.  *McDonald*, 22 N.Y.2d at 115, 238 N.E.2d at 728, 291 N.Y.S.2d at 332; *see Aristocrat Leisure*, 262 F.R.D. at 306.

Respondents further contend that, assuming Drepaul properly served El-Mann by leaving the papers at his feet, such service was nullified because the process servers "witnessed" someone else take the papers. Tr. at 93:5–9. Counsel argued that "a process server who witnesses that should have an obligation" to "ascertain" who took the papers. Tr. at 94:13, 97:22–23. Again, counsel admitted she did not have "any authority" for her demands on the process server. Tr. at 97:25. And again, Respondents' position does not make sense. On this view, service would have been proper if Drepaul had simply left the scene after he placed the papers on the sidewalk as El-Mann walked away, but, because Drepaul stood a short distance away "taking notes," and therefore "witnessed th[e] woman pick [the papers] up," service was nullified. Tr. at 29:19, 93:9. Given that service was accomplished by leaving the papers at El-Mann's feet "as he walked away," *Jane Doe I v. Karadzic*, 1996 WL 194298, at *2, it makes no difference who picked them up, or whether the process server knew who picked them up.

AIC speculates that the woman who took the papers was likely part of El-Mann's entourage. *See* Tr. at 68:3–4, 68:18, 69:3–4. Respondents contend that she was a "complete stranger." Tr. at 93:10. The Court does not need to decide. The implication of the case law permitting a process server to simply leave papers in the vicinity of a person who resists service is that, after diligent efforts, the process server is no longer obligated to make sure the papers wind up in the hands of the person named in the subpoenas. *See Jane Doe I v. Karadzic*, 1996 WL 194298, at *2.

Because AIC properly effectuated personal service on El-Mann in New York City, this Court clearly has "tag" personal jurisdiction over him. *See In re Edelman*, 295 F.3d at 179; *Estate of Ungar*, 400 F. Supp. 2d at 553; *see also Kadic v. Karadzic*, 70 F.3d 232, 247 (2d Cir. 1995). As such, the Court has authority to compel El-Mann to comply with AIC's subpoenas for documents

15

and testimony. *See Gucci America, Inc.*, 135 F. Supp. 3d at 93. Respondents therefore have the burden to show that the subpoenas should, instead, be quashed, but Respondents do not come close to carrying that burden.[8]

Respondents argue that the Court should quash the subpoena for testimony for failure to comply with the 100-mile rule. *See* Opp. at 12. The Court agrees that the subpoena does not comply with Rule 45(c), which provides that a nonparty witness cannot be compelled to travel more than 100 miles from where he resides, is employed, or regularly transacts business in person. *See In re Edelman*, 295 F.3d at 178. The subpoena sets the place for the deposition as New York [PX 8]. El-Mann resides in Mexico City and is employed by Mexican entities. *See* El-Mann Decl. ¶¶ 1–3. Respondents offer evidence that, in the last five years, he has traveled to New York City "approximately 3-4 times per year," "[n]o trip was longer than five days," and most of the "trips are principally for leisure." El-Mann Decl. ¶¶ 7 – 9.

AIC contends that El-Mann regularly transacts business in New York, but it cites only his attendance at the "annual" FUNO Day. AIC Mem. at 4; *see* Tr. at 74:16–17 ("we think that's regular"). To be sure, "a regularly scheduled meeting every year" might satisfy the text of Rule 45(c). Tr. at 74:16–17. However, Respondents cite several cases in this District ruling that more extensive travel did not amount to "regularly transacting business." *City of Almaty, Kazakhstan v. Sater*, 2023 WL 2088173, at *2 (S.D.N.Y. Feb. 16, 2023); M*'Baye v. New Jersey Sports Prod., Inc.*, 246 F.R.D. 205, 207-208 (S.D.N.Y. 2007); *Perez v. Progenics Pharms., Inc.*, 2015 WL 4111551, at *2 (S.D.N.Y. June 24, 2015).

---

[8] As noted above, Respondents include in their brief a cursory argument that the subpoenas should be quashed as overbroad and unduly burdensome, but Respondents fail to demonstrate that the breadth and inconvenience are disproportionate to the needs of the Massachusetts case, over which this Court does not preside.

16

In any event, the Court declines to quash the subpoena for El-Mann's deposition. AIC has offered to depose El-Mann in Mexico or remotely and asks the Court to modify the subpoena to comport with the 100-mile rule, instead of quashing it. *See* Tr. at 75:6–7; Reply at 10. AIC cites authority that "[m]odification is generally preferred over quashing of a subpoena." *Chevron Corp. v. Donziger*, 2020 WL 635556, at *6 (S.D.N.Y. Feb. 11, 2020); *see Yukos Capital S.A.R.L. v. Feldman*, 2016 WL 3181151, at *1 (S.D.N.Y. June 3, 2016).

Respondents contend that the Court must quash a subpoena that violates the 100-mile rule and that AIC's authorities are outliers. *See* Opp. at 15 & n.3; Tr. at 90:19–20 ("the vast weight of authority in this district says the subpoenas must be quashed"). These contentions are false. Rule 45 expressly instructs a court to "quash *or modify* a subpoena" that violates the 100-mile rule. Fed. R. Civ. P. 45(d)(3) (emphasis added). And there is no daylight between the text of the rule and the cases in this Circuit. *See In re Edelman*, 295 F.3d at 181; *Est. of Ungar*, 400 F. Supp. 2d at 553–54 ("There are no obvious grounds for quashing, rather than modifying, the subpoenas under Rule 45(c) . . . . I decline to quash them."). Accordingly, the Court modifies the subpoena for El-Mann's deposition to direct that it take place in Mexico City or remotely.

### B. The Administración Subpoenas

The Court denies the motion to compel Administración to comply with AIC's subpoenas because AIC has not made a *prima facie* showing of personal jurisdiction over Administración. *See Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 521 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019). Based on the evidence in the record and representations of counsel at the hearing, the Court finds that AIC conflated distinct entities and failed to offer any evidence that Administración, in contrast with the Fibra Uno trust, has any contacts with New York. *See* El-

17

Mann Decl. ¶¶ 12, 15, 16, 18.[9]  Indeed, counsel for AIC admitted on the record at the hearing: "we don't know . . . what the right entity is."  Tr. at 79:18.  Furthermore, AIC could not obtain "tag" jurisdiction over Administración by personally serving El-Mann in New York.  *See Est. of Ungar*, 400 F. Supp. 2d at 553 (stating that tag jurisdiction is "a valid method of acquiring personal jurisdiction over an individual, though not over a corporation through the persons of its officers").  As such, the Court lacks jurisdiction to compel Administración to comply with the subpoenas.  *See Gucci America, Inc.*, 135 F. Supp. 3d at 93.

### C. The Robina Subpoenas

The Court likewise denies the motion to compel Robina's compliance with the subpoenas because Robina clearly was not properly served in New York.  Based on the evidence admitted at the hearing, there is no dispute that AIC did not effectuate personal service on Robina [PX 3–5].  *See* Tr. at 83:10–11 (AIC admitting that the process servers "did not succeed in personally serving Mr. Robina").  AIC argues that it nonetheless satisfied Rule 45 by leaving subpoenas for Robina "at his hotel" and mailing copies to "his office" in Mexico.  *See* Tr. at 84:2–5.

The efforts to serve Robina by alternative means are not sufficient under Rule 45.  While courts in this district are "split as to whether a subpoena may be validly served . . . by any means other than personal delivery to the witness . . . alternate service *must be authorized by a court*."  *Haber*, 272 F.R.D. at 382 (emphasis in original).  AIC admits that it did not seek leave from a court to pursue alternative service.  *See* Tr. at 83:19.  As such, AIC failed to properly serve Robina.  *See Haber*, 272 F.R.D. at 382; *Kenyon*, 2016 WL 5930265, at *3.

---

[9] El-Mann attests that Administración is distinct from the Fibra Uno trust and does not do business in New York.  The Court is cognizant that AIC discredited other aspects of the El-Mann Declaration (though Respondents did not offer El-Mann's discredited assertions about service into evidence at the hearing).  The Court is not concerned about the reliability of the El-Mann Declaration with respect to the Court's jurisdiction over Administración because AIC has the burden, which it has not met.  *See Broumand*, 522 F. Supp. 3d at 14.

18

## IV. CONCLUSION

For the reasons set forth above, Petitioner's motion to compel is GRANTED in part and DENIED in part, and Respondents' cross-motion to quash is GRANTED in part and DENIED in part. With respect to El-Mann, Petitioner's motion is GRANTED, and Respondents' cross-motion is DENIED, although the deposition subpoena is modified to comply with the 100-mile rule. With respect to Administración, Petitioner's motion is DENIED, and Respondents' cross-motion to quash is GRANTED for lack of personal jurisdiction. With respect to Robina, Petitioner's motion is DENIED for lack of service, and Respondents' cross-motion is denied as moot.

The Clerk of Court respectfully is requested to close this case.

**SO ORDERED.**

**Date: August 2, 2024**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**